IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARAB AMERICAN CIVIL RIGHTS
LEAGUE ("ACRL"), et al.

      Plaintiffs,

                                  Case No.: 17−cv−10310
v.                              Hon.: Victoria A. Roberts
                                  Mag.: Stephanie D. Davis

DONALD TRUMP, et al.

      Defendants.

_____/

## PLAINTIFFS' RESPONSE TO DEFENDANTS' STATUS UPDATE AND SUPPORTING DECLARATIONS

**I.**    **The Government's Motion Should Be Held In Abeyance.**

As previously briefed, see Doc #20, Pg ID 136-141, the Government's positions in this case have been changing from day to day, and even hour to hour. Although the Government now asserts that Executive Order 13769 does not apply to lawful permanent residents, it offers no credible assurance that this voluntary cessation will be continued in the future.

All that is clear at this point is that the government's policy will continue to change: the President stated on February 16, 2017, that "we will be issuing a new and very comprehensive order to protect our people. And that will be done some

time next week, toward the beginning or middle at the latest part."[1] In the government's most recent filing in Ninth Circuit in *State of Washington v. Trump*, also dated February 16, 2017, the Government stated, "Rather than continuing this litigation, the President intends in the near future to rescind the Order and replace it with a new, substantially revised Executive Order to eliminate what the panel erroneously thought were constitutional concerns." [Defendants-Appellants'] Supplemental Brief on *En Banc* Consideration, 17-35105 (9th Cir. Feb. 16, 2017), Dkt Entry 154, p. 16, http://cdn.ca9.uscourts.gov/datastore/general/2017/02/16/17-35105%20-%20Government%20supplemental%20brief.pdf.

The contents of the yet-to-be-issued Executive Order remain unknown, and therefore any action that this Court might take would likely be superseded by events very quickly. At the same time, the order issued by the U.S. District Court for the Western District of Washington currently protects the Plaintiffs in this case.[2] Therefore, Plaintiffs believe that the best course of action at this time is to hold the government's motion to dissolve the injunction in abeyance. At the moment, dissolving this Court's injunction would have no practical effect. Moreover, as just quoted, the government intends to alter the operative facts "[r]ather than continuing . . . litigation" in the Ninth Circuit. Indeed, the

---

[1]  Transcript posted at https://www.nytimes.com/2017/02/16/us/politics/donald-trump-press-conference-transcript.html.

[2] As a result of this court's injunction and the injunction in *State of Washington v. Trump*, all of the current individual Plaintiffs have now entered the United States.

2

Government itself has urged the Ninth Circuit "to hold its consideration of the case until the President issues the new Order . . . ." Id. Similarly, in a case in the U.S. District Court for the District of Columbia, the government successfully sought a stay of the briefing schedule "in light of the President's intent to rescind the existing, currently enjoined Executive Order . . . and replace it with a new, substantially revised version." [Defendants'] Emergency Motion for Stay of Existing Deadlines Pending Issuance of a New Executive Order, Pars Equality Center v. Trump, 1:17-cv-00255-TSC (D.D.C. Feb. 16, 2017) , Dkt Entry 15, p. 5, https://www.clearinghouse.net/chDocs/public/IM-DC-0026-0003.pdf. The government's arguments for holding off on proceedings in other cases while events surrounding the Executive Order unfold apply with equal force here.

The interests of judicial economy also militate against ruling on the Defendants' motion to dissolve the injunction. The Court should not expend resources on Defendants' motion so long as Judge Robart's injunction remains in place. Given the uncertainty about what steps the government will take next and given that fast-moving developments could easily change the legal issues before the court from one day to the next (as has already happened in this case and as the President himself has indicated will happen again soon), this Court would be wise to hold the motion in abeyance pending further developments and conserve its resources for such time as its intervention is needed.

3

In the event that Judge Robart's injunction is stayed, narrowed, or lifted, or other events make it necessary for this Court to act, this Court could resume consideration of Defendants' motion to dissolve the injunction.

## II.    If the Court Does Rule on the Motion, It Should Be Denied

In the event that the Court does decide to rule on Defendants' motion, Plaintiffs make the following submissions.

First, as requested by the Court in a February 6, 2017 email from Mr. Willett and the Order Requiring Plaintiffs to Response to Defendants' Status Update (Doc. #35, Pg. ID 356), Plaintiffs file the attached declarations in support of their Opposition to Motion to Dissolve Injunction (Doc #20, Pg ID 143).

These declarations show that, in light of the government's changing position on whether the Executive Order applies to lawful permanent residents, lawful permanent residents from the banned countries remain unsure whether, if they leave the United States, they will be able to return. Rula Aoun, director of the Arab American Civil Rights League explains:

> Because the government has repeatedly changed its position about who can and cannot enter the country, and because the government has been fighting to reinstate the ban in court, the Arab American community in Michigan is very unsure about who will and will not ultimately be covered by the ban.  As the result, members of our community are afraid to travel outside the country, even though many of them have compelling personal and professional reasons – such as ill relatives, family weddings and funerals, or business affairs – for leaving the country temporarily.

4

Aoun Declaration, ¶ 15, Exh. C.  Moreover, as Susan Reed, managing attorney of

the Michigan Immigrant Rights Center notes:

> Lawful Permanent Residents in my experience tend to have
> overwhelming equities in the U.S. and generally have extremely low
> tolerance of risk with regard to being excluded or removed from the
> U.S.

Reed Declaration, ¶ 18, Exh. A. If this Court were to dissolve the injunction

protecting lawful permanent residents, it would add to the current confusion and

discourage lawful permanent residents from relying on future court rulings for fear

that those protections could be taken away.

Given that many lawful permanent residents have built their lives in the

United States – establishing careers, buying homes, having families – they cannot

risk being denied entry again if they travel abroad. Accordingly, many lawful

permanent residents who have reasons to travel abroad are not doing so because

the government's ever-changing position on the Executive Order has left them

uncertain whether further changes will occur while they are out of the country. *See*

Dr. Ahmed Shalabi Declaration, ¶¶ 18-21, Exh. D; Hana Almasmari Declaration,

¶¶ 11-12, Exh. G; Sabah Almasmary, ¶¶ 11-12, Exh. F; Mounira Atik Declaration,

¶¶ 11-12, Exh. E. For example, Dr. Ahmed Shalabi, a surgeon who is a lawful

permanent resident and holds a Sudanese passport, has cancelled trips to Egypt, the

United Arab Emirates, and Canada because of uncertainty surrounding the

Executive Order. Dr. Ahmed Shalabi Declaration, ¶¶ 18-21, Exh. D.

Second, the declarations show that neither the While House Counsel's February 1, 2017 memo (on which the government relies to claim mootness) nor the earlier Department of Homeland Security January 29, 2017 statement that lawful permanent residents will be "assessed for exceptions as appropriate"[3] – address the complexity of different types of immigration statuses. Michigan Immigrant Rights' Center attorney Susan Reed explains that the term "lawful permanent resident", as used in those documents, is itself unclear.

> Immigrant visa holders are approved to become lawful permanent residents. However, they do not become lawful permanent residents (LPRs) until they are admitted to the U.S. If they are not admitted at a port of entry, they are not lawful permanent residents.
>
> Some immigrant visa holders only have "conditional" permanent resident (CPR) status after they are admitted. For example, a holder of a "CR1" immigrant visa will become a conditional resident upon admission. To become a full LPR, a CPR must have that condition removed either though the approval a joint petition with his or her spouse to remove the condition or granting of a waiver of the joint petition requirement by the Department of Homeland Security.
>
> The Department of Homeland Security stated on January 29, 2017, that LPRs would be "assessed for exceptions as appropriate", suggesting that the Department of Homeland Security believes that LPRs are covered by the Executive Order but may be granted exemptions from it. The White House Counsel's February 1, 2017,

---

[3] Department of Homeland Security, "Fact Sheet: Protecting the Nation From Foreign Terrorist Entry To the United States," (Jan. 29, 2017), available at: https://www.dhs.gov/news/2017/01/29/protecting-nation-foreign-terrorist-entry-united-states.

memo acknowledged reasonable confusion but stated that the Executive Order would not be applied to LPRs. However, the Department of Homeland Security's website continues to display their January 29 statement.

It is unclear whether either the Department of Homeland Security statement or the White House Counsel's memorandum relates to people who hold immigrant visas and will become LPRs or CPRs by operation of law once they are admitted to the U.S. The Executive Order specifically names immigrant visa holders, which seems to indicate a strong intent to apply the travel ban to these pre-admitted immigrant-visa-holding individuals. There is no other individual who could be described as holding an immigrant visa. Yet upon entry, these individuals become LPRs or CPRs.

Neither the Department of Homeland Security statement nor the White House Counsel's memorandum specifically discussed people who are conditional permanent residents, such as individuals holding "CR1" visas. It is therefore unclear whether the government believes they are or are not covered by the Executive Order.

Second Reed Declaration, ¶¶ 5-9, Exh. B.

In short, the White House counsel memorandum, while stating that Sections 3(c) and 3(e) of the Executive Order do not apply to "lawful permanent residents" does not address whether conditional permanent residents (CPRs) are or are not covered by the Executive Order. Nor does the White House counsel memorandum address whether that exclusion applies to individuals who were immigrant visa holders at the time the Executive Order was entered, but have since entered the country and become lawful permanent residents or conditional permanent residents

7

by operation of law. *See* Yusra Alsoufi Declaration, Exh. H; Kokab Algazali Declaration, Exh. I; Walid Jammoul Declaration, Exh. J.

In short, the very government statements upon which Defendants rely (and which can be changed at any time and indeed will be changed shortly) do not make clear who is and is not covered by the Executive Order. Thus (and even before the White House changes its position again, as the President has announced it will do), the complexity of immigration law means that there is uncertainty about such basic questions as, under the most recent governmental interpretation of the Executive Order, who counts as a "lawful permanent resident".

Third, Defendants continue to argue that the case is moot in light of the February 1, 2017 White House Counsel Memo. *See* Defendants' Status Update, Doc. 33, Pg.ID# 348. The Ninth Circuit's addressed precisely this issue in its recent decision rejecting the government's request for a stay of the injunction against enforcement of the Executive Order that was issued by the United States District Court for the Western District of Washington:

> The Government has argued that, even if lawful permanent residents have due process rights, the States' challenge to section 3(c) based on its application to lawful permanent residents is moot because several days after the Executive Order was issued, White House counsel Donald F. McGahn II issued "[a]uthoritative [g]uidance" stating that sections 3(c) and 3(e) of the Executive Order do not apply to lawful permanent residents. At this point, however, we cannot rely upon the Government's contention that the Executive Order no longer applies to lawful permanent residents. The Government has offered no authority establishing that the White House counsel is empowered to

issue an amended order superseding the Executive Order signed by the President and now challenged by the States, and that proposition seems unlikely.

Nor has the Government established that the White House counsel's interpretation of the Executive Order is binding on all executive branch officials responsible for enforcing the Executive Order. The White House counsel is not the President, and he is not known to be in the chain of command for any of the Executive Departments. Moreover, in light of the Government's shifting interpretations of the Executive Order, we cannot say that the current interpretation by White House counsel, even if authoritative and binding, will persist past the immediate stage of these proceedings. On this record, therefore, we cannot conclude that the Government has shown that it is "*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc., v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (emphasis added).

*Washington v. Trump*, __ F.3d __; 2017 WL 526497, at *8 (9th Cir., Feb. 9, 2017).

Finally, Plaintiffs draw the Court's attention to the inconsistency of the government's statements even within the court filings in this case to date. On the one hand, Defendants argue, under the doctrine of constitutional avoidance, that the Executive Order should be interpreted not to apply to lawful permanent residents because a contrary interpretation "ignores established law holding that LPRs are entitled to travel abroad for periods of time without jeopardizing their lawful status." Defendants' Reply In Support Of Their Motion to Dissolve Injunction, Doc. 22, Pg.ID# 170. On the other hand, Defendants assert that non-

citizens "have no constitutional right to entry." Defendants' Opposition to Plaintiffs' Request For a Preliminary Injunction, Doc. 26-1, Pg.ID# 266.

Where Defendants cannot even maintain a consistent litigation position about the legal rights of lawful permanent residents, Defendants cannot meet the "'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth*, 528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)).

## III.   Conclusion

For the foregoing reasons, the Court should hold in abeyance the Defendants' Motion to Dissolve the Injunction. Once the new Executive Order is issued, plaintiffs respectfully request that they receive ten days to assess its effect, and to provide the Court with fuller briefing in support of the existing injunction, if appropriate.

If the Court does rule on the motion, the motion should be denied. Given that the Court's existing injunction order was written at an emergent moment, and was therefore necessarily quite brief, the Court may wish, with the greater luxury of time, to:

1) clarify that its order applies to both lawful permanent residents and conditional permanent residents both prior to and upon entry into the United States;

2) clarify that its order applies to all immigrant visa holders who have entered the United States and become lawful permanent residents or conditional permanent residents since the Executive Order was announced;

3) specifically state that, pursuant to Fed. R. Civ. Proc. 65(d)(2), its order binds the parties; the parties' officers, agents, servants, employees, and attorneys; and other persons who are in active concert or participation with them; and

4) more fully explain the Court's reasoning in accordance with Fed. R. Civ. P. 65.

Respectfully submitted,

**Attorneys for Arab American Civil Rights League, Samir Almasmari, Sabah Almasmary, Hana Almasmari, Mounira Atik, Walid Jammoul, Nagi Algahaim, Kokab Algazali, Shaika Shagera, Hend Alshawish and Yusra Al Soufi:**

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
Nabih H. Ayad (P59518)
Attorney for Plaintiffs
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

HAMMOUD, DAKHLALLAH &
ASSOCIATES, PLLC
/s/ Kassem M. Dakhlallah
Kassem Dakhlallah (P70842)
Co-Counsel for ACRL
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com

/s/ Ali K. Hammoud
Ali K. Hammoud (P73076)
Counsel for Yemini American
Benevolent Association ("YABA")
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
ah@hdalawgroup.com

FARHAT & ASSOCIATES, PLLC
/s/ Helal Farhat
Helal Farhat (P64872)
Counsel for the Arab American
Chamber of Commerce
6053 Chase Rd.
Dearborn, MI 48126
(313) 945-5100
hfarhat@saflegal.com

/s/ Nida Samona
Nida Samona (P45356)
Counsel for the Arab Chaldean
Council ("ACC")
363 W. Big Beaver Rd., Suite 300
Troy, MI 48084
Nidas@myacc.org
/s/ Rula Aoun
Rula Aoun (P79119)
Co-Counsel for ACRL
4917 Schaefer Rd.
Dearborn, MI 48126
rula@acrlmich.org

VIDA LAW GROUP, PLLC
/s/ Mona Fadlallah
/s/ Natalie C. Qandah
Mona Fadlallah (P64197)
Natalie C. Qandah (P58434)
Co-Counsel for Arab American Civil
Rights League ("ACRL")

43050 Ford Road, Suite 160
Canton, MI 48187
Phone: (734) 456-9004
Facsimile: (734) 456-9003
Mona@vidalawpllc.com
Natalie@vidalawpllc.com

**Attorneys for Hasan Al-Ahmed and Sahla Al-Talaqani:**

/s/ Miriam Aukerman (P63165)
American Civil Liberties Union
Fund of Michigan
1514 Wealthy SE, Suite 242
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

/s/ Michael J. Steinberg (P43085)
Kary L. Moss (P49759)
American Civil Liberties Union
Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(734) 578-6814
msteinberg@aclumich.org

Dated: February 20, 2017

/s/ Samuel R. Bagenstos (P73971)
Cooperating Attorney,
American Civil Liberties Union Fund
of Michigan
625 South State Street
Ann Arbor, Michigan 48109
(734) 647-7584
sbagen@gmail.com
Application for admission to the U.S.
District Court for the Eastern District
of Michigan forthcoming

/s/ Margo Schlanger (N.Y. Bar
#2704443 (3d Dept))
Cooperating Attorney,
American Civil Liberties Union Fund
of Michigan
625 South State Street
Ann Arbor, Michigan 48109
734-615-2618
margo.schlanger@gmail.com
Application for admission to the U.S.
District Court for the Eastern District
of Michigan pending

**Certificate of Service**

I certify that on February 20, 2017, I filed the foregoing paper with the Clerk of Court using the ECF system which will send notice of such filing to all counsel of record.

/s/ Nabih H. Ayad
Nabih H. Ayad (P59518)