# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| **ARAB AMERICAN CIVIL RIGHTS LEAGUE**, et al., | |
| *Plaintiffs*, | Case No. 2:17-cv-10310-VAR-SDD |
| v. | Hon. Victoria A. Roberts |
| **DONALD TRUMP**, et al., | Mag. J. Stephanie D. Davis |
| *Defendants*. | |

## PLAINTIFFS' REPLY IN SUPPORT OF
## MOTION FOR EXPEDITED DISCOVERY

Plaintiffs hereby reply to Defendants' Opposition to the Motion for Expedited Discovery, as set forth in the attached supporting brief.

i

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

ARGUMENT ....................................................................................................... 1

    A.      The Evidence Sought Is Directly Relevant to Issues Defendants Will Contest on Plaintiffs' Motion for Preliminary Injunction. .......... 1

    B.      The Discovery Requests are Narrowly Tailored to Avoid Executive Privilege Concerns. ............................................................. 3

    C.      The Discovery Requests Are Not Overbroad ....................................... 4

    D.      There is Good Cause to Permit Limited Expedited Discovery ............ 7

# **TABLE OF AUTHORITIES**

## **Cases**

*Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367 (2004) .................4

*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997)......................................................4

*Int'l Refugee Assistance Proj. v. Trump*, 17-cv-00361 (D. Md. Mar. 13, 2017).......4

*LaFace Records, LLC v. Does 1-5*, No. 2:07-cv-187, 2007 WL 2867351 (W.D. Mich. Sept. 27, 2007) ......................................................................................7

*Malon v. Franklin Fin. Corp.*, No. 3:14-cv-671 (HEH-RCY), 2014 WL 5795730 (E.D. Va. Nov. 6, 2014)......................................................................................3

*Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017)...............................................6

# INTRODUCTION

Defendants' response addresses discovery requests bearing no resemblance to the narrowly tailored requests actually at issue. In particular, Defendants' burden and executive privilege arguments simply ignore the temporal and subject matter limitations Plaintiffs included to avoid those very concerns. The requests here are narrowly focused on tracing how Candidate Trump's "Muslim ban" evolved into the Executive Orders ("EOs"). Because Defendants will oppose Plaintiffs' preliminary injunction motion by vigorously contesting that there is a link between Candidate Trump's discriminatory statements and the EOs, good cause exists for the Court to grant limited expedited discovery on that issue.

# ARGUMENT

### A.   *The Evidence Sought Is Directly Relevant to Issues Defendants Will Contest on Plaintiffs' Motion for Preliminary Injunction.*

Plaintiffs do not seek evidence to prove Candidate Trump made anti-Muslim statements. There is abundant, undisputed evidence of that. Rather, Plaintiffs seek evidence to refute Defendants' assertion that, despite those statements, the EOs were motivated by national security concerns, rather than animus.

Candidate Trump initially said he wanted a "Muslim ban" but then, after the ban was heavily criticized, asked Mr. Giuliani to form a "commission" to tell him how "to do it legally." ECF #43 Pg. ID 617-19. Mr. Giuliani and others have pointed to the commission's work—including a memorandum it prepared—as

1

evidence that Candidate Trump "amended" his approach to focus on national security concerns. *Id.* at Pg. ID 618. Plaintiffs allege that this was merely an effort to help conceal religious animus behind a pretextual justification.

Plaintiffs seek documents related to "do[ing] it legally," *i.e.* documents from the Giuliani Commission, the subsequent "Roundtable on Defeating Radical Islamic Terrorism," and the pre-inauguration work of certain Congressional staffers. Plaintiffs believe this evidence will establish that the Defendants' intention was to cloak the Muslim Ban behind a national security justification.

Oddly, Defendants argue that because Plaintiffs have so much evidence of religious animus, they should be denied discovery on the linkage between that animus and the EOs. ECF #60 Pg. ID 923. The Court should reject that argument because, in opposing Plaintiffs' motion for preliminary injunction, Defendants will turn around and argue that Candidate Trump's voluminous anti-Muslim statements do not prove that religious animus actually motivated the EOs. That is exactly why Plaintiffs seek expedited discovery: to demonstrate the linkage between the animus and the EOs so they can address this in their preliminary injunction briefing.

Defendants also suggest Plaintiffs should have filed a motion for preliminary injunction before seeking expedited discovery. ECF #60 Pg. ID 920. There is no

2

such requirement in the Federal Rules of Civil Procedure or the caselaw.[1] Nor would such a requirement promote "the just, speedy, and inexpensive determination" of this action, Fed. R. Civ. P. 1, since it would necessitate additional briefing once the discovery is produced.[2]

### B. *The Discovery Requests are Narrowly Tailored to Avoid Executive Privilege Concerns.*

The parties agree that, due to separation of powers concerns, courts should not require production of evidence covered by executive privilege when other sources of evidence are available. *See* ECF #43 Pg. ID 616 n.2.; ECF #60 Pg. ID 935. That is why Plaintiffs seek only evidence *not* covered by executive privilege.

Four of the five document requests are limited to documents created *prior to the election*. In filings elsewhere Defendants have insisted that candidates are private citizens and "not government actors," thereby conceding that executive

---

[1] *See* ECF #43 Pg. ID 622 (citing cases permitting expedited discovery prior to preliminary injunction motion); *see also Malon v. Franklin Fin. Corp.*, No. 3:14-cv-671 (HEH-RCY), 2014 WL 5795730, at *2-4 (E.D. Va. Nov. 6, 2014) (same).

[2] Plaintiffs cannot possibly respond within these limited pages to the many inapposite cases cited by Defendants, but a review shows that those cases denied expedited discovery for "kitchen sink" discovery requests including extensive depositions; requests to lift a statutorily-mandated stay of discovery; discovery merely intended to harass the defendant; failure even to identify the requested discovery; a complaint seeking damages and not injunctive relief; discovery where the court entered preliminary injunction without it; and a motion for protective order or motion to compel as opposed to preliminary injunction motion.

3

privilege does not apply.[3] Trump campaign documents are no more subject to executive privilege than documents from the Clinton, Sanders or Rubio campaigns.

The fifth request seeks documents created *prior to the inauguration* that involved "Several House Judiciary Committee aides." ECF #43 Pg. ID 620 (citing ECF #43-5 Pg. ID 818).[4] The burden is on the government when asserting executive privilege, *In re Sealed Case*, 121 F.3d 729, 744, 737 (D.C. Cir. 1997), and Defendants identify no authority to support an assertion of *executive* privilege *prior to the inauguration* as to documents involving *Congressional* staffers.[5]

### C.    The Discovery Requests Are Not Overbroad.

Defendants characterize the discovery requests as "far-reaching in scope" and encompassing "potentially millions of documents" from an "undefined pool of potential" custodians. That characterization is simply wrong.

---

[3] Defs.' Mem. in Opp'n, to Pls.' Mot. for a Prelim. Inj. and/or TRO of the Executive Order at 33, *Int'l Refugee Assistance Proj. v. Trump*, 17-cv-00361 (D. Md. Mar. 13, 2017).

[4] Defendants suggest Document Request No. 5 could be interpreted to cover 15,000 Congressional employees and date back many years. ECF #60 Pg. ID 927-28. That request is intended to encompass *only* documents created between the election and the inauguration and involving the "[s]everal" Congressional staffers referred to in Exhibits EE to GG of the Raofield Decl. (ECF #43-5 Pg. ID 817-26). The same is true of Interrogatory No. 5, which merely seeks the names of those Congressional staffers and the date of their nondisclosure agreements.

[5] Moreover, even in cases where some responsive documents might be subject to the deliberative process privilege, the government cannot refuse to produce other non-privileged documents on the basis of a blanket privilege assertion. *See e.g., Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 388 (2004) (citing *United States v. Nixon*, 418 U.S. 683, 706-07 (1974)).

4

- Document Request No. 1 seeks only a single document—the memorandum Mr. Giuliani and others have repeatedly discussed in public statements. Production of a single document is not burdensome.

- Document Request Nos. 2-4 are limited in time (prior to the election), subject matter (the purported evolution of the "Muslim ban" into "extreme vetting" of individuals from specific countries), and custodians (members of the Giuliani "commission" and the "Roundtable" on terrorism, and the handful of individuals listed in the fourth document request).[6]

- Document Request No. 5 involves the same subject matter, focuses on the short period between the election and the inauguration, and is limited to documents involving "several" Congressional staffers. *Supra* note 4.

Defendants clearly cannot object on burden grounds to Document Request No. 1, but they speculate that the other requests call for documents from thousands of custodians and could encompass "potentially millions of documents." ECF #60 Pg. ID 926 n.8. The Court should be highly skeptical of this self-serving assertion.

Notably, with respect to Document Requests Nos. 2 and 5 (which are the two most important requests after Request No. 1), the available evidence strongly undermines Defendants' burden argument. Request No. 2 is addressed to the work of the Giuliani commission, which Mr. Giuliani described as "a small group" including Rep. McCaul, General Flynn, Michael Mukasey, and "a few other people." ECF#43-5 Pg. ID 782-83, 792, 801-02, 808, 812-13. This commission

---

[6] The first four interrogatories seek basic non-privileged information regarding the meetings of, and individuals involved in, the Giuliani commission and the Roundtable. These requests—which do not delve into the substance of any communications—are designed in part to preempt unsubstantiated objections and assertions of privilege and national security, including, for example, by asking whether the individuals involved were attorneys or held security clearances.

5

appears to have met one or more times between late May and early July of 2016. *Id.* Similarly, Request No. 5 is limited to documents involving "several" Congressional staffers during a short period of perhaps one month. *Supra* note 4.

While it is a bit more difficult to assess how many documents will be responsive to Document Request Nos. 3 and 4, which relate to the "Roundtable" and a dozen specific individuals who were centrally involved in developing the EOs, those requests too are narrowly focused on pre-election documents related to the purported evolution of Candidate Trump's Muslim ban into "extreme vetting."

Finally, Defendants can hardly object to Interrogatory Nos. 6-8, which merely ask for the identities of individuals from the seven designated countries who purportedly carried out terrorist attacks on U.S. soil. These simple requests seek the same information the Ninth Circuit noted Defendants were unable to identify previously.[7] The only reason the requested information would not be readily available to Defendants is if the proffered national security justification is a pretext that is unsupported by any real evidence.[8]

---

[7] *Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017) (per curiam).

[8] Plaintiffs hereby withdraw Interrogatory Nos. 9-10 (seeking information regarding implementation of the "waiver" provisions of the Executive Order). Since this motion was filed, the government has publicly released information shedding light on the waiver process, thereby making these requests less urgent. Moreover, because the EO is enjoined, the new waiver process has presumably not been implemented, meaning that the requested data may not yet exist. Should circumstances change in the future or waiver information become necessary to support the preliminary injunction motion, Plaintiffs may renew these requests.

### D. *There is Good Cause to Permit Limited Expedited Discovery.*

The circumstances of this case are important. Although injunctive relief has been entered by other courts, the government is pursuing expedited appellate proceedings and is seeking a stay of the preliminary injunction. It has made clear that, if its efforts are successful, it will *immediately* enforce the EO.

Over two months have passed since the initial EO went into effect, and yet—due to the ever-shifting legal landscape—there has been no discovery to date. Even limited expedited discovery will take time, and there is simply no reason to prevent Plaintiffs from even *beginning* the process.

The parties agree that the Court has broad discretion in determining whether good cause exists to permit expedited discovery. ECF #60 Pg. ID 916-17; *see also, e.g.*, *LaFace Records, LLC v. Does 1-5*, No. 2:07-cv-187, 2007 WL 2867351, at *1 (W.D. Mich. Sept. 27, 2007). The Court should exercise that discretion here because the expedited discovery Plaintiffs seek is narrowly limited in scope, avoids executive privilege concerns, and is directly relevant to issues the government will contest in opposing Plaintiffs' motion for preliminary injunction.

Dated: March 27, 2017                                   Respectfully submitted,

## Counsel for Arab American Civil Rights League

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
Nabih H. Ayad (P59518)
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

/s/ Rula Aoun
Rula Aoun (P79119)
4917 Schaefer Rd.
Dearborn, MI 48126
(313) 633-0231
rula@acrlmich.org

HAMMOUD, DAKHLALLAH &
ASSOCIATES, PLLC
/s/ Kassem M. Dakhlallah
Kassem Dakhlallah (P70842)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com

VIDA LAW GROUP, PLLC
/s/ Mona Fadlallah
/s/ Natalie C. Qandah
Mona Fadlallah (P64197)
Natalie C. Qandah (P58434)
43050 Ford Road, Suite 160
Canton, MI 48187
Phone: (734) 456-9004
Facsimile: (734) 456-9003
Mona@vidalawpllc.com
Natalie@vidalawpllc.com

## Counsel for American Arab Chamber of Commerce

FARHAT & ASSOCIATES, PLLC
/s/ Helal Farhat
Helal Farhat (P64872)
Counsel for the American Arab
Chamber of Commerce
6053 Chase Rd.
Dearborn, MI 48126
(313) 945-5100
hfarhat@saflegal.com

8

**Counsel for Arab American and Chaldean Council**

/s/ Nida Samona
Nida Samona (P45356)
Attorney at Law
Arab Chaldean Council ("ACC")
363 W. Big Beaver Rd., Suite 300
Troy, MI 48084
(248) 559 1990
Nidas@myacc.org

**Counsel for Hend Alshawish, Salim Alshawishm, Yusef Abdullah, Fahmi Jahaf, and Mohamed Alshega**

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
Nabih H. Ayad (P59518)
Attorney for Plaintiffs
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

/s/ Rula Aoun
Rula Aoun (P79119)
4917 Schaefer Rd.
Dearborn, MI 48126
(313) 633-0231
rula@acrlmich.org

HAMMOUD, DAKHLALLAH & ASSOCIATES, PLLC
/s/ Kassem M. Dakhlallah
Kassem Dakhlallah (P70842)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com

VIDA LAW GROUP, PLLC
/s/ Mona Fadlallah
/s/ Natalie C. Qandah
Mona Fadlallah (P64197)
Natalie C. Qandah (P58434)
43050 Ford Road, Suite 160
Canton, MI 48187
Phone: (734) 456-9004
Facsimile: (734) 456-9003
Mona@vidalawpllc.com
Natalie@vidalawpllc.com

/s/ Ali K. Hammoud
Ali K. Hammoud (P73076)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
ah@hdalawgroup.com

**Counsel for American Civil Liberties Union of Michigan, Arab American Studies Association, Adeeb Saleh, Sofana Bella, Hilal Alkateeb and S.A., a minor through her Parent and Next Friend, Hilal Alkatteeb**

/s/ Miriam Aukerman
Miriam Aukerman (P63165)
American Civil Liberties Union Fund of Michigan
1514 Wealthy SE, Suite 242
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

/s/ Samuel R. Bagenstos
Samuel R. Bagenstos (P73971)
Cooperating Attorney,
American Civil Liberties Union Fund of Michigan
625 South State Street
Ann Arbor, Michigan 48109
(734) 647-7584
sbagen@gmail.com

/s/ Michael J. Steinberg
Michael J. Steinberg (P43085)
Daniel S. Korobkin (P72842)
Kary L. Moss (P49759)
American Civil Liberties Union Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6814
msteinberg@aclumich.org

/s/ Margo Schlanger
Margo Schlanger (N.Y. Bar #2704443 (3d Dept))
Cooperating Attorney,
American Civil Liberties Union Fund of Michigan
625 South State Street
Ann Arbor, Michigan 48109
(734) 615-2618
margo.schlanger@gmail.com

/s/ Jason C. Raofield
Jason C. Raofield (D.C. Bar #463877)
Covington & Burling LLP
One City Center
850 10th Street, NW
Washington, D.C. 20001
(202) 662-5072
Email: jraofield@cov.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2017, this brief was filed with the Clerk of the Court via the Court's CM/ECF system, which provides notice to all counsel of record.

/s/ Jason C. Raofield
Jason C. Raofield (D.C. Bar #463877)