# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| ARAB AMERICAN CIVIL RIGHTS LEAGUE, et al., | |
| Plaintiffs, | Case No. 2:17-cv-10310-VAR-SDD |
| v. | Hon. Victoria A. Roberts |
| DONALD TRUMP, et al., | Mag. J. Stephanie D. Davis |
| Defendants. | |

## PLAINTIFFS' BRIEF IN PARTIAL OPPOSITION TO DEFENDANTS' MOTION TO EXTEND TIME FOR ISSUANCE OF A SCHEDULING ORDER UNDER RULE 16(b)

Plaintiffs hereby respond to Defendants' Motion to Extend Time for Issuance of a Scheduling Order Under Rule 16(b), as set forth in the attached supporting brief.

# **TABLE OF CONTENTS**

**INTRODUCTION** ........................................................................................... 1

**ARGUMENT** ................................................................................................... 2

**I.   A Ruling on Defendants' Motion to Dismiss Will Neither Dispose of This Case Nor Make the Requested Discovery Unnecessary.** ............... 2

**II.  The Limited Discovery Sought by Plaintiffs Is Relevant and Necessary.** ................................................................................................ 5

**III. Plaintiffs' Discovery Requests Are Not Burdensome and Do Not Implicate Executive Privilege.** .................................................................. 6

**IV.  The Court Has All the Information It Needs to Enter a Scheduling Order at This Time.** .................................................................................. 9

**CONCLUSION** ............................................................................................... 11

# **TABLE OF AUTHORITIES**

## **Cases**

*ACLU of Ky. v. Grayson Cnty.*, 591 F.3d 837, 843 (6th Cir. 2010) ..........................3

*Aziz v. Trump*, No. 17-cv-116, 2017 WL 580855
    (E.D. Va. Feb. 13, 2017)............................................................................3, 4

*Fish v. Kobach*, No. 16-cv-2105, 2017 WL 1373882
    (D. Kan. Apr. 17, 2017).................................................................................8

*Hawaii v. Trump*, No. 17-cv-0050, 2017 WL 1011673
    (D. Haw. Mar. 15, 2017) ...........................................................................2, 4

*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) .................................................7, 8

*IRAP v. Trump*, No. 17-cv-361, 2017 WL 1018235
    (D. Md. Mar. 16, 2017) ......................................................................... 2, 3, 4

*Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108 (D.C. Cir. 2004) ................8

*Lasisi v. Follett Higher Educ. Grp.*, 598 F. App'x 437 (7th Cir. 2015)....................9

*Sarsour v. Trump*, No. 17-cv-120, 2017 WL 1113305
    (E.D. Va. Mar. 24, 2017)..............................................................................2

*Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017)..........................................2, 3

## **Rules**

Fed. R. Civ. P. 16................................................................................................9

Fed. R. Civ. P. 26................................................................................................9

# **INTRODUCTION**

The parties' basic disagreement is whether the Court should halt proceedings entirely in this case while it considers Defendants' motion to dismiss, or instead allow limited discovery to proceed now so that Plaintiffs can move forward with seeking a preliminary injunction based on a strong factual record that has been unavailable to any other court considering these Executive Orders. Defendants are essentially seeking a delay of further proceedings well into the summer by arguing that this Court should depart significantly from the decisions of other courts that have rejected essentially the same Government arguments regarding the same executive action.

Plaintiffs are willing to agree that the Court can defer entering a full pretrial scheduling order, and therefore oppose Defendants' motion only in part. The Court should, however, allow Plaintiffs to proceed immediately with the very limited discovery they seek to support their motion for preliminary injunction, so that the remainder of the case can move forward without further delay. As discussed in more detail below, Defendants' motion is highly unlikely to be dispositive of the case; the narrow discovery sought by Plaintiffs involves minimal burden on Defendants and was designed not to implicate executive privilege; and the Court has all the information it needs to enter the limited scheduling order that Plaintiffs propose.

# ARGUMENT

## I. A Ruling on Defendants' Motion to Dismiss Will Neither Dispose of This Case Nor Make the Requested Discovery Unnecessary.

Only *complete* dismissal of this case would make the limited discovery sought by Plaintiffs unnecessary. But it is highly unlikely that the Court would arrive at such a result, particularly given that other courts have rejected many of the same arguments by the same Defendants about the same executive action.

The Government devotes considerable attention to questions of standing, but these arguments will not result in dismissal of the case. Defendants' arguments on standing and ripeness have already been rejected by at least four other courts. *See, e.g.*, *Washington v. Trump*, 847 F.3d 1151, 1159-60 (9th Cir. 2017) (finding standing based on harm to university students and faculty who cannot travel for research, academic collaboration, or personal reasons; whose family members from abroad cannot visit; and who cannot recruit students or faculty from the barred countries); *Sarsour v. Trump*, No. 17-cv-120, 2017 WL 1113305, at *5 (E.D. Va. Mar. 24, 2017) (finding standing due to the stigma and burden on travel and other activities imposed by the Revised Executive Order); *IRAP v. Trump*, No. 17-cv-361, 2017 WL 1018235, at *5 (D. Md. Mar. 16, 2017) (finding standing for plaintiffs with barred family members and stigma-related injuries); *Hawaii v. Trump*, No. 17-cv-0050, 2017 WL 1011673, at *16 (D. Haw. Mar. 15, 2017)

(finding standing for an American citizen due to stigma caused by the Revised Executive Order).

Moreover, the Government's scattershot arguments on standing do not even address all of the injuries alleged in the Complaint. By failing to attack the standing of all of the Plaintiffs based on all of the injuries they allege, the Government essentially concedes that the case is justiciable. And even if some of the claims of some of the Plaintiffs are ultimately dismissed, the case will move into discovery as long as even a single claim from a single plaintiff remains viable. *See, e.g.*, *ACLU of Ky. v. Grayson Cnty.*, 591 F.3d 837, 843 (6th Cir. 2010) ("The presence of one party with standing is sufficient.").

Other courts have similarly rebuffed the Government's arguments. For instance, several other courts have rejected the notion that 8 U.S.C. §§ 1182 and 1185 essentially authorize the President to violate the Constitution. *See, e.g.*, *Washington v. Trump*, 847 F.3d 1151, 1161 (9th Cir. 2017) ("There is no precedent to support this claimed unreviewability, which runs contrary to the fundamental structure of our constitutional democracy."); *IRAP v. Trump*, No. 17-cv-361, 2017 WL 1018235, at *16 (D. Md. Mar. 16, 2017) ("Even when exercising their immigration powers, the political branches must choose constitutionally permissible means of implementing that power." (citation omitted)); *Aziz v. Trump*, No. 17-cv-116, 2017 WL 580855, at *6 (E.D. Va. Feb. 13, 2017) ("Every

3

presidential action must still comply with the limits set by Congress' delegation of power and the constraints of the Constitution, including the Bill of Rights.").

On the merits, courts have rejected Defendants' arguments on the constitutional claims when evaluating them under the much more difficult preliminary injunction standard of "likelihood of success," making it unlikely that this Court would find that Plaintiffs here have not even stated a claim sufficient to survive a motion to dismiss. *See, e.g.*, *IRAP v. Trump*, No. 17-cv-361, 2017 WL 1018235, at *13 (D. Md. Mar. 16, 2017) (finding likelihood of success because animus drove formulation of Revised Executive Order); *Hawaii v. Trump*, No. 17-cv-0050, 2017 WL 1011673, at *13 (D. Haw. Mar. 15, 2017) (same); *Aziz v. Trump*, No. 17-cv-116, 2017 WL 580855, at *8-11 (E.D. Va. Feb. 13, 2017) (same).

In light of this recent history, there is good reason to doubt the government's self-serving claim that its motion to dismiss will dispose of the case in full. Moreover, questions of fact will also prevent the Court from granting Defendants' motion to dismiss. Defendants acknowledge this problem implicitly. Rather than confining their argument to matters of law and the facts alleged in the Complaint, Defendants feel compelled to dispute Plaintiffs' allegations as a factual matter. Central to their argument is the Government's position that the Revised Executive Order was intended to protect national security and does not have a discriminatory

4

effect, contrary to Plaintiffs' allegation that its "purpose and effect" was to "target and discriminate against Muslims" (2nd Am. Compl., R. 41, Pg. ID 464, ¶ 9). *See, e.g.*, Defs.' Mot. to Dismiss, R. 76 ("MTD"), at Pg. ID 1017 (arguing that purpose was to protect national security), 1043 (same), 1034-35 (offering statistics to dispute the effect of the ban), 1035-36 (characterizing the purpose of exempting Iraq from the ban), 1043-44 (suggesting that Donald Trump's statements before becoming President are not reflective of his views and intent after taking office). The Government's own arguments make clear that the Court will ultimately need to decide whether the purpose and effect of the Revised Executive Order were impermissible based on a consideration of the facts and evidence — including evidence that Plaintiffs believe will be produced in discovery — not when considering a motion to dismiss.

## II.   The Limited Discovery Sought by Plaintiffs Is Relevant and Necessary.

The Court has already found that "Plaintiffs' requested discovery is directly relevant to their claim that the [Revised Executive Order] was motivated by discriminatory religious animus." (March 31 Order, R. 69, Pg. ID 978.) Plaintiffs' discovery is therefore also directly relevant to their anticipated motion for a preliminary injunction.

Because the Government has opposed preliminary injunction motions in other cases on the grounds that the public record evidence of animus is insufficient,

5

Plaintiffs wish to file an injunction motion supported by evidence that incontrovertibly establishes that the Executive Orders were motivated by religious animus and that the national security justification is a mere pretext. This will allow the Court to issue an injunction supported by evidence of religious animus and discriminatory intent not available to the other District Courts considering challenges to the Revised Executive Order, and will allow the Court to be the first to consider the question of whether the purported facial neutrality of an Executive Order can erase undisputable evidence of animus and discriminatory intent.

### III. Plaintiffs' Discovery Requests Are Not Burdensome and Do Not Implicate Executive Privilege.

Defendants' alarmist predictions of the burden of discovery ignore the realities of the limited discovery that Plaintiffs are actually pursuing at this time. Plaintiffs are not seeking discovery on everything "within the scope of the present Second Amended Complaint," nor are they seeking depositions. *See* Defs.' Mot. to Extend Time, R.77 ("Mot."), at Pg. ID 1069. As Defendants know from the discovery requests served by Plaintiffs on April 6 and the schedule proposed by Plaintiffs earlier the same day, Plaintiffs are currently seeking production of only four limited categories of documents and responses to just five narrow interrogatories. (*See* Ex. A and Ex. B.) The Court has already noted in its March 31 Order that "most of Plaintiffs' discovery requests are appropriately narrow," while also finding the document request and interrogatory related to congressional

staffers to be "overly broad."  Order, R. 69, Pg. ID 977.  Plaintiffs have further narrowed even the requests that the Court found "appropriately narrow," and have more precisely described the other requests to limit them to the few congressional staffers involved in drafting the Executive Orders.  The burden imposed on Defendants by these requests is entirely reasonable (as well as inevitable).[1]

Given the limited nature of the discovery requests, it is difficult to contemplate any circumstance in which Government lawyers would need to spend "thousands" of hours conducting a privilege review (*see* Mot. at Pg. ID 1069).  Defendants have no serious argument that Plaintiffs' discovery requests implicate executive privilege.[2]  Neither the presidential communications privilege (which is rooted in "the President's Article II powers" and protects "materials that reflect presidential decisionmaking") nor the deliberative process privilege (which gives "government officials freedom to debate alternative approaches in private") applies to the discovery that Plaintiffs have served.  *In re Sealed Case*, 121 F.3d 729, 748, 744, 737 (D.C. Cir. 1997).  Most of Plaintiffs' requests seek evidence pre-dating

---

[1] As proposed below, after this first phase of limited discovery is complete, and after the Court decides the motion to dismiss, the parties can meet and confer about the parameters of any additional discovery that may be appropriate.

[2] The Government appears to acknowledge this, noting that the privilege questions they allude to would be an "issue of first impression."  Mot. at Pg. ID 1069.

the election,[3] and Defendants' own motion to dismiss argues that a candidate is a "private person" and not a "government actor," and that a candidate's pre-election statements are not "official acts." MTD Pg. ID 1042. Simply put, statements by Candidate Trump are no more subject to a claim of executive privilege than statements by Candidate Clinton or any other candidate.

If Defendants truly intend to argue for an unprecedented extension of executive privilege to cover candidates for political office or legislative staff, they may do so as discovery moves forward. But novel (let alone baseless) theories for shielding some documents are no justification for a blanket stay on any and all discovery.

---

[3] Document Request 4 and Interrogatory 2 relate solely to communications prior to the inauguration involving certain congressional staffers, which are clearly not covered by the presidential communications privilege. *See, e.g.*, *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1116, 1119 (D.C. Cir. 2004) (privilege applies only to "immediate White House advisers" in the Office of the President and their staff, even when the information sought relates to the exercise of a "Presidential duty"); *Fish v. Kobach*, No. 16-cv-2105, 2017 WL 1373882, at *6 (D. Kan. Apr. 17, 2017) ("[A] president-elect . . . has no *constitutional* power to make any decisions on behalf of the Executive Branch. No court has recognized the applicability of the executive privilege to communications made before a president takes office."). And Interrogatories 3-5 relate to solely factual information, which the Government cannot seriously claim is privileged. *See, e.g.*, *Sealed Case*, 121 F.3d at 737 ("The deliberative process privilege does not . . . protect material that is purely factual . . . .").

## IV. The Court Has All the Information It Needs to Enter a Scheduling Order at This Time.

Under Rule 16(b)(1)(B), the Court may issue a Rule 16 order "so long as the judge consults with the parties' attorneys" (as it did on April 13), without requiring submission of a Rule 26(f) report. *See Lasisi v. Follett Higher Educ. Grp.*, 598 F. App'x 437, 441 (7th Cir. 2015) ("[A] district judge may issue a scheduling order without first receiving the parties' report under Rule 26(f) so long as the judge consults 'with the parties' attorneys . . . .'" (quoting Fed. R. Civ. P. 16(b)(1)(B))).

While the parties disagree as to whether their April 6 meet and confer constituted a formal Rule 26(f) conference, the Court need not resolve that dispute in order to enter a scheduling order. Nor would another meet and confer serve any purpose. This is not a case where the parties disagree about the nuances covered by Rule 26(f). Rather, the disagreement is fundamental — whether even limited discovery should proceed at this time. It is clear that a 26(f) plan would simply recite competing positions on nearly every issue, with Defendants insisting that no discovery should occur and Plaintiffs setting out the same proposal for discovery that they outline here.

The most efficient solution would be for the Court to enter a scheduling order under Rule 16(b)(1)(B) establishing the following two-stage approach. First, the parties would proceed only with initial disclosures and the limited discovery that Plaintiffs served on April 6. On the basis of the discovery obtained, which

9

Plaintiffs expect will add importantly to the existing evidence of religious animus, Plaintiffs will be prepared to file a motion for a preliminary injunction. Second, within 21 days of the Court's ruling on the Defendants' motion to dismiss, the parties would confer and submit a joint report to the Court regarding the remainder of the case, including with respect to briefing of a motion for a preliminary injunction. This approach alleviates any concerns Defendants might claim to have regarding wide-ranging discovery, while accommodating Plaintiffs' request for targeted discovery to support a motion for a preliminary injunction.

Thus, Plaintiffs ask that the Court enter a Scheduling Order:

> (1) Requiring initial disclosures to be exchanged within one week of entry of the Scheduling Order. This should present little burden to Defendants since initial disclosures have been made previously in other cases challenging the Revised Executive Order.[4]
>
> (2) Requiring Defendants to produce the single document responsive to Document Request 1 (the Giuliani memo) within one week of entry of the Scheduling Order. Production of this document should present little burden to Defendants. And, to the extent Defendants are serious about asserting executive privilege over *pre-election*

---

[4] *See, e.g.*, *Doe v. Trump*, No. 17-cv-178, ECF #27 (W.D. Wash. Apr. 12, 2017) (scheduling order requiring exchange of initial disclosures and submission of a discovery plan); *Ali v. Trump*, No. 17-cv-135, ECF #38 (W.D. Wash. Feb. 21, 2017) (same); *Washington v. Trump*, No. 17-cv-141, ECF #87 (W.D. Wash. Feb. 15, 2017) (same); Joint Status Report & Discovery Plan, *Washington v. Trump*, No. 17-cv-141, ECF #177 (W.D. Wash.) (filed Apr. 5, 2017) (confirming that parties exchanged initial disclosures); Joint Status Report & Discovery Plan, *Ali v. Trump*, No. 17-cv-135, ECF #82 (W.D. Wash.) (filed Mar. 28, 2017) (same).

campaign documents, it will permit Plaintiffs to begin the process of challenging that assertion.

(3) Requiring Defendants to respond to Document Requests 2-4 and Interrogatories 1-5 within three weeks of entry of the Scheduling Order. Those requests were served on Defendants on April 6, and therefore the deadline for the Defendants to respond under FRCP 34(b)(2)(A) and 33(b)(2) would have been May 8. These requests are narrower versions of those filed with Plaintiffs' Motion for Expedited Discovery, which Defendants have had since March 16.

## **CONCLUSION**

Plaintiffs therefore ask that the Court deny Defendants' motion to the extent it seeks to halt all proceedings, and instead enter the limited order described above.

Dated: April 21, 2017                                        Respectfully submitted,

## Counsel for Arab American Civil Rights League

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
Nabih H. Ayad (P59518)
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

/s/ Rula Aoun
Rula Aoun (P79119)
4917 Schaefer Rd.
Dearborn, MI 48126
(313) 633-0231
rula@acrlmich.org

HAMMOUD, DAKHLALLAH &
ASSOCIATES, PLLC
/s/ Kassem M. Dakhlallah
Kassem Dakhlallah (P70842)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com

VIDA LAW GROUP, PLLC
/s/ Mona Fadlallah
/s/ Natalie C. Qandah
Mona Fadlallah (P64197)
Natalie C. Qandah (P58434)
43050 Ford Road, Suite 160
Canton, MI 48187
Phone: (734) 456-9004
Facsimile: (734) 456-9003
Mona@vidalawpllc.com
Natalie@vidalawpllc.com

## Counsel for American Arab Chamber of Commerce

FARHAT & ASSOCIATES, PLLC
/s/ Helal Farhat
Helal Farhat (P64872)
Counsel for the American Arab
Chamber of Commerce
6053 Chase Rd.
Dearborn, MI 48126
(313) 945-5100
hfarhat@saflegal.com

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
Nabih H. Ayad (P59518)
Attorney for Plaintiffs
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

12

**Counsel for Hend Alshawish, Salim Alshawish, Yousef Abdullah, Fahmi Jahaf, and Mohamed Alshega**

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
Nabih H. Ayad (P59518)
Attorney for Plaintiffs
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

/s/ Rula Aoun
Rula Aoun (P79119)
4917 Schaefer Rd.
Dearborn, MI 48126
(313) 633-0231
rula@acrlmich.org

HAMMOUD, DAKHLALLAH & ASSOCIATES, PLLC
/s/ Kassem M. Dakhlallah
Kassem Dakhlallah (P70842)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com

VIDA LAW GROUP, PLLC
/s/ Mona Fadlallah
/s/ Natalie C. Qandah
Mona Fadlallah (P64197)
Natalie C. Qandah (P58434)
43050 Ford Road, Suite 160
Canton, MI 48187
Phone: (734) 456-9004
Facsimile: (734) 456-9003
Mona@vidalawpllc.com
Natalie@vidalawpllc.com

/s/ Ali K. Hammoud
Ali K. Hammoud (P73076)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
ah@hdalawgroup.com

13

**Counsel for American Civil Liberties Union of Michigan,
Arab American and Chaldean Council, Arab American Studies Association,
Adeeb Saleh, Sofana Bella, Hilal Alkatteeb, and
S.A., a minor through her Parent and Next Friend, Hilal Alkatteeb**

/s/ Miriam Aukerman
Miriam Aukerman (P63165)
American Civil Liberties Union Fund
of Michigan
1514 Wealthy SE, Suite 242
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

/s/ Samuel R. Bagenstos
Samuel R. Bagenstos (P73971)
Cooperating Attorney,
American Civil Liberties Union
Fund of Michigan
625 South State Street
Ann Arbor, Michigan 48109
(734) 647-7584
sbagen@gmail.com

/s/ Michael J. Steinberg
Michael J. Steinberg (P43085)
Daniel S. Korobkin (P72842)
Kary L. Moss (P49759)
American Civil Liberties Union Fund
of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6814
msteinberg@aclumich.org

/s/ Margo Schlanger
Margo Schlanger (N.Y. Bar
#2704443 (3d Dept))
Cooperating Attorney,
American Civil Liberties Union
Fund of Michigan
625 South State Street
Ann Arbor, Michigan 48109
(734) 615-2618
margo.schlanger@gmail.com

/s/ Jason C. Raofield
Jason C. Raofield (D.C. Bar #463877)
Covington & Burling LLP
One City Center
850 10th Street, NW
Washington, D.C. 20001
(202) 662-5072
jraofield@cov.com

## CERTIFICATE OF SERVICE

This Brief and the accompanying Exhibits were filed on April 21, 2017, via the Court's ECF system, which provides notice to all counsel of record.

/s/ Jason C. Raofield
Jason C. Raofield
(D.C. Bar #463877)