## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ARAB AMERICAN CIVIL RIGHTS
LEAGUE, *et al.*,

       Plaintiffs,                            Case No. 17-10310

           v.                              Hon. Victoria A. Roberts

DONALD TRUMP, President of the United      Oral Argument Requested
States, *et al.*,

       Defendants.
_____/

## DEFENDANTS' REPLY TO PLAINTIFFS'
## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**INTRODUCTION**................................................................................1

**ARGUMENT** ...................................................................................2

   **I. Plaintiffs Do Not Have Standing** ..............................................2

      *A.*   *Stigma*.................................................................................2

      *B.*   *Family or Members' Familial Separations*……………………....5

      *C.*   *Economic Harm*……………………...………………………..7

   **II. Plaintiffs' Claims Fail On The Merits** ......................................9

      *A.*   *Establishment Clause* .......................................................9

      *B.*   *Equal Protection* ...............................................................14

      *C.*   *Freedom of Speech and Association* ................................. 15

**CONCLUSION**................................................................................15

**CERTIFICATE OF SERVICE** ...................................................17

# <u>TABLE OF AUTHORITIES</u>

## CASE LAW

*Allen v. Wright*,
468 U.S. 737 (1984) ....................................................................................8, 9

*Andrade-Garcia v. Lynch*,
828 F.3d 829 (9th Cir. 2016)..................................................................10

*Awad v. Ziriax*,
670 F.3d 1111 (10th Cir. 2012)...........................................................2, 3

*Bains v. United States*,
2014 WL 3389117 (N.D. Ohio July 9, 2014)....................................11

*Bangura v. Hansen*,
434 F.3d 487 (6th Cir. 2006) ............................................... 5, 11, 14

*Bays v. City of Fairborn*,
668 F.3d 814 (6th Cir. 2012) ..................................................................15

*Ben-Issa v. Reagan*,
645 F. Supp. 1556 (W.D. Mich. 1986)..............................................15

*Bowen v. Kendrick*,
487 U.S. 589 (1988) ..................................................................................10

*Burrafato v. U.S. Dep't of State*,
523 F.2d 554 (2d Cir. 1975) ..................................................................19

*Catholic League for Religious & Civil Rights v. City and County of San Francisco*,
624 F.3d 1043 (9th Cir. 2010) (en banc).........................................2, 3

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013) ..............................................................................7

*Fiallo v. Bell*,
430 U.S. 787 (1977) ..................................................................................10

*Freedom From Religion Found., Inc. v. Obama,*
   641 F.3d 803 (7th Cir. 2011) ...................................................................4

*Heller v. Doe,*
   509 U.S. 312 (1993) ..............................................................................14

*Kerry v. Din,*
   135 S. Ct. 2128 (2015) ........................................................................5, 11

*Kleindienst v. Mandel,*
   408 U.S. 753 (1972) ............................................................. 7, 9, 10, 11, 15

*Mathews v. Diaz,*
   426 U.S. 67 (1976) ..................................................................................1

*McCreary Cnty. v. ACLU of Ky.,*
   545 U.S. 844 (2005) ......................................................................... 12, 13

*Mehdi v. U.S. Postal Serv.,*
   988 F. Supp. 721 (S.D.N.Y. 1997) ..........................................................9

*Moore v. Bryant,*
   853 F.3d 245 (5th Cir. 2017) ................................................................5, 9

*NAACP v. Horne,*
   626 F. App'x 200 (9th Cir. 2015). .........................................................5

*Narenji v. Civiletti,*
   617 F.2d 745 (D.C. Cir. 1979) ........................................................... 12, 13

*In re Navy Chaplaincy,*
   534 F.3d 756 (D.C. Cir. 2008) ..............................................................19

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.,*
   650 F.3d 1046 (6th Cir. 2011)................................................................12

*Newdow v. Lefevre,*
   598 F.3d 638 (9th Cir. 2010)...................................................................4

*Newdow v. Rio Linda Union Sch. Dist.,*
   597 F.3d 1007 (9th Cir. 2010)................................................................4

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
    508 U.S. 656 (1953) ...............................................................................8

*Rajah v. Mukasey*,
    544 F.3d 427 (2d Cir. 2008) ........................................................ 14, 15

*Reno v. Am-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) ..................................................................... 12, 13

*Saavedra Bruno v. Albright*,
    197 F.3d 1153 (D.C. Cir. 1999) ...........................................................6

*Sarsour v. Trump*,
    2017 WL 1113305 (E.D. Va. Mar. 24, 2017) ............................... 13, 14

*Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*,
    641 F.3d 197 (6th Cir. 2011) (en banc) ...............................................8

*United States ex rel. Knauff v. Shaughnessy*,
    338 U.S. 537 (1950) ...........................................................................9, 10

*United States v. Verdugo-Urquidez*,
    494 U.S. 259 (1990) .............................................................................7

*Valley Forge Christian Coll. v. Ams. United for Sep. of Church & State, Inc.*,
    454 U.S. 464 (1982) .........................................................................4, 10

*Washington v. Trump*,
    2017 WL 1045950 (W.D. Wash. Mar. 16, 2017).................................14

## INTRODUCTION

Defendants hereby reply to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss (ECF No. 86) (hereinafter, "Plaintiffs' Opposition" or "Pls.' Opp."). Defendants focus on three critical flaws in Plaintiffs' Opposition: (1) Plaintiffs' claims are unripe and do not support their claimed bases for standing; (2) Plaintiffs' perceived religious-discrimination claims are wholly subjective and unsupported by the face and official purpose of the Order; and (3) Plaintiffs' substantive arguments completely ignore how "significantly different considerations" are at play when the federal government makes distinctions in immigration law based on alienage and nationality because "it is the business of the political branches of the Federal Government...to regulate the conditions of entry and residence of aliens." *Mathews v. Diaz*, 426 U.S. 67, 84 (1976).

Contrary to Plaintiffs' arguments, the Order neither singles out Muslims nor bans their travel. Rather, it imposes a short-term suspension on travel of nationals of certain countries, without regard to religion, and with waivers available to facilitate certain legitimate travel from the designated countries even during that limited period. Moreover, the purpose of the Order is unconnected to religion. Its stated, official purpose is to permit the Executive Branch with time to review the nation's screening procedures to ensure that they adequately detect terrorists.

1

## ARGUMENT

### I.   Plaintiffs Do Not Have Standing.

Plaintiffs premise their standing on "three distinct injuries: stigma, family separation, and economic cost." Pls.' Opp. at 10. These are addressed in turn.

#### A.   *Stigma*

For their establishment and equal protection claims, Plaintiffs claim that they suffer an "immediate stigmatic injury," *id.* at 23, because the Order "officially condemn[s] Plaintiffs' religion," *id.* at 12–13. But perceived stigmatic or "condemnation" harms are insufficient to for Establishment Clause standing when they are entirely subjective and indirect. Plaintiffs here contend that the Order conveys "an official message of disapproval and hostility towards Muslims," Pls.' Opp. at 11 (quotations omitted), but they fail to point to any part of the Order that condemns or stigmatizes any religion; Plaintiffs' "injury" is derived *solely from their own inferences*.

Plaintiffs cite to cases such as *Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012) and *Catholic League for Religious & Civil Rights v. City and County of San Francisco*, 624 F.3d 1043 (9th Cir. 2010) (en banc) to support their claim that a government message of condemnation of religion is sufficient for "stigma" standing. But those cases involved a personalized injury from actual government

speech rather than an abstract objection to government policy. *Awad* dealt with a "state amendment *expressly* condemn[ing the plaintiff's] religion[.]" 670 F.3d at 1123 (emphasis in original) (establishing direct injury in fact necessary for standing). The resolution in *Catholic League* condemned a "foreign country…the Vatican (formerly known as Holy Office of the Inquisition)"; "denounce[d a] Cardinal's directive" because it was "'hateful,' 'insulting,' and 'callous'; and urge[d] the local archbishop and Catholic Charities to 'defy' the Cardinal's instructions." 624 F.3d at 1047. The plaintiffs in those cases were thus exposed to express, official speech directed towards them and their religion.[1]

In this case, the Order does not expose Plaintiffs to any religious message, because it says nothing about religion. Nor is it directly targeted at Plaintiffs, because it applies only to aliens abroad. Plaintiffs cannot manufacture standing by re-characterizing their abstract injury from "government *action*" directed against others as a personal injury from "a governmental *message* [concerning] religion" directed towards them. *In re Navy Chaplaincy*, 534 F.3d 756, 764 (D.C. Cir. 2008). Indeed, their approach would mean that the Order could be challenged by any Muslim in this country. Moreover, Plaintiffs' subjective sense of offense

---

[1]   *See Catholic League*, 624 F.3d at 1050 n.26 ("[T]he plaintiffs here are not suing on the mere principle of disagreeing with San Francisco, but because of that city's *direct* attack and disparagement of their religion." (emphasis added)).

3

draws its force not from the text or the effect of the Order, which is carefully tailored to respond to specific national security concerns, but instead by linking the Order with political statements from a presidential campaign. These perceived improper motives, stemming from statements made outside the government, are *not* the same thing as injury from an official government message about religion.

Without any direct stigmatization, Plaintiffs' establishment claims are "covered by the rule of *Valley Forge* [*Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982)]...that offense at the behavior of the government, and a desire to have public officials comply with (plaintiffs' view of) the Constitution, differs from a legal injury" and does not support standing. *Freedom From Religion Found., Inc. v. Obama*, 641 F.3d 803, 807 (7th Cir. 2011); *see also Newdow v. Lefevre*, 598 F.3d 638, 641 (9th Cir. 2010); *Newdow v. Rio Linda Union Sch. Dist.*, 597 F.3d 1007, 1016 (9th Cir. 2010). Of course, Plaintiffs disagree because the *Valley Forge* plaintiffs objected to the federal government's transfer of property to a Christian college on general grounds but were not individually "target[ed]" or "affect[ed]" in any way. Pls.' Opp. at 14. But *Valley Forge* could just as easily have been characterized as an objection to the transfer's alleged "message" of "endorsement" of Christianity. *See* 454 U.S. at 466–68, 486–87.

4

This same problem of standalone subjective offensiveness is equally fatal to Plaintiffs' equal protection claim because "courts have rejected attempts to cross-pollinate Equal Protection Clause standing jurisprudence with Establishment Clause cases." *Moore v. Bryant*, 853 F.3d 245, 250 (5th Cir. 2017) (citing *NAACP v. Horne*, 626 F. App'x 200, 201 (9th Cir. 2015) (unpublished)).

B.     *Family or Members' Familial Separations*

Plaintiffs allege that they have standing based on familial separation allegedly caused by the Order. They fail to discuss *Bangura v. Hansen*, however, in which the Sixth Circuit specifically held that a U.S. citizen spouse has no recognized liberty interest in the "denial of an immediate relative visa," 434 F.3d 487, 496 (6th Cir. 2006), concluding that the spouse "does not have constitutional standing to challenge the denial of [the spousal visa] petition," *id.* at 500. *Accord Burrafato v. U.S. Dep't of State*, 523 F.2d 554, 554, 557 (2d Cir. 1975) (denying standing to an American spouse and asserting consular nonreviewability over a visa denial). The Supreme Court's recent decision in *Kerry v. Din*, did not disturb these decisions, as its controlling opinion reserved judgment as to whether an American citizen had any protected interest in her husband's entry. 135 S. Ct. 2128, 2139, 2141 (2015) (Kennedy, J., concurring).[2]

---

[2]     In any event, the alleged right in *Din* was tied to the fundamental right to

5

Plaintiffs distinguish this case because it is not a challenge to a consular officer's decision, but a "categorical policy decision." Pls.' Opp. at 17. That would turn this fundamental aspect of immigration law upside-down by granting the President, Secretary of State, and Congress less deference in their foreign-affairs and national-security decisionmaking than individual consular officers. The doctrine is instead premised on the broader separation-of-powers principle that "any policy toward aliens" is "so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159–60 (D.C. Cir. 1999). That principle has a limited exception for a U.S. person whose own constitutional rights are allegedly violated by a particular alien's challenged exclusion. *Id.* at 1163–64. But besides Plaintiffs' freedom of speech/association claim (addressed below), that exception is inapplicable here.

Moreover, Plaintiffs fail to adequately respond to Defendants' contention that any alleged injuries stemming from the Order's suspension of entry are unripe given the Order's waiver process. Although Plaintiffs contend the waiver process imposes "onerous burdens," Pls.' Opp. at 23, they offer no answer to the objection that they are not personally subject to the allegedly discriminatory burden, and the

---

marry. *Din*, 135 S. Ct. at 2134 (plurality opinion). Plaintiffs expressly disclaim any

6

aliens abroad who are subject to the entry suspension have no constitutional rights against discrimination concerning entry. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 265, 269–71 (1990); *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972). This defect is most glaring as to the organizational Plaintiffs. For example, the ACLU speculates that the waiver process will "make[] it more complicated" for it to conduct activities such as event planning. Pls.' Opp. at 24, but has not alleged that any planned event is scheduled to occur within the 90-day suspension, nor identified individual from the six countries invited to speak, nor specified how such an individual would be unable to obtain a waiver.  *See* SAC ¶¶ 231–42.

C.      *Economic Harm*

The Plaintiffs also assert that the Order "ha[s] caused…significant financial loss" to themselves or their organizations. Pls.' Opp. at 19. Plaintiffs' purported economic injuries are insufficient to establish standing.

First, such injury is both speculative and not "fairly traceable" to the Order, given that plaintiffs have failed to establish that the Order's suspension of entry would actually preclude any specific family member (or invitee) from entry during the 90 day suspension period, especially considering the availability of waivers. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1151 (2013).

---

reliance on such a right.  Pls.' Opp. at 18 n.8.

Second, Plaintiffs' alleged economic injuries cannot support standing for an Establishment claim because such economic harms would be suffered equally by anyone with relatives from the six designated countries, regardless of their religion. *See Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 207 (6th Cir. 2011) (en banc) ("[E]ven when litigants have established a substantial injury from a government action, they cannot challenge its constitutionality unless [they] can show that [they are] within the class whose constitutional rights are allegedly infringed." (quotations omitted)). Under *Jefferson County*, there cannot be a "mismatch" between the alleged basis for standing and the alleged constitutional violation. *Id.*

To get around this discrepancy, Plaintiffs blur the line between personal and incidental effects. Plaintiffs' alleged injuries, however, are insufficient for claims of religious discrimination when *all* persons (regardless of religion) with family, or organizations doing business, within the six designated countries, are affected the same. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). Without personally differential treatment, no amount of pointing to perceived religious stigma can get around this deficiency. *See Allen v. Wright*, 468 U.S. 737, 757 n.22 (1984) ("[S]tigmatic injury…requires identification of some concrete interest with respect to which

8

respondents are personally subject to discriminatory treatment[.]"); *Moore*, 853 F.3d at 251; *Mehdi v. U.S. Postal Serv.*, 988 F. Supp. 721, 731 (S.D.N.Y. 1997) (Sotomayor, J.). Plaintiffs therefore lack standing under *Wright*.

## II. Plaintiffs' Claims Fail On The Merits.

### A.   *Establishment Clause*

Plaintiffs insist that the Supreme Court's decision in *Mandel*, is either inapplicable, Pls. Opp. at 28–30, or would allow courts to disregard the Order's stated purpose, *id.* at 26–28. Plaintiffs are incorrect.

First, Plaintiffs assert that *Mandel* does not apply to the Order, arguing that Congress alone deserves deference in adopting broad immigration policies because it has plenary power over immigration, whereas the President exercises only delegated power. "The right to" exclude aliens, however, "stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 & 543 (1950) (rejecting constitutional challenge to summary exclusion of an alien "because the power of exclusion of aliens is also inherent in the executive department of the sovereign, [and] Congress may in broad terms authorize the executive to exercise the power"). Thus, "[w]hen Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative

9

power. It is implementing an inherent executive power." *Id.* Here, the fact that Congress has augmented this power by expressly conferring that authority makes *Mandel* more appropriate, not less. *See, e.g.*, *Andrade-Garcia v. Lynch*, 828 F.3d 829, 834 (9th Cir. 2016). Indeed, *Mandel* directly addressed the Executive branch's exercise of those powers. 408 U.S. at 770. In this case, just as in *Mandel*, the Court is confronted with the President's exercise of that immigration power.

Second, Plaintiffs suggest that Establishment Clause claims are exempt from *Mandel*. Although the Supreme Court has not previously applied *Mandel* specifically to that Clause, the case involved the same Amendment, *Mandel*, 408 U.S. at 769–70, and was also applied to allegations of unequal treatment, *Fiallo v. Bell*, 430 U.S. 787, 792–96 (1977). There is no principled basis for exempting the Establishment Clause, which "establishes a norm of conduct which the Federal Government is bound to honor—to no greater or lesser extent than any other inscribed in the Constitution." *Valley Forge*, 454 U.S. at 484. Establishment claims are subject to the same "presumption in favor of the constitutionality of statutes" as other constitutional claims, *Bowen v. Kendrick*, 487 U.S. 589, 617 (1988), and the same justiciability principles.

Plaintiffs further argue that even if *Mandel* applies, it requires the Court to consider whether the Order's stated purpose was given in "bad faith." Pls.' Opp. at

10

26–28. *Mandel* makes clear, however, that determining whether the Executive Branch's decision rests on a "facially legitimate and bona fide reason" does *not* include "look[ing] behind" that reason. 408 U.S. at 769–70. Courts can ensure that the stated rationale is valid, but *Mandel* precludes searching for ulterior motives. *Id.* In the Sixth Circuit, "[t]his standard may be even lower than rational basis review." *Bangura,* 434 F.3d at 495; *Bains v. United States*, 2014 WL 3389117, at *3 (N.D. Ohio July 9, 2014). Courts in the Sixth Circuit therefore "uphold[] immigration [laws] so long as they are conceivably related to the achievement of a federal interest." *Bangura*, 434 F.3d at 495 (quotations omitted).

Plaintiffs try to get around this precedent by citing Justice Kennedy's concurrence in *Din*, Pls.' Opp. at 26, which states that absent an "affirmative showing of bad faith on the part of [a] consular officer" denying a visa, "plausibly alleged with sufficient particularity," a court may not "look behind" the Government's exclusion decision for additional factual details. 135 S. Ct. at 2141. But *Din* is inapposite because refusing visas to aliens abroad does not violate Plaintiffs' own Establishment rights. And even if courts could consider claims of bad faith for consular officers, that would not warrant second-guessing the President's formal national-security determinations.

11

Plaintiffs therefore argue that the Court may examine "readily discoverable fact[s]," should ignore the Order's stated purpose based on campaign statements, and accept their allegations of what the Order "really" stands for. Pls.' Opp. at 31 (quoting *McCreary Cnty. v. ACLU of Ky.*, 545 U.S. 844, 862 (2005)). Yet Plaintiffs never confront the Supreme Court's holding that, when "[t]he Executive...deem[s] nationals of a particular country a special threat," "a court would be ill equipped to determine the[] authenticity and utterly unable to assess the[] adequacy" of that determination. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 491 (1999). Disregarding the President's risk assessments and foreign-policy judgments flouts this rule.[3]

Even if domestic Establishment Clause cases provide the proper standard of review, *see* Pls.' Opp. at 30–40, those cases and their progeny are entirely distinguishable because they deal with explicitly religious endorsements. Again, *McCreary* and the other cases Plaintiffs rely upon concern explicitly religious displays, messages, or endorsement, many of which were expressly confirmed by official pronouncements. 545 U.S. at 868–74. *McCreary* thus cautioned that

---

[3]    Plaintiffs' mistakenly suggest that because they have alleged that the President's national security determination is a "pretext for discrimination," this Court must accept that "factual allegation" as true. Pls.' Opp. at 27–28. That is incorrect where the allegations are "conclusory legal allegations." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011).

12

whether official action has an improper purpose should *not* be assessed by "judicial psychoanalysis of a drafter's heart of hearts." *Id.* at 862–63. Consequently, a statement should only be considered if it is both an official and one that unambiguously reveals the legislative intent without need for any "psychoanalysis." *Id.* Here, however, Plaintiffs use campaign statements from before the Order's existence, which are ambiguous at best.

Regardless, no precedent permits impugning the Order's express national-security purpose based on extrinsic material. Plaintiffs likewise cannot dispute that the presumption of regularity applies with the utmost force to the President, and fail to refute the difficulties that "ill equipped" courts would face in attempting "to determine the authenticity" of such national-security judgments. *Reno*, 525 U.S. at 491. Plaintiffs suggest that these principles pose no obstacle here because the statements at issue "convey an unmistakable and impermissible message" of religious discrimination. Pls.' Opp. at 36. But the statements' supposed clarity is irrelevant because Plaintiffs fail to show that they reflect the *government*'s "official objective." *McCreary*, 545 U.S. at 862. Moreover, Plaintiffs' reliance on campaign statements ignores how "the substantive revisions reflected in [the Order] have reduced the probative value of the President's [past] statements" and undercut any claim that "the predomina[nt] purpose of [the Order] is to

13

discriminate against Muslims based on their religion." *Sarsour v. Trump*, 2017 WL 1113305, at \*11–12 (E.D. Va. Mar. 24, 2017); *see also Washington v. Trump*, 2017 WL 1045950, at \*4 (W.D. Wash. Mar. 16, 2017) (refusing to "conclude that the policy changes in EO2 are minor").

B.   *Equal Protection*

For purposes of equal protection, the Supreme Court has ordered that courts accept, under rational-basis review, a legislature's classifications even when not made with "mathematical nicety or because it results in some inequality." *Heller v. Doe*, 509 U.S. 312, 321 (1993). The President's cautious approach of  suspending entry of certain foreign nationals from six countries previously determined to pose heightened risks, while his administration reviews current screening procedures to ensure that they adequately detect potential terrorists, easily satisfies *Bangura*'s "lower than rational basis" test. 434 F.3d at 495. Plaintiffs may disagree with the President's decision, but it is not for this Court to second-guess it. *See, e.g.*, *Narenji v. Civiletti*, 617 F.2d 745, 748 (D.C. Cir. 1979) ("[I]t is not the business of courts to pass judgment on the decisions of the President in the field of foreign policy."). Plaintiffs argue that *Rajah v. Mukasey*, 544 F.3d 427 (2d Cir. 2008) is inapplicable, Pls. Opp. at 41–42, but a similar national-security basis existed there, and the Second Circuit unanimously "join[ed] every circuit that ha[d] considered

14

the issue in concluding that the Program [did] not violate Equal Protection[.]" *Rajah*, 544 F.3d at 439 (citations omitted). The Plaintiffs here are no different.

    C.    *Freedom of Speech and Association*

Finally, even if any of the Plaintiffs had standing to bring a freedom of speech/association claim, the same case that would allow for such standing (*Mandel*) equally forecloses that claim on the merits. 408 U.S. at 770 (concluding that the First Amendment rights of American scholars and students were not violated when a Belgian scholar whom universities invited to speak was denied entry into the United States). Plaintiffs' citation to *Bays v. City of Fairborn*, 668 F.3d 814 (6th Cir. 2012) is entirely inapt because that case dealt with the narrow tailoring of the time, place, and manner restrictions imposed by a city's solicitation policy. *Mandel* is on all fours with the present case: Plaintiffs seek to invite aliens abroad to the United States to hear what they have to say. If Plaintiffs have standing to raise a free speech claim, *Mandel* controls and its requirement of a facially legitimate and bona fide reason for denying entry is satisfied. *See, e.g.*, *Ben-Issa v. Reagan*, 645 F. Supp. 1556, 1562 (W.D. Mich. 1986).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion to dismiss.

15

Respectfully submitted this 22nd day of May 2017.

CHAD A. READLER
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director

GISELA A. WESTWATER
Assistant Director

EREZ REUVENI
Senior Litigation Counsel

KATHERINE J. SHINNERS
Trial Attorney

By: */s/ Joshua S. Press*
JOSHUA S. PRESS
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 305-0106
joshua.press@usdoj.gov

BRIANA YUH
Trial Attorney

*Attorneys for Defendants*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2017, I electronically filed the foregoing DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS with the Clerk of the Court for the Eastern District of Michigan by using the CM/ECF system. Notice of this filing will be sent out to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

By: _/s/ Joshua S. Press_
JOSHUA S. PRESS
Trial Attorney
United States Department of Justice
Civil Division

17