## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ARAB AMERICAN CIVIL RIGHTS LEAGUE**, et al.,

*Plaintiffs*,

*v.*

**DONALD TRUMP**, et al.,

*Defendants*.

Case No. 2:17-cv-10310-VAR-SDD

Hon. Victoria A. Roberts

Mag. J. Stephanie D. Davis

### Statement Regarding Concurrence

Pursuant to E.D. Mich. L.R. 7.1(a) and L.R. 37.1, Plaintiffs' counsel conferred with Defendants' counsel on May 23, 2017, regarding Defendants' objections to the requested discovery and to seek concurrence in Plaintiffs' motion to compel. Counsel for Defendants stated that they do not concur in this motion for the reasons set forth in their written objections.

### PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Plaintiffs, by and through their undersigned counsel, move to compel the production of the document sought in Plaintiffs' Document Request No. 1. The grounds for this Motion are set forth more fully in the attached supporting Memorandum.

Dated: May 26, 2017                                    Respectfully submitted,

**Counsel for Arab American Civil Rights League**

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
_____
Nabih H. Ayad (P59518)
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

/s/ Rula Aoun
_____
Rula Aoun (P79119)
4917 Schaefer Rd.
Dearborn, MI 48126
(313) 633-0231
rula@acrlmich.org

HAMMOUD, DAKHLALLAH &
ASSOCIATES, PLLC
/s/ Kassem M. Dakhlallah
_____
Kassem Dakhlallah (P70842)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com

VIDA LAW GROUP, PLLC
/s/ Mona Fadlallah
_____
/s/ Natalie C. Qandah
_____
Mona Fadlallah (P64197)
Natalie C. Qandah (P58434)
43050 Ford Road, Suite 160
Canton, MI 48187
Phone: (734) 456-9004
Facsimile: (734) 456-9003
Mona@vidalawpllc.com
Natalie@vidalawpllc.com

**Counsel for American Arab Chamber of Commerce**

FARHAT & ASSOCIATES, PLLC
/s/ Helal Farhat
_____
Helal Farhat (P64872)
Counsel for the American Arab
Chamber of Commerce
6053 Chase Rd.
Dearborn, MI 48126
(313) 945-5100
hfarhat@saflegal.com

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
_____
Nabih H. Ayad (P59518)
Attorney for Plaintiffs
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

2

**Counsel for Hend Alshawish, Salim Alshawish, Yousef Abdullah, Fahmi Jahaf, and Mohamed Alshega**

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
_____
Nabih H. Ayad (P59518)
Attorney for Plaintiffs
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

HAMMOUD, DAKHLALLAH &
ASSOCIATES, PLLC
/s/ Kassem M. Dakhlallah
_____
Kassem Dakhlallah (P70842)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com

/s/ Ali K. Hammoud
_____
Ali K. Hammoud (P73076)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
ah@hdalawgroup.com

/s/ Rula Aoun
_____
Rula Aoun (P79119)
4917 Schaefer Rd.
Dearborn, MI 48126
(313) 633-0231
rula@acrlmich.org

VIDA LAW GROUP, PLLC
/s/ Mona Fadlallah
_____
/s/ Natalie C. Qandah
_____
Mona Fadlallah (P64197)
Natalie C. Qandah (P58434)
43050 Ford Road, Suite 160
Canton, MI 48187
Phone: (734) 456-9004
Facsimile: (734) 456-9003
Mona@vidalawpllc.com
Natalie@vidalawpllc.com

3

**Counsel for American Civil Liberties Union of Michigan, Arab American and Chaldean Council, Arab American Studies Association, Adeeb Saleh, Sofana Bella, Hilal Alkatteeb and S.A., a minor through her Parent and Next Friend, Hilal Alkatteeb**

/s/ Miriam Aukerman
Miriam Aukerman (P63165)
American Civil Liberties Union Fund
of Michigan
1514 Wealthy SE, Suite 242
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org


/s/ Michael J. Steinberg
Michael J. Steinberg (P43085)
Daniel S. Korobkin (P72842)
Kary L. Moss (P49759)
American Civil Liberties Union Fund
of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6814
msteinberg@aclumich.org


/s/ Jason C. Raofield
Jason C. Raofield (D.C. Bar #463877)
Nishchay H. Maskay (D.C. Bar
#998983)
Covington & Burling LLP
One City Center
850 10th Street, NW
Washington, D.C. 20001
(202) 662-5072
jraofield@cov.com

/s/ Samuel R. Bagenstos
Samuel R. Bagenstos (P73971)
Cooperating Attorney,
American Civil Liberties Union
Fund of Michigan
625 South State Street
Ann Arbor, Michigan 48109
(734) 647-7584
sbagen@gmail.com


/s/ Margo Schlanger
Margo Schlanger (N.Y. Bar
#2704443 (3d Dept))
Cooperating Attorney,
American Civil Liberties Union
Fund of Michigan
625 South State Street
Ann Arbor, Michigan 48109
(734) 615-2618
margo.schlanger@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ARAB AMERICAN CIVIL RIGHTS LEAGUE**, et al.,

*Plaintiffs*,

*v.*

**DONALD TRUMP**, et al.,

*Defendants*.

Case No. 2:17-cv-10310-VAR-SDD

Hon. Victoria A. Roberts

Mag. J. Stephanie D. Davis

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................ 1

STATEMENT OF FACTS ................................................................. 2

I.    Candidate Trump's Call for an Explicit Muslim Ban ................................ 2

II.    The Giuliani Memo ................................................................ 3

III.    Statements From Another Giuliani Commission Member Confirm the Direct Link Between the Giuliani Memo and the Executive Order. ............. 5

IV.    The Single Document at Issue in This Motion ................................... 6

PROCEDURAL BACKGROUND AND DEFENDANTS' OBJECTIONS .......... 6

STANDARD OF REVIEW ............................................................... 10

ARGUMENT ................................................................................ 10

I.    THE GIULIANI MEMO IS RESPONSIVE AND HIGHLY RELEVANT TO PLAINTIFFS' CLAIMS. .............................. 10

    A.    The Discovery Request Is Factually Relevant and Proportional. ...... 11

    B.    The Giuliani Memo Is Relevant to the Establishment Clause Claim. ....................................................................... 12

    C.    The Giuliani Memo Is Also Relevant to Plaintiffs' Other Claims ..... 14

II.    THE COURT SHOULD ORDER DEFENDANTS TO COMPLY WITH THEIR DISCOVERY OBLIGATIONS. ......................... 15

    A.    The President Is Not Immune from Discovery. ................................. 16

    B.    Defendants Must Conduct a Reasonable Search for the Giuliani Memo. ...................................................................... 22

    C.    The Court Has Already Considered and Rejected Defendants' Arguments for Perpetual Delay. ..................................... 26

CONCLUSION .............................................................................. 27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU of Ky. v. Mercer Cnty.*,
  432 F.3d 624 (6th Cir. 2005) ...............................................................13

*Am. Atheists, Inc. v. Port Auth. of N.Y. & N.J.*,
  760 F.3d 227 (2d Cir. 2014) ................................................................13

*Aziz v. Trump*,
  No. 17-cv-116, 2017 WL 580855 (E.D. Va. Feb. 13, 2017)..............................20

*In re Bankers Trust Co.*,
  61 F.3d 465 (6th Cir. 1995) ........................................................22, 24

*In re CareSource Mgmt. Grp.*,
  289 F.R.D. 251 (S.D. Ohio 2013)........................................................25

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004)..........................................................19, 20, 21

*Citizens United v. FEC*,
  558 U.S. 310 (2010)...........................................................................15

*Clinton v. Jones*,
  520 U.S. 681 (1997)...........................................................................16

*Coleman v. Ann Arbor Transp. Auth.*,
  904 F. Supp. 2d 670 (E.D. Mich. 2012) ...........................................15

*Dairyland Power Co-op v. United States*,
  79 Fed. Cl. 659 (2007) .....................................................................21

*Fish v. Kobach*,
  No. 16-cv-2105, 2017 WL 1929010 (D. Kan. May 10, 2017)...........................18

*Flagg v. City of Detroit*,
  252 F.R.D. 346 (E.D. Mich. 2008) ...................................................22

*Flagstar Bank v. Fed. Ins. Co.*,
No. 05-cv-70950, 2006 WL 6651780 (E.D. Mich. Aug. 21, 2006) ..................11

*Hansen Beverage Co. v. Innovation Ventures, LLC*,
No. 09-cv-50630, 2009 WL 2351769 (E.D. Mich. July 29, 2009) ...................25

*Haw. v. Trump*,
No. 17-cv-0050, 2017 WL 1011673 (D. Haw. Mar. 15, 2017)..........................20

*Haworth, Inc. v. Herman Miller, Inc.*,
998 F.2d 975 (Fed. Cir. 1993) .........................................................................24

*IRAP v. Trump*,
No. 17-1351, 2017 WL 2273306 (4th Cir. May 25, 2017) ...............................20

*JPMorgan Chase Bank v. Winget*,
No. 08-cv-13845, 2016 WL 7242136 (E.D. Mich. Dec. 15, 2016)...................10

*Jud. Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*,
230 F. Supp. 2d 12 (D.D.C. 2002)....................................................................16

*Khami v. Ortho-McNeil-Janssen Pharm., Inc.*,
No. 09-cv-11464, 2011 WL 1045545 (E.D. Mich. Mar. 17, 2011) .................22

*Lilly Invs., LLC v. City of Rochester*,
No. 14-cv-10712, 2015 WL 753491 (E.D. Mich. Feb. 23, 2015) .....................15

*Marie v. Am. Red Cross*,
771 F.3d 344 (6th Cir. 2014) ...........................................................................27

*McCreary Cnty. v. ACLU of Ky.*,
545 U.S. 844 (2005)..............................................................................12, 13, 14

*Metavante Corp. v. Emigrant Sav. Bank*,
No. 05-cv-1221, 2008 WL 4722336 (E.D. Wis. Oct. 24, 2008) ......................25

*Modrovich v. Allegheny Cnty.*,
385 F.3d 397 (3d Cir. 2004) .............................................................................13

*Page v. Va. State Bd. of Elections*,
15 F. Supp. 3d 657 (E.D. Va. 2014) .................................................................14

iii

*Perry v. Schwarzenegger*,
    591 F.3d 1147 (9th Cir. 2010) ............................................................26

*Salazar v. Buono*,
    559 U.S. 700 (2010) .........................................................................13

*Satawa v. Macomb Cnty. Rd. Comm'n*,
    689 F.3d 506 (6th Cir. 2012) ............................................................13

*In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997).........................................................18

*United States v. Blue Cross Blue Shield of Mich.*,
    No. 10-cv-14155, 2012 WL 4513600 (E.D. Mich. Oct. 1, 2012) ......................24

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977)..........................................................................14

*Weinbaum v. City of Las Cruces*,
    541 F.3d 1017 (10th Cir. 2008) .......................................................13

## Other Authorities

Fed. R. Civ. P. 16(b)(1)(B) .....................................................................8

Fed. R. Civ. P. 16(b)(2)..........................................................................8

Fed. R. Civ. P. 26(b)(1)..........................................................................11

Fed. R. Civ. P. 26(b)(2)(C)(i) .................................................................25

Fed. R. Civ. P. 26(f) ..........................................................................8, 27

Fed. R. Civ. P. 34(b)(2)(A) .....................................................................7

Fed. R. Civ. P. 37 .................................................................................10

# **INTRODUCTION**

During the presidential campaign, Candidate Trump called for an explicit ban on Muslims entering the United States. The Government does not deny this fact. Nor does it deny that a Muslim ban is unconstitutional. Instead, the Government insists Candidate Trump jettisoned his plan for a Muslim ban and decided to bar individuals from certain countries that allegedly present a high risk of terrorism (and which happen to be overwhelmingly Muslim). At the heart of this case is a factual dispute: did President Trump abandon his goal of a Muslim ban and adopt the Executive Order for national security reasons, or is the Executive Order in fact a disguised version of Candidate Trump's Muslim ban motivated by the same religious animus?

This Motion seeks production of a single document that is directly relevant to this factual dispute. In numerous interviews since July 2016, Rudolph Giuliani has insisted that Candidate Trump changed his proposal — from a Muslim ban to one focused on individuals from specific countries — because of a memorandum prepared by a "commission" Mr. Giuliani put together during the campaign. Defendants argue that this memorandum is irrelevant, because the Executive Order was "signed by the President many months later in his official capacity, after he took the oath of office and formed his Administration." Raofield Decl., ¶ 4, Ex. B, at 2.

To the contrary, in a televised interview *the day after President Trump signed the original Executive Order*, Mr. Giuliani defended the Order as "perfectly legal,"

1

saying it was "based on" the recommendations of the Giuliani commission. *Id.*, ¶ 18, Ex. P. The next day, the spokesperson for another member of the Giuliani commission said the Executive Order was "based in part" on the memorandum of the Giuliani commission. *Id.*, ¶ 16, Ex. N. Plaintiffs seek to compel production of that memorandum.

## STATEMENT OF FACTS

### I.    Candidate Trump's Call for an Explicit Muslim Ban

On December 7, 2015, Candidate Trump declared that as President he would implement "a total and complete shutdown of Muslims entering the United States." He insisted this Muslim ban was necessary to prevent "horrendous attacks" on U.S. soil because "there is great hatred towards Americans by large segments of the Muslim population." *See* Raofield Decl., ¶ 6, Ex. D.

In an interview in March 2016, Candidate Trump explained his rationale: "I think Islam hates us." *Id.*, ¶ 7, Ex. E. When asked during a debate whether his comments were meant to refer to all 1.6 billion Muslims worldwide, he responded, "I mean a lot of them!" *Id.*, ¶ 8, Ex. F. He characterized the threat to national security as involving "large portions of a group of people, Islam, large portions want to use very, very harsh means." *Id.* In an interview later that month, he asserted: "Frankly, look, we're having problems with the Muslims, and we're having problems with Muslims coming into the country." *Id.*, ¶ 9, Ex. G.

2

## II.   The Giuliani Memo

In May 2016, following widespread condemnation of his proposed Muslim ban, Candidate Trump announced that he was turning to one of his campaign advisors, Rudolph Giuliani, for assistance. In numerous public comments since that time, Mr. Giuliani has explained that he responded by putting together a "commission" to advise Candidate Trump.

In early July 2016, Mr. Giuliani described a memorandum (the "Giuliani Memo") his commission had prepared for Candidate Trump, "spelling out sort of what you can do, and what you can't do, and what you could do with legislation." *Id.*, ¶ 11, Ex. I. Mr. Giuliani explained that this Memo had caused the candidate's proposal to shift from a "general ban" based on religion to "very specific, targeted criteria" focusing on specific countries. *Id.* When Candidate Trump was asked later that month whether this reflected a rollback of his blanket ban on Muslims, he said, "you could say it's an expansion." *Id.*, ¶ 12, Ex. J. One month before the election, he claimed that: "The Muslim ban is something that in some form has morphed into extreme vetting from certain areas of the world." *Id.*, ¶ 13, Ex. K.

In a television interview one week after the election, on November 13, 2016, Mr. Giuliani again insisted that the Giuliani Memo had caused Candidate Trump to abandon his call for a Muslim ban:

> Actually, within a day or two of his saying that, he called me and asked me to put a little group together that included Congressman McCaul, General Flynn[1] — I can't remember who else, a few other people. We wrote a paper for him. And he amended it to the ban would be restricted to particular countries, and it would not be a ban.

*Id.*, ¶ 14, Ex. L.[2]

On January 27, 2017, President Trump signed Executive Order 13769 (the "Original Executive Order"). The very next day, during a televised interview, Mr. Giuliani gave the following response when asked whether the Executive Order had "anything to do with religion" and why it focused on seven specific countries:

> I'll tell you the whole history of it. So, when he first announced it, he said "Muslim ban." He called me up. He said, "Put a commission together. Show me the right way to do it legally."
>
> I put a commission together…. And what we did was, we focused on, instead of religion, danger. The areas of the world that create danger for us. Which is a factual basis, not a religious basis. Perfectly legal, perfectly sensible.
>
> ***And that's what the ban is based on.***[3]

---

[1] During the campaign, General Flynn described "Islamism" as a "vicious cancer inside the body of 1.7 billion people on this planet." *Id.*, ¶ 10, Ex. H.

[2] In yet another interview just two weeks ago, Mr. Giuliani again credited the advice of the Giuliani commission with having convinced Candidate Trump to move away from his proposal for an explicit Muslim ban. *Id.*, ¶ 17, Ex. O.

[3] Interview with Rudy Giuliani, Justice with Judge Jeanine, at 3:26 (Fox News television broadcast Jan. 28, 2017), available at http://www.nydailynews.com/news/politics/rudy-giuliani-trump-tasked-craft-muslim-ban-article-1.2958588.

Thus, *after* the Executive Order was signed, Mr. Giuliani confirmed that the President's decision to focus on seven specific countries was "based on" the recommendations of the Giuliani commission.

### III. Statements From Another Giuliani Commission Member Confirm the Direct Link Between the Giuliani Memo and the Executive Order.

According to Mr. Giuliani, a key member of his commission was Congressman McCaul, Chairman of the House Committee on Homeland Security. In an interview on January 30, 2017, Susan Phelan, the spokesperson for Rep. McCaul's committee, confirmed that "the [Executive Order] was based in part on a memo McCaul and former New York mayor Rudolph Giuliani submitted to the Trump campaign last fall." *Id*., ¶ 16, Ex. N. Similarly, Defendant Kelly has confirmed this. *Id*., ¶ 19, Ex. Q.

One week later, Rep. McCaul himself confirmed in an interview that the Giuliani commission "drafted a memo back last May or June to advocate to candidate Trump why a Muslim ban was unconstitutional and to look at vetting in high threat areas." *Id*., ¶ 15, Ex. M. He described the Giuliani Memo as "advocating a shift from a Muslim ban, which [Trump] was campaigning on, which we thought was unconstitutional, rather to an enhanced vetting process of immigrants and refugees based on risk — not religion — from high-threat areas." *Id.*

IV.   **The Single Document at Issue in This Motion**

Document Request No. 1 seeks production of the Giuliani Memo:

> A copy of the "memorandum" (or "white paper") that Rudolph Giuliani and others provided to Donald J. Trump or others working for or on behalf of the Trump Campaign in approximately May to July 2016, which was discussed extensively by Mr. Giuliani during public appearances on or about July 8, 2016, November 13, 2016, and January 28, 2017, by Rep. Michael McCaul in public appearances in late January and early February 2017, and by Susan Phelan, Spokeswoman for the House Committee on Homeland Security, on or about January 30, 2017.[4]

*Id.*, ¶ 3, Ex. A, at 8. Defendants have refused to produce the Giuliani Memo based on a laundry list of objections. *Id.*, ¶ 4, Ex. B.

## PROCEDURAL BACKGROUND AND DEFENDANTS' OBJECTIONS

Defendants' objections reflect their latest attempt to delay production of the Giuliani Memo or any other discovery in this case.

It has been ten weeks since Plaintiffs first sought production of the Giuliani Memo in their motion for expedited discovery, filed on March 16, 2017. ECF #43. The Government opposed, and the Court denied the motion without prejudice, finding that Plaintiffs had not shown "good cause" to permit discovery prior to entry of a scheduling order, and suggesting Plaintiffs narrow some of their other requests. In its Order, however, the Court: (i) said it was "prepared to enter a scheduling order

---

[4] The footnote to the Document Request cited the sources attached as Exhibits I, L, M, N, and P to the Raofield Declaration.

under Rule 16(b) that contemplates reasonably expedited discovery," (ii) suggested the parties proceed with a Rule 26(f) conference and initial disclosures which "could well reveal much of the information requested by Plaintiffs,"[5] and (iii) said it would "soon" schedule a conference with the parties. ECF #69 at Pg. ID 978.

On April 6, 2017, Plaintiffs attempted for a second time to seek production of the Giuliani Memo. As suggested by the Court, Plaintiffs arranged a Rule 26(f) conference with counsel for the Government. However, when Plaintiffs indicated at the start of the call that they were serving document requests (responses to which were due within 30 days of the Rule 26(f) conference under Rule 34(b)(2)(A)), counsel for the Government took the position that the conference was something other than a Rule 26(f) conference and insisted that, as a result, Plaintiffs' attempt to pursue discovery and/or initial disclosures was premature. Raofield Decl., ¶ 4, Ex. B at Ex. 2, pp. 7-9 (April 13, 2017 conference transcript).

One week later, on April 13, 2017, the Court held a telephonic conference with the parties. Plaintiffs informed the Court that counsel for Defendants were unilaterally delaying discovery by refusing to proceed with a Rule 26(f) conference. Plaintiffs asked the Court to enter a scheduling order, noting that a Rule 26(f)

---

[5] In their initial disclosures, Defendants have now refused to identify any witnesses or documents (other than the Executive Order and associated "guidance documents formally issued by Defendants"). Raofield Decl., ¶ 5, Ex. C.

7

conference would serve no purpose since the Government's "position is simply that there should be no discovery at all." *Id.*, ¶ 4, Ex. B at Ex. 2 at 7-13. At that point, however, Defendants informed the Court that they would be filing a motion to dismiss along with a motion to stay entry of a scheduling order. *Id.*

On April 17, 2017, Defendants filed their motion asking the Court to delay entry of a scheduling order, insisting discovery was premature because they had now filed a "thoroughly dispositive Motion to Dismiss." ECF #77, at Pg. ID 1051. Defendants also argued that discovery would raise complicated issues of executive privilege. *Id.* at Pg. ID 1052. Plaintiffs filed a response four days later in which they noted that, based on the April 13 conference, the Court could now enter a scheduling order under Rule 16(b)(1)(B). ECF #78, at Pg. ID 1087-89. In their reply, Defendants did not dispute that the Court had the power to do that. ECF #82. Now, however, in an attempt to forestall discovery that is reminiscent of their procedural gamesmanship with respect to the Rule 26(f) conference, Defendants' objections to Document Request 1 attack the Court for entering a scheduling order,[6] even though the Court was required to do so under Rule 16(b)(2), absent good cause for delay.

---

[6] Ex. B at 14 (insisting the Court's May 11 Order violated the Federal Rules of Civil Procedure because the Court "did not hold a Rule 16 Scheduling conference, but instead re-characterized an April 13, 2017, Status Conference as a Rule 16(a)(1)(B) Scheduling Conference, after that status conference had already occurred").

8

In its May 11, 2017 Order denying Defendants' motion to stay, the Court pointed to Defendants' argument that statements during the campaign were "made outside the formal government decisionmaking process" and concluded that "Defendants cannot repeatedly make that argument, only later to assert an executive privilege objection to discovery" regarding pre-inauguration evidence. ECF #89 at Pg. ID 1224-25. In addition, the Order stated: "The Court believes Defendants exaggerate the number of legitimate objections they will have and the complexity of the issues those objections will raise." *Id.*

The Court ordered the parties to exchange initial disclosures, and it set a schedule for Defendants to respond to Plaintiffs' limited discovery requests. Finally, to ensure efficient briefing of any discovery disputes, the Order provided: "If Defendants object to any discovery request, they must set forth their reasoning and legal justification, with full citation and argument, in the response to Plaintiffs." *Id.* at Pg. ID 1226. Plaintiffs were directed to attach Defendants' response to their motion to compel.

Defendants have refused to produce a copy of the Giuliani Memo in response to Document Request 1. Instead, Defendants have asserted a laundry list of objections; purported to "reserve[] the right to assert additional objections" in the future; and refused to make any effort to locate a copy of the Giuliani Memo. In addition, even though the Giuliani Memo was created before the Republican

9

National Convention (and therefore could not possibly be covered by executive privilege), Defendants refused, either in their objections or in the parties' meet and confer, to take a position at this time on whether the Memo is covered by executive privilege. Despite the Court's clear instruction to set out all objections now, Defendants state that only after the Court rejects their current laundry list of objections will they take a position as to whether the Giuliani Memo is "potentially subject to a variety of privilege claims." Ex B., at 33.

## STANDARD OF REVIEW

"The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *JPMorgan Chase Bank v. Winget*, No. 08-cv-13845, 2016 WL 7242136, at *2 (E.D. Mich. Dec. 15, 2016). If a party fails to produce documents as required by the Rules, Rule 37 permits a motion to compel production. *Id.*

## ARGUMENT

## I.   THE GIULIANI MEMO IS RESPONSIVE AND HIGHLY RELEVANT TO PLAINTIFFS' CLAIMS.

Defendants do not dispute that the Giuliani Memo is responsive to Document Request 1. Rather, they question its relevance to Plaintiffs' claims.

The standard for relevance in discovery disputes is well known. Plaintiffs are entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The determination of 'relevance' is within the court's sound discretion,"

10

and "should be broadly and liberally construed." *Flagstar Bank v. Fed. Ins. Co.*, No. 05-cv-70950, 2006 WL 6651780, at *2 (E.D. Mich. Aug. 21, 2006) (citations omitted). In considering proportionality, the Court should consider, *inter alia*, "the importance of the issues at stake in the action," "the parties' relative access to relevant information," "the importance of the discovery in resolving the issues," and "the burden or expense of the proposed discovery." Fed. R. Civ. P. 26(b)(1). However, a document "need not be admissible in evidence to be discoverable." *Id.*

A.    The Discovery Request Is Factually Relevant and Proportional.

As a factual matter, the Government questions the Memo's relevance because it was created "some five months before" the election. Ex. B at 2. But there is no serious question that the Memo is relevant. Just one day after the first Executive Order was signed, Mr. Giuliani underscored its relevance when, in response to a question of whether the Executive Order had "anything to do with religion," he said the Executive Order "is based on" the work of the Giuliani commission. *Supra* at 4.

Similarly, on multiple prior occasions, Mr. Giuliani had insisted that Candidate Trump abandoned his call for a Muslim ban and focused on specific countries *because of the Giuliani Memo*. *Supra* at 3-5. Another one of the authors of the Giuliani Memo, Rep. McCaul, has also confirmed the relationship between the Memo and the Executive Orders. *Supra* at 5. That is how Plaintiffs know about the Memo, and it is why Plaintiffs first requested it in discovery ten weeks ago.

11

Given that the Memo is central to Plaintiffs' claims, and that searching for one document involves virtually no burden, the discovery sought is clearly proportional to the needs of the case. Defendants' insistence that it would be too burdensome to search for a single document is laughable given that this objection — which will now consume the Court's resources as well — appears in a 34-page brief that would have been unnecessary had they simply located and produced the document.

B.   The Giuliani Memo Is Relevant to the Establishment Clause Claim.

In arguing that only "official government actions" are relevant to an Establishment Clause inquiry, Ex. B at 26, the Government conflates two inquiries. Plaintiffs do not contend that the Giuliani Memo, or other nonpublic pre-inauguration documents, create an Establishment Clause violation on their own. The Executive Order itself does that. But when the Government insists that its action had a "secular purpose," *McCreary* says that courts may not take the Government at its word, and must instead determine whether this stated purpose was "genuine, not a sham, and not merely secondary to a religious objective." *McCreary Cnty. v. ACLU of Ky.*, 545 U.S. 844, 864 (2005). Contrary to Defendants' assertions, it does not require "judicial psychoanalysis of a drafter's heart of hearts" to review an advisory memo written for the purpose of guiding policy decisions. *Id.* at 862.

To the contrary, *McCreary* cautions that courts should not "turn a blind eye to the context in which [the] policy arose" or be a "pushover for any secular claim." *Id.*

12

at 864, 866. The *McCreary* inquiry relies on an objective observer who "knows *all* of the pertinent facts and circumstances." *Salazar v. Buono*, 559 U.S. 700, 721 (2010) (emphasis added); *see also Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1031 n.16 (10th Cir. 2008) ("[T]he 'objective observer' is presumed to know far more than most actual members of a given community."). And courts considering Establishment Clause claims routinely rely on information obtained in discovery about the purpose of government actions. *See, e.g.*, *Satawa v. Macomb Cnty. Rd. Comm'n*, 689 F.3d 506, 527 (6th Cir. 2012) (deposition testimony of government officials); *ACLU of Ky. v. Mercer Cnty.*, 432 F.3d 624, 627, 631 (6th Cir. 2005) (affidavit of government official about the purpose of a religious display); *Am. Atheists, Inc. v. Port Auth. of N.Y. & New Jersey*, 760 F.3d 227, 241 (2d Cir. 2014) (communications from defendants to religious groups); *Modrovich v. Allegheny Cnty.*, 385 F.3d 397, 411-12 (3d Cir. 2004) (deposition testimony of county official); *see also* ECF #89, at Pg. ID 1223 ("[T]his Court finds that it is not limited to the four corners of the Executive Order in determining its constitutionality.").

In suggesting that the Court should ignore a memorandum commissioned to explain how to impose a policy motivated by religious discrimination without judicial scrutiny, Defendants ask this Court "to ignore perfectly probative evidence; they want an absentminded objective observer, not one presumed to be familiar with the history of the government's actions and competent to learn what history has to

show." *McCreary*, 545 U.S. at 866. The Giuliani Memo is an important link in that history: Candidate Trump announced a facially unconstitutional "Muslim Ban"; after receiving pushback, he sought guidance on how to institute the ban in a way that would survive legal challenges; he received the Giuliani Memo and other guidance; he converted his Muslim Ban into the first Executive Order and was still unable to avoid judicial disapproval; and so he devised the Revised Executive Order, describing it as "a watered-down version of the first [order]." Raofield Decl., ¶ 20, Ex. R. The fact that the Government has attempted to disguise the religious intent of the Revised Executive Order only reinforces that Plaintiffs are entitled to discovery to establish that the stated secular purpose is a "sham."

C.      The Giuliani Memo Is Also Relevant to Plaintiffs' Other Claims.

As the Court has pointed out, Plaintiffs "seek only limited discovery that will be relevant to *any* claim." ECF #89, at Pg. ID 1222 (emphasis added).

Defendants do not even address the relevance of the Giuliani Memo to Plaintiffs' equal protection claim. Courts routinely allow discovery as part of the equal protection "inquiry into such circumstantial and direct evidence of intent as may be available." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Thus, courts assessing claims under strict scrutiny rely on "documents containing the opinions and subjective beliefs of [government officials] or their key advisors." *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657, 666

14

(E.D. Va. 2014). Courts applying rational basis review also permit discovery that is "relevant to the issue of potential animus." *Lilly Invs., LLC v. City of Rochester*, No. 14-cv-10712, 2015 WL 753491, at \*10 (E.D. Mich. Feb. 23, 2015).

Defendants also ignore Plaintiffs' free speech claim, on which Plaintiffs are similarly entitled to "full discovery." *Coleman v. Ann Arbor Transp. Auth.*, 904 F. Supp. 2d 670, 699 n.17 (E.D. Mich. 2012). The purpose of the Executive Orders is clearly relevant to this claim, because the First Amendment prohibits "restrictions distinguishing among different speakers, allowing speech by some but not others." *Citizens United v. FEC*, 558 U.S. 310, 340 (2010).

Finally, although *Mandel* does not apply here, discovery would be appropriate to establish whether the Government's proffered justification for the Revised Executive Order is "bona fide" within the meaning of *Mandel*. *See* ECF #86, at Pg. ID 1191-95.

## II.   THE COURT SHOULD ORDER DEFENDANTS TO COMPLY WITH THEIR DISCOVERY OBLIGATIONS.

The Government is engaged in a shell game to keep the Giuliani Memo out of reach of Plaintiffs and the Court, variously resorting to breathtaking assertions of presidential immunity, threats of future claims of privilege, and bizarre contortions of normal discovery practice, all while refusing even to search for a single document or respect this Court's May 11 Order. All of the rationales advanced by the Government to avoid discovery should be summarily rejected.

A.    The President Is Not Immune from Discovery.

The Government takes the extraordinary (and constitutionally concerning) position that this Court "could not compel the President to comply with a civil discovery request." Ex. B, at 23. The Government also appears to take the position that whenever the President is named as a defendant in litigation, the entire federal government is immunized from discovery. This is utterly inconsistent with the most basic principles of tripartite government, and is not supported by the case law Defendants cite.

"The fact of the matter is that the offices of the President and Vice President currently respond to discovery requests on a regular basis, asserting executive privilege with respect to specific requests for particular items when necessary." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 230 F. Supp. 2d 12, 15 (D.D.C. 2002). The Government "errs by presuming that interactions between the Judicial Branch and the Executive, even quite burdensome interactions, necessarily rise to the level of constitutionally forbidden impairment of the Executive's ability to perform its constitutionally mandated functions." *Clinton v. Jones*, 520 U.S. 681, 702 (1997). To the contrary, "[s]itting Presidents have responded to court orders to provide testimony and other information with sufficient frequency that such interactions between the Judicial and Executive Branches can scarcely be thought a novelty." *Id.* at 704-05 (reviewing instances where past Presidents have complied

16

with discovery). "It is settled law that the separation-of-powers doctrine does not bar every exercise of jurisdiction over the President of the United States." *Id.* (*quoting Nixon v. Fitzgerald*, 457 U.S. 731, 753-754 (1982)).

Defendants assert that this Court has no power to order document production from the President, while simultaneously refraining from asserting executive privilege over the Giuliani Memo at this time. Instead, they demand that they be allowed to assert any applicable privileges at a later time.

If Defendants wished to assert executive privilege over the Giuliani Memo, they should have afforded the Court the respect of doing so explicitly. The Court ordered Defendants to "set forth their reasoning and legal justification" for any objections to discovery they wish to assert. ECF #89 at Pg. ID 1226. Defendants have likely not asserted executive privilege over the Giuliani Memo because it would be frivolous to assert this privilege over a document provided to a political candidate months before he took office — and, indeed, before even the Republican National Convention. If Donald Trump could retrospectively assert executive privilege under these circumstances, so too could Ted Cruz and Mike Huckabee. And the Government does not need to review the document to reach this conclusion.

The Government likewise cannot show that the Giuliani Memo is protected by either species of executive privilege, i.e., the "presidential communications" privilege, which protects certain "materials that reflect presidential

17

decisionmaking," or the "deliberative process" privilege, which protects predecisional documents that "reveal the government's deliberations." *In re Sealed Case*, 121 F.3d 729, 744, 737 (D.C. Cir. 1997).

The presidential communications privilege must be "narrowly construed," and "the government bears the burden of proving that the communications occurred in conjunction with the process of advising the President" on "official government matters." *Id.* at 749, 752. "[N]o court has ever recognized that this privilege applies before a president takes office." *Fish v. Kobach*, No. 16-cv-2105, 2017 WL 1929010, at *5 (D. Kan. May 10, 2017). This makes perfect sense, as the privilege is rooted in "the President's Article II powers and responsibilities" and protects "materials that reflect presidential decisionmaking." *In re Sealed Case*, 121 F.3d at 748, 744. As a candidate, Mr. Trump had no power under Article II. Nor are we aware of any case where the deliberative process privilege has been applied to a communication that does not involve the government.[7]

As the Court has recognized, the Government's executive privilege objection is particularly inappropriate here, because the Government is currently arguing to

---

[7] Even if the privilege applied, however, the Court should order production because the Giuliani Memo is "directly relevant to issues that are expected to be central" to the case and "is not available with due diligence elsewhere." *In re Sealed Case*, 121 F.3d at 754-55. The next step would be for the Court "to review the document[] *in camera* to excise non-relevant material" and then release the document. *Id.* at 745.

courts around the country that statements made by Trump as a candidate are legally irrelevant because he was a private citizen. ECF #89 at Pg. ID 1224-25. Defendants are trying to avoid choosing between a frivolous argument that the Giuliani Memo is privileged and the necessary concession that it is not. The Court should not allow Defendants to prolong this litigation indefinitely to delay making that choice.

To avoid having to argue that pre-election materials are subject to executive privilege (which would undermine the Government's argument that pre-election statements are irrelevant), the Government instead tries to invoke the privilege obliquely. The Government relies on *Cheney*, a case that concerns *when* in the discovery process high-level Executive Branch officials must evaluate a trove of documents for potential executive privilege, not *whether* officials can refuse to produce documents that are not privileged. *Cheney* requires litigants seeking extensive discovery to show a real need for an "intrusion into the operation of the Office of the President" before requiring the Government to catalog which documents may be privileged. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 387 (2004) (quotation marks omitted). *Cheney* does not apply unless the Government is prepared to assert executive privilege, which it conspicuously failed to do here.

Indeed, the circumstances of *Cheney* are completely unlike those in this case. The *Cheney* Court was concerned about the possibility of "insubstantial legal claims" triggering broad discovery obligations. *Id.* at 386. The decisions of other

19

courts considering similar challenges to the Executive Orders make clear that the legal claims here are anything but "insubstantial." *See, e.g.*, *IRAP v. Trump*, No. 17-1351, 2017 WL 2273306 (4th Cir. May 25, 2017); *Hawaii v. Trump*, No. 17-cv-0050, 2017 WL 1011673 (D. Haw. Mar. 15, 2017); *Aziz v. Trump*, No. 17-cv-116, 2017 WL 580855 (E.D. Va. Feb. 13, 2017).

The Government misleadingly characterizes "the discovery being sought [here as] similarly broad in scope to that sought in *Cheney*." Ex. B at 21 n.7. But in *Cheney*, the Court was concerned about "overly broad discovery requests" that "ask[ed] for everything under the sky," and suggested that the District Court should have "narrow[ed] . . . the subpoenas" to allow the Government to "invoke executive privilege with respect to a possibly smaller number of documents." 542 U.S. at 386-87, 390 (citation and alteration omitted). Here, the Court has permitted Plaintiffs to proceed with only "limited discovery," ECF #89 at Pg. ID 1224, after previously requiring Plaintiffs to narrow their requests, ECF #69 at Pg. ID 977. And Defendants are refusing to decide whether to assert executive privilege over a single document — a document that was created months before the election and has been discussed publicly on numerous occasions.[8] As other courts have held, the showing required

---

[8] Defendants also suggest that the document request is vague because they might find it too difficult to identify the "final" version of the Memo in the files of possible *recipients* of the document. Ex. B, at 31-32. Given their refusal to even search for the document, this complaint is entirely speculative and should not be credited.

in *Cheney* is not needed in cases involving a "very narrow and specific document production." *Dairyland Power Co-op v. United States*, 79 Fed. Cl. 659, 667 (2007).[9]

For these reasons, *Cheney* does not apply here. But even in circumstances where the principles of *Cheney* do apply, a plaintiff need only show that the documents sought "contain important evidence and that this evidence is not available with due diligence" using other documents "in the public domain." *Id.* at 668. As discussed above, it is beyond question that the Giuliani Memo "contain[s] important evidence" regarding the link between Candidate Trump's proposed Muslim Ban and the Executive Orders that followed, and there is no basis for believing that the document is available in the public domain or that it could be readily obtained from some other source.[10]

---

However, Defendants are of course free to produce all copies of the document that they are able to locate after a reasonable search.

[9] Defendants misleadingly cite the recent order in *Washington v. Trump* where the court stayed discovery based, in part, on concerns about "potentially complex privilege" issues and the need to protect the President from "the burden of discovery." Ex. B at 3. There, unlike here, the requested discovery was not limited to the period prior to the inauguration, and was expansive in scope; the plaintiffs had sought "up to 30 depositions of government officials, including White House staff and Cabinet-level officers." Ex. B at Ex. 1, pg. 10.

[10] Moreover, the fact that other courts have issued injunctions of the Executive Order does not lessen Plaintiffs' need for the evidence here. Those injunctions are under appeal and may be lifted at any time. *See* Raofield Decl. Ex. S (Justice Department statement announcing intent to appeal Fourth Circuit decision affirming *IRAP* injunction). And as this Court has pointed out, "Plaintiffs are entitled to litigate their own case." ECF #89, at 6.

B.   Defendants Must Conduct a Reasonable Search for the Giuliani Memo.

The Justice Department has not bothered to fulfill its most basic obligation in discovery to conduct a reasonable search for the Giuliani Memo. Defendants in this case, like every other litigant, have the obligation to "make reasonable efforts" to locate and "produce those documents that are within Defendants' possession, custody, or control." *Khami v. Ortho-McNeil-Janssen Pharm., Inc.*, No. 09-cv-11464, 2011 WL 1045545, at *2 (E.D. Mich. Mar. 17, 2011).

Defendants must produce documents if they have "actual possession, custody or control, or ha[ve] the legal right to obtain the documents on demand." *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995). "[L]egal ownership of the document is not determinative," *id.*, and "'control' is to be broadly construed." *Khami*, 2011 WL 1045545, at *2 (citation omitted). Thus, a "party responding to a Rule 34 production request cannot furnish only that information within his immediate knowledge or possession; he is under an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control." *Flagg v. City of Detroit*, 252 F.R.D. 346, 353 (E.D. Mich. 2008). Control exists in a "variety of circumstances," including when a document is in the possession of an officer, employee, or agent of a party. *Id.*

It defies reason to believe that not a single employee or agency of the United States Government has a copy of the Giuliani Memo. In an attempt to cover for its

22

willful refusal to make any effort to search for the document, the Government argues that "if the memo even exists," the "Plaintiffs have not provided *any reason to think* that a document that is allegedly a campaign document *would be located in the official government files.*" Ex. B at 20 (emphasis added). The law does not permit a party to refuse to search for a document based on a speculative objection that it might not have the document.

In any event, Plaintiffs *have* shown that Defendants likely possess the document. For example, the United States is a Defendant in this case, and Document Request No. 1 identified published articles in which *two federal employees* discussed the Memo's contents publicly *after the first Executive Order was signed*. In addition, Defendant Kelly and others have stated that the first Executive Order was based in part on the Giuliani Memo.[11] And when asked whether "Trump had received his memorandum," Mr. Giuliani said not only that Trump had received the Memo, but that "I know he absorbed the memo." Raofield Decl., ¶ 11, Ex. I (cited in Document Request No. 1). There is little doubt that the Memo is available to Defendants.

---

[11] Raofield Decl., ¶ 19, Ex. Q (reporting that John Kelly informed Rep. McCaul that the Original Executive Order was based on the "memo [McCaul] helped prepare for then-candidate Trump on extreme vetting"); *id.*, ¶ 16, Ex. N (citing comments from Susan Phalen—spokeswoman for the House Committee on Homeland Security— that "the order was based in part on a memo McCaul and former New York mayor Rudolph Giuliani submitted to the Trump campaign last fall").

23

Although Defendants try to create an artificial distinction between the files a government official obtained while in office and those he obtained before taking office, they cite no case for that proposition, and such a distinction makes little sense. If a Defendant has possession, custody, or control of a responsive document, he must produce it, regardless of how he happened to obtain it. This is Discovery 101, and was precisely the point of *Bankers Trust*, the case that Defendants identify as providing "the Sixth Circuit standard." Ex. B at 6. There, the court found that "parties in possession of documents forwarded to them by a federal agency have 'possession, custody or control' within the meaning of Rule 34," even if "the agency by regulation retains ownership and restricts disclosure." 61 F.3d at 469. Similarly here, if a Defendant has a copy of the Giuliani Memo provided by Giuliani or the Trump Campaign, that Defendant is obligated to produce the document. As the Sixth Circuit noted, "federal agencies are bound by discovery rules in the same manner as any other litigant," and "judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *Id.* at 470 (citations omitted).

The Government's shell game of directing Plaintiffs and the Court to get discovery from third parties flips normal discovery practice on its head. It is well understood that a party should obtain "discovery from its party opponent before burdening [a] nonparty." *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993); *see also United States v. Blue Cross Blue Shield of Mich.*, No. 10-

24

cv-14155, 2012 WL 4513600, at *6 (E.D. Mich. Oct. 1, 2012) (declining to compel discovery because of the "nonparty status" of the subpoenaed entities, even though the Court would have ordered production if they "were parties to the action"); *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 09-cv-50630, 2009 WL 2351769, at *2 (E.D. Mich. July 29, 2009) (discovery would be "more appropriately pursued through Plaintiff" than a third party); *In re CareSource Mgmt. Grp.*, 289 F.R.D. 251, 253-54 (S.D. Ohio 2013) (A party "must first establish that it cannot obtain the discoverable information from its party-opponent before subpoenaing those documents from a non-party.").

Contrary to Defendants' suggestion, *Cheney* does not alter this system. Defendants have not even attempted to explain why it would be "more convenient, less burdensome, or less expensive," *see* Fed. R. Civ. P. 26(b)(2)(C)(i), to obtain the Giuliani Memo from a non-party than from one of the many Defendants in this action. In the only case Defendants found to cite for their argument, the court found that "the issue is now moot" because the documents being sought were either already produced by the non-party or no longer existed. *Metavante Corp. v. Emigrant Sav. Bank*, No. 05-cv-1221, 2008 WL 4722336, at *7 (E.D. Wis. Oct. 24, 2008). Here, of course, the Giuliani Memo has never been produced.

Moreover, Defendants reveal that they are not sincere about third-party discovery, all but confessing that they would "assert any applicable privileges" if

Plaintiffs sought to obtain the Giuliani memo from the Trump Campaign. Ex. B at 17 n.5. Litigation to enforce a nonparty subpoena, in another district, over the Government's inevitable intervention and dilatory objections, would surely not be "more convenient, less burdensome, or less expensive" than simply requiring Defendants to comply with their discovery obligations in this case.

This is particularly so because Defendants expect the "third party" (i.e., the Trump Campaign) to assert its own (baseless) "potential privileges." *Id.* at 30. Defendants point in their brief to one privilege, which they characterize as an unlimited protection for "the internal deliberative materials of a political campaign." *Id.* at 17 (citing *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010)). Defendants again overstate matters. *Perry* merely rejected a broad document request for "any . . . communications . . . [with] any third party," while recognizing that "internal campaign communications may be discoverable" in response to a "carefully tailored request for the production of highly relevant information that is unavailable from other sources." 591 F.3d at 1153, 1165 n.13.

C.    The Court Has Already Considered and Rejected Defendants'
       Arguments for Perpetual Delay.

Defendants are improperly seeking reconsideration of the Court's May 11 Order under the guise of discovery objections. The Court has already considered and rejected the litany of reasons offered by Defendants to delay discovery further. As the Court properly ruled, discovery can proceed while the Court addresses

Defendants' motion to dismiss (which is now fully briefed), particularly given that the same arguments raised by Defendants have been rejected in other cases. ECF #89, at Pg. ID 1222. As the Court has already determined, neither logic nor law warrants holding another Rule 26(f) or Rule 16 conference when Defendants' position is there should be no discovery. *See* ECF #78, at 9-10; *see also, e.g.*, *Marie v. Am. Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014) ("District courts have broad discretion under the rules of civil procedure to manage the discovery process and control their dockets."). The Court is not required to countenance Defendants' delay tactics, particularly when it has appropriately concluded that Plaintiffs are likely to have standing and meritorious claims. As long as the Court believes that at least one plaintiff has standing and at least one claim will survive, it is absurd for Defendants to insist discovery must be delayed until the Court has issued a reasoned opinion.

## CONCLUSION

The Giuliani Memo is responsive to Document Request 1, and it is directly relevant to Plaintiffs' claims. It is also clear that Defendants have no good faith basis for any potential future assertion of executive privilege. The Court should deny Defendants the endless delay they seek.

Instead, Plaintiffs respectfully propose the following steps to advance this litigation while still protecting any potential executive privilege claim by Defendant Trump or any other theoretical privileges held by third parties.

First, the Court should find that the Giuliani Memo is responsive, relevant, and likely to contain important information needed by the Plaintiffs.

Second, the Court should order Defendants to search for the Giuliani Memo and, within five days of the Court's order, submit a copy of the document to the Court for *in camera* review. To the extent Defendants claim that they have not located a copy of the document, counsel should be required to file an affidavit detailing the specific steps taken to fully comply with their legal obligations to search for the document, and representing to the Court that no Defendant has possession, custody, or control of the document, or the legal right to obtain the document on demand.

Third, if Defendants wish to assert that the document is covered by executive privilege, that assertion of privilege should be made and supported in a legal brief submitted to the Court within ten days of the Court's order (i.e., five days after the deadline for Defendants to submit the document to the Court).

Fourth, Defendants should be required to immediately provide a copy of the Court's order to the Trump Campaign (and any other third party the Defendants believe may have a right to assert privilege over the document) and notify them that any third-party assertion of privilege must be made and supported in a legal brief

submitted to the Court within ten days of the Court's order (i.e., five days after the deadline for Defendants to submit the document to the Court).[12]

Finally, within fifteen days of the Court's order (i.e., five days after the deadline for any claims of privilege to be asserted), Plaintiffs should be required to file a brief responding to any assertions of privilege that have been made. No further briefing should be permitted absent a request from the Court.

Dated: May 26, 2017                                    Respectfully submitted,

---

[12] If neither the Defendants nor a third party assert privilege, the Defendants should be required to produce the Giuliani Memo to the Plaintiffs on the day that the privilege assertions would have been due (i.e. ten days after the Court's order).

29

**Counsel for Arab American Civil Rights League**

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
_____
Nabih H. Ayad (P59518)
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

/s/ Rula Aoun
_____
Rula Aoun (P79119)
4917 Schaefer Rd.
Dearborn, MI 48126
(313) 633-0231
rula@acrlmich.org

HAMMOUD, DAKHLALLAH &
ASSOCIATES, PLLC
/s/ Kassem M. Dakhlallah
_____
Kassem Dakhlallah (P70842)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com

VIDA LAW GROUP, PLLC
/s/ Mona Fadlallah
_____
/s/ Natalie C. Qandah
_____
Mona Fadlallah (P64197)
Natalie C. Qandah (P58434)
43050 Ford Road, Suite 160
Canton, MI 48187
Phone: (734) 456-9004
Facsimile: (734) 456-9003
Mona@vidalawpllc.com
Natalie@vidalawpllc.com

**Counsel for American Arab Chamber of Commerce**

FARHAT & ASSOCIATES, PLLC
/s/ Helal Farhat
_____
Helal Farhat (P64872)
Counsel for the American Arab
Chamber of Commerce
6053 Chase Rd.
Dearborn, MI 48126
(313) 945-5100
hfarhat@saflegal.com

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
_____
Nabih H. Ayad (P59518)
Attorney for Plaintiffs
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

30

**Counsel for Hend Alshawish, Salim Alshawish, Yousef Abdullah, Fahmi Jahaf, and Mohamed Alshega**

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
Nabih H. Ayad (P59518)
Attorney for Plaintiffs
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

/s/ Rula Aoun
Rula Aoun (P79119)
4917 Schaefer Rd.
Dearborn, MI 48126
(313) 633-0231
rula@acrlmich.org

HAMMOUD, DAKHLALLAH & ASSOCIATES, PLLC
/s/ Kassem M. Dakhlallah
Kassem Dakhlallah (P70842)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com

VIDA LAW GROUP, PLLC
/s/ Mona Fadlallah
/s/ Natalie C. Qandah
Mona Fadlallah (P64197)
Natalie C. Qandah (P58434)
43050 Ford Road, Suite 160
Canton, MI 48187
Phone: (734) 456-9004
Facsimile: (734) 456-9003
Mona@vidalawpllc.com
Natalie@vidalawpllc.com

/s/ Ali K. Hammoud
Ali K. Hammoud (P73076)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
ah@hdalawgroup.com

31

**Counsel for American Civil Liberties Union of Michigan, Arab American and Chaldean Council, Arab American Studies Association, Adeeb Saleh, Sofana Bella, Hilal Alkatteeb and S.A., a minor through her Parent and Next Friend, Hilal Alkatteeb**

/s/ Miriam Aukerman
_____

Miriam Aukerman (P63165)
American Civil Liberties Union Fund
of Michigan
1514 Wealthy SE, Suite 242
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

/s/ Michael J. Steinberg
_____

Michael J. Steinberg (P43085)
Daniel S. Korobkin (P72842)
Kary L. Moss (P49759)
American Civil Liberties Union Fund
of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6814
msteinberg@aclumich.org

/s/ Jason C. Raofield
_____

Jason C. Raofield (D.C. Bar #463877)
Nishchay H. Maskay (D.C. Bar
#998983)
Covington & Burling LLP
One City Center
850 10th Street, NW
Washington, D.C. 20001
(202) 662-5072
jraofield@cov.com

/s/ Samuel R. Bagenstos
_____

Samuel R. Bagenstos (P73971)
Cooperating Attorney,
American Civil Liberties Union
Fund of Michigan
625 South State Street
Ann Arbor, Michigan 48109
(734) 647-7584
sbagen@gmail.com

/s/ Margo Schlanger
_____

Margo Schlanger (N.Y. Bar
#2704443 (3d Dept))
Cooperating Attorney,
American Civil Liberties Union
Fund of Michigan
625 South State Street
Ann Arbor, Michigan 48109
(734) 615-2618
margo.schlanger@gmail.com

## CERTIFICATE OF SERVICE

This Motion, Memorandum, and the Declaration of Jason Raofield in

Support of this Motion, were filed on May 26, 2017, via the Court's ECF system,

which provides notice to all counsel of record.


/s/ Jason C. Raofield
Jason C. Raofield
(D.C. Bar #463877)