# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**ARAB AMERICAN CIVIL RIGHTS LEAGUE**, et al.,

*Plaintiffs*,

*v.*

**DONALD TRUMP**, et al.,

*Defendants*.

Case No. 2:17-cv-10310-VAR-SDD

Hon. Victoria A. Roberts

Mag. J. Stephanie D. Davis

## <u>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR STAY PENDING SUPREME COURT PROCEEDINGS</u>

Plaintiffs, by and through their undersigned counsel, oppose Defendants' Motion for Stay Pending Supreme Court Proceedings for the reasons set forth in the attached supporting Memorandum.

Dated: June 2, 2017                    Respectfully submitted,

**Counsel for Arab American Civil Rights League**

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
Nabih H. Ayad (P59518)
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

/s/ Rula Aoun
Rula Aoun (P79119)
4917 Schaefer Rd.
Dearborn, MI 48126
(313) 633-0231
rula@acrlmich.org

HAMMOUD, DAKHLALLAH &
ASSOCIATES, PLLC
/s/ Kassem M. Dakhlallah
Kassem Dakhlallah (P70842)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com

VIDA LAW GROUP, PLLC
/s/ Mona Fadlallah
/s/ Natalie C. Qandah
Mona Fadlallah (P64197)
Natalie C. Qandah (P58434)
43050 Ford Road, Suite 160
Canton, MI 48187
Phone: (734) 456-9004
Facsimile: (734) 456-9003
Mona@vidalawpllc.com
Natalie@vidalawpllc.com

**Counsel for American Arab Chamber of Commerce**

FARHAT & ASSOCIATES, PLLC
/s/ Helal Farhat
Helal Farhat (P64872)
Counsel for the American Arab
Chamber of Commerce
6053 Chase Rd.
Dearborn, MI 48126
(313) 945-5100
hfarhat@saflegal.com

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
Nabih H. Ayad (P59518)
Attorney for Plaintiffs
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

2

**Counsel for Hend Alshawish, Salim Alshawish, Yousef Abdullah, Fahmi Jahaf, and Mohamed Alshega**

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
Nabih H. Ayad (P59518)
Attorney for Plaintiffs
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

/s/ Rula Aoun
Rula Aoun (P79119)
4917 Schaefer Rd.
Dearborn, MI 48126
(313) 633-0231
rula@acrlmich.org

HAMMOUD, DAKHLALLAH &
ASSOCIATES, PLLC
/s/ Kassem M. Dakhlallah
Kassem Dakhlallah (P70842)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com

VIDA LAW GROUP, PLLC
/s/ Mona Fadlallah
/s/ Natalie C. Qandah
Mona Fadlallah (P64197)
Natalie C. Qandah (P58434)
43050 Ford Road, Suite 160
Canton, MI 48187
Phone: (734) 456-9004
Facsimile: (734) 456-9003
Mona@vidalawpllc.com
Natalie@vidalawpllc.com

/s/ Ali K. Hammoud
Ali K. Hammoud (P73076)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
ah@hdalawgroup.com

3

**Counsel for American Civil Liberties Union of Michigan, Arab American and Chaldean Council, Arab American Studies Association, Adeeb Saleh, Sofana Bella, Hilal Alkatteeb and S.A., a minor through her Parent and Next Friend, Hilal Alkatteeb**

/s/ Miriam Aukerman

Miriam Aukerman (P63165)
American Civil Liberties Union Fund
of Michigan
1514 Wealthy SE, Suite 242
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org


/s/ Michael J. Steinberg

Michael J. Steinberg (P43085)
Daniel S. Korobkin (P72842)
Kary L. Moss (P49759)
American Civil Liberties Union Fund
of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6814
msteinberg@aclumich.org


/s/ Jason C. Raofield

Jason C. Raofield (D.C. Bar #463877)
Nishchay H. Maskay (D.C. Bar
#998983)
Covington & Burling LLP
One City Center
850 10th Street, NW
Washington, D.C. 20001
(202) 662-5072
jraofield@cov.com

/s/ Samuel R. Bagenstos

Samuel R. Bagenstos (P73971)
Cooperating Attorney,
American Civil Liberties Union
Fund of Michigan
625 South State Street
Ann Arbor, Michigan 48109
(734) 647-7584
sbagen@gmail.com


/s/ Margo Schlanger

Margo Schlanger (N.Y. Bar
#2704443 (3d Dept))
Cooperating Attorney,
American Civil Liberties Union
Fund of Michigan
625 South State Street
Ann Arbor, Michigan 48109
(734) 615-2618
margo.schlanger@gmail.com

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ARAB AMERICAN CIVIL RIGHTS LEAGUE**, et al.,

*Plaintiffs*,

*v.*

**DONALD TRUMP**, et al.,

*Defendants*.

Case No. 2:17-cv-10310-VAR-SDD

Hon. Victoria A. Roberts

Mag. J. Stephanie D. Davis

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR STAY
## PENDING SUPREME COURT PROCEEDINGS

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................ 1

ARGUMENT .................................................................................... 2

I.    THE COURT SHOULD DENY DEFENDANTS' REQUEST FOR A
      STAY. ................................................................................... 2

      A.    Defendants Have a High Burden in Requesting a Stay. ..................... 2

      B.    Defendants Cannot Meet Their Burden of Establishing a
            Pressing Need for Delay or Irreparable Harm If a Stay Is Not
            Granted. .......................................................................... 4

      C.    Defendants Have Not Met Their Burden to Prove that a Supreme
            Court Reversal in *IRAP v. Trump* Is Likely, or that a Decision by
            the Supreme Court Would Be Dispositive. ................................. 8

II.   THE COURT SHOULD GRANT IN PART AND DENY IN PART
      DEFENDANTS' REQUEST FOR AN EXTENSION. .............................. 14

      A.    Defendants Have Not Established "Good Cause" for
            an Extension. .................................................................... 14

      B.    The Deadline for Defendants to Respond to Document Requests
            2-4 and Interrogatories 1-2 Should Be Extended to Ten Days
            After the Court's Ruling on the Pending Motion to Compel............. 16

      C.    Defendants Should Be Required to Respond Immediately to
            Interrogatories 3-5. ............................................................ 18

CONCLUSION ................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abuhouran v. Morrison*,
No. 06-cv-1207, 2006 WL 3834411 (N.D. Ohio Dec. 29, 2006).......................13

*Aziz v. Trump*,
No. 17-cv-116, 2017 WL 580855 (E.D. Va. Feb. 13, 2017)................................8

*Caspar v. Snyder*,
77 F. Supp. 3d 616, 644 (E.D. Mich. 2015) .....................................................3, 8

*Citizens Banking Corp. v. Citizens First Bancorp, Inc.*,
No. 07-cv-10985, 2007 WL 4239237 (E.D. Mich. Dec. 3, 2007).......................4

*Coleman v. Ann Arbor Transp. Auth.*,
904 F. Supp. 2d 670 (E.D. Mich. 2012) .............................................................3

*FDIC v. First Am. Title Ins. Co.*,
No. 14-cv-13624, 2015 WL 418122 (E.D. Mich. Jan. 30, 2015)........................3

*Hawai'i v. Trump*,
No. 17-cv-0050, 2017 WL 1011673 (D. Haw. Mar. 15, 2017)...........................8

*IRAP v. Trump*,
No. 17-1351, __ F.3d __, 2017 WL 2273306 (4th Cir. May 25, 2017),
*aff'g* No. 17-cv-361, 2017 WL 1018235 (D. Md. Mar. 16, 2017) ......................8

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)...............................................................................2, 3, 4, 5

*Lilly Invs., LLC v. City of Rochester*,
No. 14-cv-10712, 2015 WL 753491 (E.D. Mich. Feb. 23, 2015) .....................12

*Miller v. City of Cincinnati*,
622 F.3d 524 (6th Cir. 2010) ..............................................................................6

*Nken v. Holder*,
556 U.S. 418 (2009)..............................................................................................3

*Ohio Envtl. Council v. U.S. Dist. Court*,
  565 F.2d 393 (6th Cir. 1977) ........................................................................2, 4

*Page v. Va. State Bd. of Elections*,
  15 F. Supp. 3d 657, 666 (E.D. Va. 2014) ............................................................12

*Roe v. Snyder*,
  No. 16-cv-13353, 2017 WL 840407 (E.D. Mich. Mar. 3, 2017) ........................3

*Schroeder v. Hess Indus., Inc.*,
  No. 12-cv-668, 2013 WL 2389489 (W.D. Mich. May 30, 2013) ........................6

*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997) ............................................................................19

*United States v. Mandycz*,
  321 F. Supp. 2d 862 (E.D. Mich. 2004) ......................................................3, 4, 8

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977) ............................................................................................12

*Washington v. Trump*,
  847 F.3d 1151 (9th Cir. 2017) ..........................................................................6, 8

**INTRODUCTION**

On May 11, the Court entered an Order denying Defendants' original motion to stay discovery, and required Defendants to serve responses and objections to Plaintiffs' discovery requests on May 19 (Document Request 1) and June 2 (Documents Requests 2-4 and Interrogatories 1-5). In that motion, Defendants had argued that the Court should stay discovery because (1) resolution of Defendants' motion to dismiss "may entirely resolve this case, thereby obviating the need for any discovery," and (2) impending decisions from the Fourth and Ninth Circuits "would likely provide this Court with guidance as to how to proceed." ECF #77, Pg. ID 1059-60.

Subsequent to this Court's decision rejecting Defendants' prior stay motion, there have been two developments. First, the Court has scheduled oral argument on the motion to dismiss (as to which it has indicated a tentative view that the motion to dismiss will be denied, at least in part). Second, an overwhelming majority of an *en banc* panel of the Fourth Circuit has *rejected* the Government's arguments. Incredibly, the Government now seeks a stay not only of discovery (as before), but also of the Court's consideration of the motion to dismiss itself, simply by declaring (without support) that the Supreme Court will reverse the Fourth Circuit and do so in a way that obviates the need for discovery.

1

This last-minute motion to stay is just the latest attempt by Defendants to avoid responding to the narrow discovery requests approved by the Court when it denied Defendants' earlier motion to stay. The Court should deny the new motion to stay, and resolve the motion to dismiss. For the reasons discussed below, however, it should grant Defendants' motion for an extension of the June 2 deadline, in part.

## ARGUMENT

## I.   THE COURT SHOULD DENY DEFENDANTS' REQUEST FOR A STAY.

### A.   Defendants Have a High Burden in Requesting a Stay.

The decision to stay proceedings is a matter committed to the Court's discretion. *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936). In ruling on Defendants' motion for a stay, this Court "must tread carefully . . . since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council v. U.S. Dist. Court,* 565 F.2d 393, 396 (6th Cir. 1977). A party seeking a stay bears the heavy burden of showing "that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Id.*

When the grounds for a stay are that a *separate* case might at some future time affect the issues presented now, the burden on the requestor is especially high. *Landis,* 299 U.S. at 256. "[T]he burden of making out the justice and wisdom of a departure from the beaten track [lies] heavily on the [movant for a stay]." *Id.* "[T]he suppliant for a stay must make out a clear case of hardship or inequity in being

2

required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Id.* at 255. "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009).

In deciding a motion for stay pending a decision from the Supreme Court in another case, the court weighs four factors: "[1] the potential dispositive effect of the other case, [2] judicial economy achieved by awaiting adjudication of the other case, [3] the public welfare, and [4] the relative hardships to the parties created by withholding judgment." *Caspar v. Snyder*, 77 F. Supp. 3d 616, 644 (E.D. Mich. 2015). In addition, a defendant seeking a stay "for the specific purpose of awaiting the Supreme Court's decision on a petition for a writ of certiorari" must demonstrate "a significant possibility that the Supreme Court would reverse the judgment below," and "a likelihood of irreparable harm, assuming the correctness of the applicant's position, if the judgment is not stayed." *United States v. Mandycz*, 321 F. Supp. 2d 862, 864 (E.D. Mich. 2004) (quoting *Packwood v. Senate Select Comm. on Ethics*, 510 U.S. 1319, 1319 (1994) (Rehnquist, C.J., in chambers) (internal quotation marks and alterations omitted)); *accord FDIC v. First Am. Title Ins. Co.*, No. 14-cv-13624, 2015 WL 418122, at *2 (E.D. Mich. Jan. 30, 2015).

B.   Defendants Cannot Meet Their Burden of Establishing a Pressing Need for Delay or Irreparable Harm If a Stay Is Not Granted.

Defendants cannot meet their high burden of establishing that all proceedings in this case should be stayed just because they asked the Supreme Court to grant *certiorari* in a different case. First, Defendants have not shown that there is a "pressing need for delay," *Ohio Envtl. Council*, 565 F.2d at 396, that "hardship or inequity" will result if litigation proceeds along the normal course, *Landis*, 299 U.S. at 255, or that there is a "likelihood of irreparable harm," *Mandycz*, 321 F. Supp. 2d at 864, if the stay is denied. "[B]eing required to defend a suit, without more, does not . . . demonstrate that 'pressing need,' nor any hardship or inequity in proceeding" with the case. *Citizens Banking Corp. v. Citizens First Bancorp, Inc.*, No. 07-cv-10985, 2007 WL 4239237, at *7 (E.D. Mich. Dec. 3, 2007) (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005)).

Contrary to Defendants' contention that Plaintiffs are seeking "wide-ranging discovery" that "imposes a heavy burden," ECF #105, at Pg. ID 1900, Plaintiffs are seeking production of only four discrete categories of documents and responses to just five narrow interrogatories, and the Court has authorized discovery only "on a limited basis." ECF #89, at Pg. ID 1225; ECF #78, at Pg. ID 1084-86. And, as Plaintiffs have explained at length, *Cheney* does not apply in the face of narrow discovery requests for information that is not publicly available. ECF #104, at Pg.

4

ID 1663-65. Under the facts of this case, Defendants will not be prejudiced by (let alone suffer irreparable harm from) the limited discovery at issue here.

*Landis* itself shows that Defendants are overreaching. There, the Supreme Court was considering a "case[] of extraordinary public moment" where "great issues are involved, great in their complexity, great in their significance." 299 U.S. at 256. Dozens of similar cases had been brought by plaintiffs seeking to enjoin enforcement of the same law, but had been stayed pending Supreme Court review of one such case. *Id.* at 249-52. While acknowledging "the power inherent in every court to control the disposition of the causes on its docket," the Court rejected the idea that this power allowed the lengthy stay entered by the district court, even in such a significant case. *Id.* at 254-56. The Court warned that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* at 255.

Here, Defendants are seeking a similarly lengthy stay. Even if the Supreme Court grants the Government's petition for certiorari, the earliest the matter will be heard is October. Thus, allowing time for briefing, argument, and the Court's decision, Defendants are seeking a stay of at least six months (and likely longer). Such a prolonged stay would severely delay the case and prejudice Plaintiffs, preventing them from securing the evidence they seek to proceed with their case. Moreover, during the pendency of the Supreme Court review, "documents may be

5

misplaced," *Schroeder v. Hess Indus., Inc.*, No. 12-cv-668, 2013 WL 2389489, at *1 (W.D. Mich. May 30, 2013), further prejudicing Plaintiffs. Indeed, there is reason to question whether Defendants have taken sufficient steps to preserve relevant evidence, given their refusal even to conduct a search to determine what documents exist, and their position that documents in the possession of Named Defendants in their "private capacities" are not within the possession, custody, or control of the Defendants for purposes of this case. If the Court stays the case, the risk of evidence being lost increases substantially. Prolonged delay would also harm the public interest. *See Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010) ("[I]t is always in the public interest to prevent violation of a party's constitutional rights.").[1]

Finally, the stays entered in other cases challenging the Executive Orders (all of which are in the Fourth or Ninth Circuits) have no significance here. Most of the cases involved stipulated or unopposed motions to stay, including stays in the very cases on appeal. ECF #105-2 (*IRAP*), 105-3 (*Sarsour*), 105-4 (*Hawai'i*), and 105-7 (*Doe*). In the *Pars* cases, the court ordered case activity *to proceed*, while merely deferring entry of an injunction (after finding likelihood of success on the merits)

---

[1] There is even less reason to be confident that the third parties pointed to by Defendants will preserve relevant evidence Plaintiffs may ultimately seek by subpoena. In fact, in a recent interview with the *Washington Post* about this Court's May 11 Order, Mr. Giuliani offhandedly referred to "whatever documents he still had," and implied he had no obligations because the Order "was directed to the government, not to him personally." ECF #104-1, at Pg. ID 1869-70.

due to questions about whether plaintiffs suffered "imminent or certain" harm in light of the existing nationwide injunctions. ECF #105-5, ECF #105-6. The *Washington* case is the only one that involved a contested motion to stay. There, the Ninth Circuit had already heard oral argument in the *Hawai'i* case, and defendants had not even filed their motion to dismiss (whereas here, the motion to dismiss is fully briefed and oral argument has been scheduled). ECF #104-1, at Pg. ID 1746, 1749. And, Judge Robart was concerned about the "sheer volume" of discovery, which, unlike here, was not limited to the pre-inauguration period, and included "up to 30 depositions of government officials, including White House staff and Cabinet-level officers." ECF #104-1, at Pg. ID 1750.

As court after court has made clear, the claims asserted in this case are fully supported as a matter of constitutional law, and the harms resulting from the violation of Plaintiffs' constitutional rights are grave. This is not a case in which the claims are dubious, or the injury insubstantial. There is simply no basis for Defendants' position that Plaintiffs should be forced to wait in the starting blocks for six months or more, merely because Defendants *hope* the Supreme Court will not only intervene, but will issue a decision on the appeal of a preliminary injunction in a way that renders discovery on the merits unnecessary. By contrast, it would impose no great injustice for Defendants to respond to the small handful of limited discovery requests approved in the Court's May 11 Order.

7

C.    Defendants Have Not Met Their Burden to Prove that a Supreme Court
      Reversal in *IRAP v. Trump* Is Likely, or that a Decision by the Supreme
      Court Would Be Dispositive.

Defendants have also failed to show that there is "a significant possibility that

the Supreme Court would reverse the judgment below," *Mandycz*, 321 F. Supp. 2d

at 864, or that, even in the event of such a reversal, any such decision would be

dispositive in *this* case. *Caspar*, 77 F. Supp. 3d at 644.

Defendants have previously made similar self-serving predictions about what

appellate courts will do, only to be proven wrong. In their prior motion to stay,

Defendants insisted that discovery should be halted because a decision from the

Fourth Circuit "would likely provide this Court with guidance as to how to proceed."

ECF #77, Pg. ID 1059-60. Of course, an overwhelming majority of an *en banc* panel

of the Fourth Circuit flatly *rejected* the Government's arguments, such that a stay

pending that decision would have accomplished nothing but delay. Now, in their

renewed motion to stay discovery, Defendants insist that a decision of the Supreme

Court will "provide substantial guidance to this Court." ECF #105, at Pg. ID 1899.

To say that the litigation of the Executive Orders has not been going well for

Defendants is an understatement. Even under the challenging "likelihood of success"

standard for seeking an injunction, Defendants' positions have been repeatedly

*rejected* by the courts in cases challenging the Executive Orders. *See, e.g.*, *IRAP v.*

*Trump*, No. 17-1351, __ F.3d __, 2017 WL 2273306 (4th Cir. May 25, 2017), *aff'g*

8

No. 17-cv-361, 2017 WL 1018235 (D. Md. Mar. 16, 2017); *Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017); *Hawai'i v. Trump*, No. 17-cv-0050, 2017 WL 1011673 (D. Haw. Mar. 15, 2017); *Aziz v. Trump*, No. 17-cv-116, 2017 WL 580855 (E.D. Va. Feb. 13, 2017). Moreover, the Fourth Circuit's decision in *IRAP* was well reasoned and strongly supported by Supreme Court precedent. *See, e.g.*, 2017 WL 2273306, at *14-24. And the fact that ten of the thirteen judges supported the *en banc* decision of that Court demonstrates that the probabilities weigh decidedly *against* Defendants. Defendants cannot justify a stay simply by declaring that there is a "significant possibility" that the Supreme Court will reverse the Fourth Circuit. Defendants were wrong when they made that same prediction about the Fourth Circuit's review of the District Court, and they do not even pretend to offer any support for that self-serving proclamation now. Defendants' position would require the Supreme Court to reverse decades of precedent and hold that evidence of animus is not relevant to Establishment Clause claims. *See* ECF #104, at Pg. ID 1656-59. That seems at best quite speculative.

Moreover, even if a majority of the Supreme Court were to reverse the Fourth Circuit and thereby disagree with the vast majority of federal judges to have considered the Executive Orders, that result would not dispose of this case or obviate the need for the limited discovery that Plaintiffs currently seek.

9

The Government's petition for *certiorari* in *IRAP* sets out three questions for Supreme Court review.  It is of course impossible to know whether the Court will agree to take up any of those questions, much less which ones. The Government argues that the Supreme Court should decide:

1. Whether the Fourth Circuit correctly found that a particular individual plaintiff had standing to bring an Establishment Clause claim based on allegations that the Executive Order conveys an anti-Islamic message and also impacts his wife's ability to obtain a visa?

2. Whether the Fourth Circuit correctly found that the *IRAP* plaintiffs had a likelihood of success on their Establishment Clause Claim?

3. Whether the district court's injunction in *IRAP* was overbroad?

Petition for Writ of Certiorari, *Trump v. IRAP*, June 1, 2017 ("*IRAP* Pet."), at I. Even assuming, *arguendo*, that the Supreme Court takes up the first two questions and decides them adversely to the *IRAP* plaintiffs, that would not dispose of the Plaintiffs' claims here. (The third question presented in *IRAP* is not relevant to this litigation, except to the extent that, if the Court were to find the injunction overbroad, it would make it all the more urgent for the Plaintiffs here to be adequately prepared to move for their own preliminary injunction.)

With respect to the first question, even if the Supreme Court concluded that the individual *IRAP* plaintiff could not establish standing for an Establishment Clause claim based on the alleged stigmatic and family-separation injuries, that

10

would not resolve the question of whether the plaintiffs *here* have standing for an Establishment Clause claim (much less the question of standing for their Free Speech and Equal Protection claims). As set out in Plaintiffs' Opposition to Defendants' Motion to Dismiss, ECF #86, Pg. ID 1175-87, Plaintiffs here assert not only stigmatic injury and harms from family separation, but also economic injury and damage to their organizational missions and operations. For example, the Executive Order has interfered with the ability of members of the American Arab Chamber of Commerce, the Arab American and Chaldean Council, and the Arab American Studies Association ("AASA") to conduct business, develop business relationships, hire employees, and recruit students, and has imposed direct financial costs on both organizational and individual plaintiffs. ECF #41, Second Am. Cplt. ("SAC") ¶¶ 245-47, 249-50, 255-62, 268, 270, 273.

Moreover, the Government's *cert* petition itself acknowledges that plaintiffs have standing to bring a First Amendment challenge to the exclusion of speakers whom plaintiffs wish to bring to the United States. *IRAP* Pet., at 14-15. Plaintiffs here, unlike in *IRAP*, assert precisely such a claim, alleging that the Executive Order "directly interferes with [Plaintiff] ACLU's ability to plan for and hold" a "Voices of the Muslim Ban" event that it is organizing, because the Executive Order "will either prevent the ACLU from bringing in the ACLU's desired speakers or will create obstacles to bringing in those speakers that would not exist for speakers who

are not from the Muslim-majority Designated Countries." SAC ¶¶ 236, 237. And the Executive Order impedes plaintiff AASA "from inviting scholars from the Designated Countries to present at academic conferences and engage in other collaborative research and scholarship projects." *Id.* ¶ 271. Given that the Government concedes standing for the First Amendment claim, it is clear that even if the Supreme Court grants *cert* on Question I and decides it adversely to the *IRAP* plaintiffs, the case before this Court will proceed.

Second, assuming *arguendo* that the Supreme Court grants *cert* on Question II and decides that the *IRAP* plaintiffs have not shown a likelihood of success on their Establishment Clause claim, that likewise would not dispose of this case. A decision on the Establishment Clause claim is not a decision on the Equal Protection claim or the Free Speech claim. Thus, the discovery sought here is relevant to claims that are not even part of the *IRAP cert* petition. Courts routinely allow discovery as part of the equal protection "inquiry into such circumstantial and direct evidence of intent as may be available." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Thus, courts assessing equal protection claims rely on "documents containing the opinions and subjective beliefs of [government officials] or their key advisors," *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657, 666 (E.D. Va. 2014), and permit discovery that is "relevant to the issue of potential animus." *Lilly Invs., LLC v. City of Rochester*, No. 14-cv-10712, 2015 WL 753491,

at *10 (E.D. Mich. Feb. 23, 2015). Similarly, Plaintiffs are entitled to "full discovery" on their free speech claim. *Coleman v. Ann Arbor Transp. Auth.*, 904 F. Supp. 2d 670, 699 n.17 (E.D. Mich. 2012). Indeed, this Court has already found that the "limited discovery" Plaintiffs seek "will be relevant to any claim." ECF # 89, at Pg. ID 1222.

In other words, this case will proceed, and discovery will be needed, on the Equal Protection and Free Speech claims regardless of any decision the Supreme Court might make in *IRAP*. That fact militates strongly against a stay. *See, e.g. Roe v. Snyder*, No. 16-cv-13353, 2017 WL 840407, at *3 (E.D. Mich. Mar. 3, 2017) (on appeal) (denying stay pending Supreme Court decision in a related case because even if the Court decided an Ex Post Facto claim adversely to the plaintiff, the plaintiff also had a vagueness claim that would not be decided by the Supreme Court); *Abuhouran v. Morrison*, No. 06-cv-1207, 2006 WL 3834411, at *1 (N.D. Ohio Dec. 29, 2006) (denying motion to hold in abeyance because "even if the Supreme Court issued a favorable ruling, such a ruling alone would not have a dispositive effect on Plaintiff's case," which also concerned other issues).

Moreover, the *IRAP* appeal, by definition, concerns the propriety of a preliminary injunction on the Establishment Clause issue, not a final decision on the merits. While a Court ruling on the "likelihood of success" of an Establishment Clause claim may provide guidance on how this Court should ultimately evaluate

13

such a claim, it would not obviate the need for discovery even with respect to that claim. For example, as explained in Plaintiffs' pending motion to compel (ECF #104, at Pg. ID 1655), a Supreme Court decision about the relevance of campaign statements would not obviate the need for Document Request 1 (which seeks a memo witnesses have described as the basis for the initial Executive Order); nor would it have any bearing on Interrogatories 3-5, which, as discussed below, merely seek facts that existed at the time of the Executive Order and which are clearly relevant to the national security justification.

In sum, Defendants overstate the import of a possible Supreme Court decision to this case and ignore the standards that the Court must apply in deciding whether to grant a stay pending review of a Supreme Court appeal in another case. In so doing, they fail to carry their burden to show that a stay is warranted here.

## II.   THE COURT SHOULD GRANT IN PART AND DENY IN PART DEFENDANTS' REQUEST FOR AN EXTENSION.

### A.   Defendants Have Not Established "Good Cause" for an Extension.

Defendants have had ample time to prepare responses and objections to Plaintiffs' narrow discovery requests. It has been eleven weeks since Plaintiffs first served their initial discovery requests, and pursuant to the Court's May 11 Order, Defendants had more than three weeks to prepare their responses and objections to the three document requests and five interrogatories at issue.

14

For whatever reason, even after the Court ordered limited discovery to proceed, Defendants focused their efforts entirely on delaying discovery rather than responding. They served initial disclosures that disclosed nothing at all. Instead of simply producing a copy of the Giuliani memo, they prepared a 34-page brief attempting to justify their refusal even to search for the document. And rather than endeavoring to comply with the Court's order to serve responses and objections to the remaining discovery requests on June 2, Defendants waited until the last minute and then filed a motion for extension, even though they had decided to file such a motion a week earlier. Raofield Decl., Ex. A (email confirming Defendants' request of May 24 seeking Plaintiffs' concurrence to extend the June 2 deadline).

In any event, Defendants have not established "good cause" for an extension. Instead, they simply recycle arguments the Court has previously considered and rejected. They complain about "the complex nature of the legal questions raised by Plaintiffs' discovery requests (which implicate novel questions regarding seeking private materials from government officials)." ECF #105, at Pg. ID 1902-03. That very same argument was made in support of their prior motion to stay. ECF #82, at Pg. ID 1132 ("the complicated issue of seeking discovery from official-capacity defendants of documents that were allegedly generated and possessed by them as private individuals"). And they suggest they need time "to coordinate with the numerous Defendant agencies regarding both objections and responses." ECF #105,

15

at Pg. ID 1903. Again, the identical argument was made in support of their original motion to stay. ECF #77, at Pg. ID 1069 ("these requests would require high levels of coordination between large agencies"). This Court has already rejected those arguments.

The fact is that every action Defendants have taken has been calculated to avoid and delay Plaintiffs' very reasonable discovery requests. Indeed, Plaintiffs offered to consent to a two-week extension of the June 2 deadline as to the document requests, if the Defendants would merely agree not to delay their response and objections to the interrogatories beyond the June 2 deadline. Raofield Decl., Ex. B. Defendants rejected even that eminently reasonable proposal. *Id.* Defendants cannot manufacture good cause through their own obstinacy.

### B. The Deadline for Defendants to Respond to Document Requests 2-4 and Interrogatories 1-2 Should Be Extended to Ten Days After the Court's Ruling on the Pending Motion to Compel.

Unfortunately, the fact remains that Defendants have not yet begun to search for documents responsive to any of the document requests. And because responses to Interrogatories 1-2 necessarily involve the related document requests, Defendants presumably are unprepared to respond to those interrogatories. As such, Defendants' repeated delays have forced a situation where they will require additional time to prepare their responses and objections to those requests.

16

Although Plaintiffs are frustrated by Defendants' endless delay tactics, we are pragmatic and wish to proceed in the manner that will result in the production of the requested documents and information as soon as possible. As such, Plaintiffs request that the Court grant Defendants' motion to extend the prior June 2 deadline for Defendants' responses and objections to Document Requests 2-4 and Interrogatories 1-2 until ten days after the Court's ruling on the motion to compel with respect to Document Request 1.

To avoid further unnecessary delays, however, Plaintiffs have two modest requests. First, the briefing procedures set forth in the Court's May 11 Order should remain in effect (i.e., Defendants should set forth all of their objections and arguments in their response, which Plaintiffs are to attach to their motion to compel, with no further briefing unless requested by the Court). Second, Defendants should be required to comply with the Court's order on the pending motion to compel. In other words, while Defendants may of course preserve any objections, Defendants should not be permitted to wait ten days only to withhold discovery on the basis of objections the Court has already rejected. This should be entirely acceptable to Defendants because it is a basis for their extension request.[2]

---

[2] ECF #105, at Pg. ID 1903 ("It may also be prudent to grant an extension until two weeks after a ruling on the pending motion to compel regarding Plaintiffs' Document Request No. 1. A ruling on that motion could . . . inform Defendants' objections and responses to the remaining requests that seek similar categories of documents and

17

## C.   Defendants Should Be Required to Respond Immediately to Interrogatories 3-5.

By contrast, there is no basis at all for any further extension of the deadline for Defendants to respond to Interrogatories 3-5. Those interrogatories are simple, straightforward, and highly relevant. For example, Interrogatory 3 states:

> Identify all foreign-born individuals from Iran, Libya, Somalia, Sudan, Syria or Yemen, who are among the "hundreds of persons" referred to in Section 1(h) of Executive Order 13780 (i.e., "Since 2001, hundreds of persons born abroad have been convicted of terrorism-related crimes in the United States."). For each such individual, identify the date of conviction, the court and docket number of the relevant case, the crime(s) with which the individual was convicted, the date the individual was admitted to the United States, and the nation(s) of origin and citizenship of the individual.

Interrogatories 4 and 5 are similar. *See* Raofield Decl., Ex. C.

The Government can hardly claim not to know this information or object to these requests as unduly burdensome, because the Government's own position is that this factual information supports the national security justification for the ban on entry by individuals from these six countries. To the extent the Government might suggest it would be burdensome to identify the basic information requested regarding the individuals and convictions, such hypothetical objections should be rejected out of hand. Indeed, it is entirely possible that the response to this

---

information. Such a ruling would also inform the parties' subsequent meet and confers on discovery issues.").

interrogatory will be as simple as admitting that very few (if any) of those "hundreds of persons" were from those six countries. Such a response would undermine the Government's litigation position, but the Government cannot contend the request is irrelevant or unduly burdensome.

Moreover, in order to avoid any claim of executive privilege, Plaintiffs crafted these three interrogatories to seek only discrete factual information known to the Government, not communications involving the President (or anyone else). As such, Defendants cannot delay their responses with vague suggestions that the requests might somehow implicate issues of executive privilege. The fact that there is no basis for asserting executive privilege, and the fact that this information is not available from any other source, provide two independent reasons why Defendants cannot delay their responses by invoking *Cheney*. ECF #104, at Pg. ID 1663-65.

For these reasons, the Court should enter an order requiring Defendants to serve responses and objections to Interrogatories 3-5 within two days. In addition, to the extent Defendants withhold any information on the basis of their objections, they should be ordered to prepare their responses so that no further delay would be required if the Court grants a motion to compel. Nearly three weeks passed between the Court's May 11 Order directing Defendants to respond to these interrogatories and Defendants' last-minute motion to delay its response. Given the straightforward

nature of the interrogatories, Defendants should not be permitted to delay responses to these interrogatories any further.

## CONCLUSION

In order to facilitate the efficient and organized adjudication of Defendants' objections and the production of the requested discovery, Plaintiffs respectfully request that the Court enter an order denying Defendants' motion to stay, and setting forth a process for Defendants to respond to Plaintiffs' discovery requests.

First, with respect to Document Request 1, the Court should enter an order granting Plaintiffs' motion to compel, and implementing the 5/10/15 day timetable identified in that motion for submission of the document for *in camera* review, assertions of privilege, and response by Plaintiffs. ECF #104, at Pg. ID 1672-73.

Second, with respect to Documents Requests 2-4 and Interrogatories 1-2, the Court should extend the prior June 2 deadline for Defendants' responses and objections until ten days after the Court's ruling on the pending motion to compel with respect to Document Request 1. The briefing procedures set forth in the May 11 Order should remain in effect, and Defendants should be instructed not to withhold any discovery on the basis of objections addressed and rejected in the Court's order on the motion to compel with respect to Document Request 1.

Third, with respect to Interrogatories 3-5, the Court should enter an order requiring Defendants to serve responses and objections within two days of the

Court's ruling denying Defendants' motion to stay. Again, the briefing procedures set forth in the May 11 Order should remain in effect, and to the extent Defendants withhold information on the basis of any objections asserted, they should be ordered to prepare their responses so no further delay is required if the Court grants a motion to compel those responses.

Dated: June 2, 2017                                   Respectfully submitted,

**Counsel for Arab American Civil Rights League**

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
——————————————
Nabih H. Ayad (P59518)
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

/s/ Rula Aoun
——————————————
Rula Aoun (P79119)
4917 Schaefer Rd.
Dearborn, MI 48126
(313) 633-0231
rula@acrlmich.org

HAMMOUD, DAKHLALLAH &
ASSOCIATES, PLLC
/s/ Kassem M. Dakhlallah
——————————————
Kassem Dakhlallah (P70842)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com

VIDA LAW GROUP, PLLC
/s/ Mona Fadlallah
——————————————
/s/ Natalie C. Qandah
——————————————
Mona Fadlallah (P64197)
Natalie C. Qandah (P58434)
43050 Ford Road, Suite 160
Canton, MI 48187
Phone: (734) 456-9004
Facsimile: (734) 456-9003
Mona@vidalawpllc.com
Natalie@vidalawpllc.com

**Counsel for American Arab Chamber of Commerce**

FARHAT & ASSOCIATES, PLLC
/s/ Helal Farhat
——————————————
Helal Farhat (P64872)
Counsel for the American Arab
Chamber of Commerce
6053 Chase Rd.
Dearborn, MI 48126
(313) 945-5100
hfarhat@saflegal.com

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
——————————————
Nabih H. Ayad (P59518)
Attorney for Plaintiffs
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

22

**Counsel for Hend Alshawish, Salim Alshawish, Yousef Abdullah, Fahmi Jahaf, and Mohamed Alshega**

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
Nabih H. Ayad (P59518)
Attorney for Plaintiffs
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

HAMMOUD, DAKHLALLAH &
ASSOCIATES, PLLC
/s/ Kassem M. Dakhlallah
Kassem Dakhlallah (P70842)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com


/s/ Ali K. Hammoud
Ali K. Hammoud (P73076)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
ah@hdalawgroup.com

/s/ Rula Aoun
Rula Aoun (P79119)
4917 Schaefer Rd.
Dearborn, MI 48126
(313) 633-0231
rula@acrlmich.org

VIDA LAW GROUP, PLLC
/s/ Mona Fadlallah
/s/ Natalie C. Qandah
Mona Fadlallah (P64197)
Natalie C. Qandah (P58434)
43050 Ford Road, Suite 160
Canton, MI 48187
Phone: (734) 456-9004
Facsimile: (734) 456-9003
Mona@vidalawpllc.com
Natalie@vidalawpllc.com

23

**Counsel for American Civil Liberties Union of Michigan, Arab American and Chaldean Council, Arab American Studies Association, Adeeb Saleh, Sofana Bella, Hilal Alkatteeb and S.A., a minor through her Parent and Next Friend, Hilal Alkatteeb**

/s/ Miriam Aukerman
Miriam Aukerman (P63165)
American Civil Liberties Union Fund of Michigan
1514 Wealthy SE, Suite 242
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

/s/ Samuel R. Bagenstos
Samuel R. Bagenstos (P73971)
Cooperating Attorney,
American Civil Liberties Union Fund of Michigan
625 South State Street
Ann Arbor, Michigan 48109
(734) 647-7584
sbagen@gmail.com

/s/ Michael J. Steinberg
Michael J. Steinberg (P43085)
Daniel S. Korobkin (P72842)
Kary L. Moss (P49759)
American Civil Liberties Union Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6814
msteinberg@aclumich.org

/s/ Margo Schlanger
Margo Schlanger (N.Y. Bar #2704443 (3d Dept))
Cooperating Attorney,
American Civil Liberties Union Fund of Michigan
625 South State Street
Ann Arbor, Michigan 48109
(734) 615-2618
margo.schlanger@gmail.com

/s/ Jason C. Raofield
Jason C. Raofield (D.C. Bar #463877)
Nishchay H. Maskay (D.C. Bar #998983)
Covington & Burling LLP
One City Center
850 10th Street, NW
Washington, D.C. 20001
(202) 662-5072
jraofield@cov.com

24

## CERTIFICATE OF SERVICE

This Memorandum and the supporting Declaration of Jason Raofield and Exhibits thereto was filed on June 2, 2017, via the Court's ECF system, which provides notice to all counsel of record.

/s/ Jason C. Raofield
Jason C. Raofield
(D.C. Bar #463877)