# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ARAB AMERICAN CIVIL
RIGHTS LEAGUE ("ACRL"), *et al.*,

                    Plaintiffs,

              v.

DONALD TRUMP, President of
the United States of America, *et al.*,

                    Defendants.

Case No. 2:17-cv-10310

Hon. Victoria A. Roberts
Mag. Judge Stephanie D. Davis

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFFS' THIRD AMENDED COMPLAINT

Defendants hereby move the Court to dismiss Plaintiffs' Third Amended Complaint (ECF No. 124) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The grounds for this motion are set forth more fully in the attached supporting memorandum.

Pursuant to Local Rule 7.1, Defendants' counsel called and e-mailed Plaintiffs' counsel on October 15, 2018, regarding concurrence in this motion. Plaintiffs' counsel advised that they oppose the motion.

## <u>ISSUES PRESENTED</u>

1)      Whether Plaintiffs' Establishment Clause, Equal Protection, and Free Speech claims are foreclosed by *Trump v. Hawaii*, 138 S. Ct. 2392 (2018), which rejected similar constitutional claims after holding that the Proclamation is supported by facially legitimate and bona fide reasons, and that the Executive's foreign-policy and national-security judgments survived rational-basis review.

2)      Whether the organizational Plaintiffs have standing to assert their Establishment Clause claim without having suffered any harm.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| ARAB AMERICAN CIVIL RIGHTS LEAGUE ("ACRL"), *et al.*, | Case No. 2:17-cv-10310 |
| Plaintiffs, | |
| v. | Hon. Victoria A. Roberts |
| | Mag. Judge Stephanie D. Davis |
| DONALD TRUMP, President of the United States of America, *et al.*, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS
## <u>PLAINTIFFS' THIRD AMENDED COMPLAINT</u>

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

GISELA A. WESTWATER
Assistant Director

JOSHUA S. PRESS
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-0106
e-Mail: joshua.press @usdoj.gov

*Attorneys for Defendants*

## TABLE OF CONTENTS

**INTRODUCTION**................................................................................1

**STATEMENT OF THE CASE**............................................................3

   **I.  Legal Background**.........................................................................3

   **II. Factual And Procedural Background Of The Instant Litigation**............7

**STANDARDS OF REVIEW**.............................................................9

   **I.  Federal Rule Of Civil Procedure 12(b)(1)**.................................9

   **II. Federal Rule Of Civil Procedure 12(b)(6)**................................9

**ARGUMENT**.....................................................................................10

   **I. *Hawaii* Makes Plain That Plaintiffs' Facial Challenges Are Foreclosed**.10

      **A.    The Plaintiffs' Establishment Clause Claim**....................................12

      **B.    The Plaintiffs' Equal Protection Claim**...........................................16

      **C.    The Plaintiffs' Free Speech Claim**..................................................18

   **II. The Organizational Plaintiffs Lack Standing To Bring An Establishment Clause Claim**.......................................................19

**CONCLUSION**..................................................................................21

# TABLE OF AUTHORITIES

## Cases

*Allen v. Wright*,
  468 U.S. 737 (1984) ........................................................20

*Almario v. Att'y Gen.*,
  872 F.2d 147 (6th Cir. 1989) ...................................... 14, 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................10

*Bangura v. Hansen*,
  434 F.3d 487 (6th Cir. 2006) ...................................... 12, 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................10

*Ben-Issa v. Reagan*,
  645 F. Supp. 1556 (W.D. Mich. 1986) ...............................19

*Cartwright v. Garner*,
  751 F. 3d 752 (6th Cir. 2014) .................................................9

*FCC v. Beach Commcn's, Inc.*,
  508 U.S. 307 (1993) ........................................................14

*Fiallo v. Bell*,
  430 U.S. 787 (1977) ........................................... 11, 17, 18

*Gross v. Hougland*,
  712 F.2d 1034 (6th Cir. 1983) .............................................9

*Guzman v. U.S. Dep't of Homeland Sec.*,
  679 F.3d 425 (6th Cir. 2012) ...........................................17

*Hawaii v. Trump*,
  265 F. Supp. 3d 1140 (D. Haw. 2017) ...............................6

*Hawaii v. Trump*,
   859 F.3d 741 (9th Cir. 2017) ..................................................................4

*Hawaii v. Trump*,
   878 F.3d 662 (9th Cir. 2017) ..................................................................7

*Heller v. Doe by Doe*,
   509 U.S. 312 (1993)................................................................. 12, 14

*Hussein v. Beecroft*, No. 17-cv-12356,
   2018 WL 3574717 (E.D. Mich. July 25, 2018) ................................................2, 3

*IRAP v. Trump*,
   265 F. Supp. 3d 570 (D. Md. 2017)....................................................6

*IRAP v. Trump*,
   857 F.3d 554 (4th Cir. 2017) ..................................................................4

*IRAP v. Trump*,
   883 F.3d 233 (4th Cir. 2018) ..................................................................7

*King v. Burwell*,
   135 S. Ct. 2480 (2015).........................................................21

*Kleindienst v. Mandel*,
   408 U.S. 753 (1972)................................................................. *passim*

*Kokkenen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994)................................................................9

*Mathews v. Diaz*,
   426 U.S. 67 (1976)................................................................17

*Moir v. Greater Cleveland Reg'l Transit Auth.*,
   895 F.2d 266 (6th Cir. 1990) ................................................................9

*In re Navy Chaplaincy*,
   534 F.3d 756 (D.C. Cir. 2008) .........................................................21

*In re Omnicare, Inc. Sec. Litig.*,
    769 F.3d 455 (6th Cir. 2014) .............................................................................10

*Plyler v. Doe*,
    457 U.S. 202 (1982) .........................................................................................14

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) .........................................................................................16

*Roudnahal v. Ridge*,
    310 F. Supp. 2d 884 (N.D. Ohio 2003) ..............................................................17

*Saravia v. Sessions*,
    280 F. Supp. 3d 1168 (N.D. Cal. 2017) ..............................................................8

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ...........................................................................................9

*Trump v. Hawaii*,
    138 S. Ct. 377 (2017) .......................................................................................4

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018) ........................................................................... *passim*

*Trump v. IRAP*,
    137 S. Ct. 2080 (2017) .....................................................................................4

*Trump v. IRAP*,
    138 S. Ct. 353 (2017) .......................................................................................4

*United States v. Munsingwear, Inc.*,
    340 U.S. 36 (1950) ...........................................................................................4

*United States v. Salerno*,
    481 U.S. 739 (1987) .........................................................................................12

*Valley Forge Christian Coll. v. Ams. Utd. for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982) ................................................................................... 20, 21

## Statutes

8 U.S.C. § 1182(f) .................................................................................................. 7

# INTRODUCTION

Defendants, through their attorneys, hereby submit this brief in support of their Motion to Dismiss (ECF No. 128) Plaintiffs' Third Amended Complaint (ECF No. 124) (hereinafter, "Plaintiffs' Complaint" or "Compl."). Consistent with the President's broad constitutional authority over foreign affairs and national security, Sections 1182(f) and 1185(a) of Title 8 expressly authorize him to restrict or suspend the entry of any class of aliens when he determines it is in the national interest. Pursuant to these authorities, the President issued Proclamation No. 9645 on September 24, 2017, which suspended entry of certain nationals of eight countries whose governments do not share adequate information with the United States or have other national-security risk factors.

That Proclamation recognized the importance of information-sharing and identity-management protocols in the vetting of foreign nationals and imposed tailored restrictions in order to induce those governments to improve their cooperation. *See* Presidential Proclamation 9645, 82 Fed. Reg. 45161 (Sept. 24, 2017) ("Proclamation"). The Proclamation also calls for regular reviews of these countries' efforts, and, in April 2018, the President terminated the restrictions on Chad based on its improved coordination with the United States in the vetting of its foreign nationals. *See* Presidential Proclamation Maintaining Enhanced Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by

1

Terrorists or Other Public-Safety Threats, April 10, 2018.  And as Plaintiffs are well aware, the Supreme Court recently rejected both statutory and constitutional challenges to the Proclamation. *See Trump v. Hawaii*, 138 S. Ct. 2392 (2018). The Supreme Court's reasoning in *Hawaii* forecloses Plaintiffs' suit.

Notwithstanding the Supreme Court's decision in *Hawaii*, the Plaintiffs (both organizational and individual) bring a facial challenge against the Proclamation, claiming that it violates the Establishment Clause (Count I), Compl. ¶¶ 394–403, the Fifth Amendment's equal-protection component by discriminating against Muslims (Count II), *id.* at ¶¶ 404–418, and the Free Speech Clause (Count III), *id.* at ¶¶ 419–434.[1] Plaintiffs ask this Court to micro-manage the Proclamation by only enjoining its application to aliens from "Iran, Libya, Somalia, Syria[,] and Yemen," *id.* at ¶ 124. In addition, the individual Plaintiffs seek to represent a purported class of persons who may or may not be affected by the Proclamation, in a subset of the countries covered by the Proclamation, *see id.* at ¶¶ 386–93, and they ask this Court to "declar[e] that [the Proclamation] is unlawful and invalid" *in toto*, *id.* at 124.

Several Plaintiffs do not have standing or justiciable claims. But even if all of

---

[1]    Plaintiffs' Complaint mentions how they have outstanding waiver requests, *see, e.g.*, Compl. ¶ 342, but because the Plaintiffs are bringing a facial challenge, their arguments do not depend on their individual circumstances vis-à-vis potential waivers. Moreover, Plaintiffs' challenges to the waiver process would be barred by the doctrine of consular nonreviewability, which prohibits courts from second guessing the decisions of consular officers adjudicating visa applications. *See, e.g.*, *Hussein*, 2018 WL 3574717, at *5–6.

Plaintiffs' claims were justiciable, those claims still fail on the merits because the Supreme Court has already ruled that the Proclamation stands upon a "facially legitimate and bona fide reason" and survives rational-basis review. *See Hawaii*, 138 S. Ct. at 2419. "Once this standard is met, courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the constitutional interests of citizens the visa denial might implicate." *Hussein v. Beecroft*, No. 17-cv-12356, 2018 WL 3574717, at *5 (E.D. Mich. July 25, 2018) (quotations omitted); *accord Hawaii*, 138 S. Ct. at 2419–2420 (same). As the Supreme Court put it in rejecting virtually the same constitutional attacks just months ago, "because there is persuasive evidence that the entry suspension has a legitimate grounding in national security concerns, quite apart from any religious hostility, we must accept that independent justification." *Hawaii*, 138 S. Ct. at 2421. Simply put, the Plaintiffs' claims are foreclosed by *Hawaii* and *Mandel*, and no amount of facts or allegations will undermine how the Proclamation is facially legitimate and based upon a valid rational basis. The Court should therefore dismiss the Complaint with prejudice.

## STATEMENT OF THE CASE

### I.    Legal Background.

Since Defendants filed their Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 44), there have been significant developments. Specifically, Executive Order No. 13,780, 82 Fed. Reg. 13,209 (Mar. 9, 2017), which Plaintiffs

challenged in that complaint, was partially enjoined by two district courts, and the Fourth and Ninth Circuits upheld those injunctions in substantial part. *See Int'l Refugee Assist. Project ("IRAP") v. Trump*, 857 F.3d 554 (4th Cir. 2017) (en banc); *Hawaii v. Trump*, 859 F.3d 741 (9th Cir. 2017) (per curiam), respectively. The Supreme Court granted certiorari and stayed those injunctions pending review except for aliens with a "credible claim of a bona fide relationship with" a U.S. person or entity. *Trump v. IRAP*, 137 S. Ct. 2080, 2086, 2088–89 (2017) (per curiam). Before the Supreme Court completed its review, Executive Order No. 13,780 expired, and thus the Court vacated the lower courts' rulings as moot. *Trump v. IRAP*, 138 S. Ct. 353 (2017) (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)); *Trump v. Hawaii*, 138 S. Ct. 377 (2017) (same).

During that time, the Department of Homeland Security ("DHS"), in consultation with the State Department and the Office of the Director of National Intelligence, conducted the review that the President had directed. *See* Proclamation § 1(c). The agencies undertook "to identify whether, and if so what, additional information will be needed from each foreign country to adjudicate an application by a national of that country for a visa, admission, or other benefit under the [Immigration and Nationality Act ("INA")] … in order to determine that the individual is not a security or public-safety threat." *Id.* The review examined "[i]nformation-sharing and identity-management protocols and practices of foreign

4

governments." *Id.* § 1(b). After completing "this worldwide review, the President issued the Proclamation" on September 24, 2017 "to improve vetting procedures" regarding foreign nationals. *Hawaii*, 138 S. Ct. at 2404. "To further that purpose, the Proclamation placed entry restrictions on the nationals of eight foreign states whose systems for managing and sharing information about their nationals the President deemed inadequate." *Id.*

Among those eight countries, "[t]he Proclamation imposed a range of restrictions that vary based on the 'distinct circumstances' in each[.]" *Id.* (quoting Proclamation § 1(h)). Iran, North Korea, and Syria, for example, did not cooperate with the United States in identifying security risks and the Proclamation thus suspends entry of all those countries' nationals, except for Iranians seeking nonimmigrant student and exchange-visitor visas. *See* Proclamation §§ 2(b)(ii), (d)(ii), (e)(ii). For countries that have information-sharing deficiencies such as Chad,[2] Libya, and Yemen, the Proclamation restricts entry of their nationals seeking immigrant visas and nonimmigrant business or tourist visas. *Id.* §§ 2(a) (i), (c)(i), (g)(i). Although Somalia generally satisfied the baseline criteria, the President concluded that it presented other special risk factors. Therefore, the Proclamation suspends entry of Somali nationals seeking immigrant visas and requires additional

---

[2]   As previously noted, however, Chad was later removed from the list of affected countries via a subsequent Proclamation. *See supra* at p. 1–2.

scrutiny for those seeking nonimmigrant visas. *Id.* § 2(h)(ii). And with Venezuela, "the Proclamation limits entry only of certain government officials and their family members on nonimmigrant business or tourist visas." *Hawaii*, 138 S. Ct. at 2406 (citing Proclamation § 2(f) (ii)).

The Proclamation includes various exclusions and exceptions, Proclamation § 3(a)–(b), provides for case-by-case waivers for cases of undue hardship and where the alien's entry would be in the national interest, *id.* § 3(c)(i), (iv) (listing examples), and directs DHS to assess on a continuing basis whether entry restrictions should be modified or continued, and to report to the President every 180 days, *id.* § 4. After the first 180-day period, DHS determined that Chad had sufficiently improved its practices and the President "accordingly lifted restrictions on its nationals." *Hawaii*, 138 S. Ct. at 2406 (citing Presidential Proclamation No. 9723, 83 Fed. Reg. 15937 (2018)).

Shortly after its issuance, the Proclamation's entry restrictions were enjoined by the District Court for the District of Hawaii. *See, e.g.*, *Hawaii v. Trump*, 265 F. Supp. 3d 1140, 1155–59 (D. Haw. 2017). That same day, the District Court for the District of Maryland also entered a nationwide preliminary injunction against enforcement of Section 2(c) of the Order. *See IRAP v. Trump*, 265 F. Supp. 3d 570 (D. Md. 2017). The respective Courts of Appeals declined to stay the district courts' orders. The Supreme Court granted a stay of the injunctions "pending disposition of

the Government's appeal[s]." *Hawaii*, 138 S. Ct. at 2406. The Ninth and Fourth Circuits affirmed the district courts' injunctions, *Hawaii v. Trump*, 878 F.3d 662, 684, 688 (9th Cir. 2017), *IRAP v. Trump*, 883 F.3d 233 (4th Cir. 2018), the federal government appealed, and the Supreme Court granted the government's petition for a writ of certiorari, 138 S. Ct. 923 (2018). On June 26, 2018, the Supreme Court held that President Trump permissibly exercised his "broad discretion" under 8 U.S.C. § 1182(f) of the INA in issuing the Proclamation, *see Hawaii*, 138 S. Ct. at 2407–10, further held that the plaintiffs had not shown a likelihood of success on their claim that the Proclamation was unconstitutionally designed to discriminate against Muslims, *id*. at 2423. Following the Supreme Court's decision, a number of challenges to the Proclamation have been voluntarily dismissed by the plaintiffs. *See Hawaii v. Trump*, No. 17-cv-0050 (D. Haw. dismissed on Aug. 13, 2018); *Ali v. Trump*, No. 2:17cv135 (W.D. Wash. dismissed on Sept. 21, 2018); *Pars Equality Ctr. v. Trump*, No. 17-cv-255 (D.D.C. dismissed on Aug. 9, 2018).

## II.   Factual And Procedural Background Of The Instant Litigation.

Plaintiffs filed their initial complaint on January 31, 2017, with six individual plaintiffs. Over the course of litigation, several plaintiffs have been added and dismissed,[3] until only four individual plaintiffs remain to represent a purported class

---

[3]   The remaining plaintiffs were voluntarily dismissed at various stages. *See, e.g.*, ECF Nos. 42, 125.

of persons from the five countries they identify. *See* Compl. ¶ 386. The individual plaintiffs all reside in the United States and are petitioning for immediate relatives (spouses, parents, and minor children), who are citizens of either Yemen or Somalia, *see id.* ¶¶ 29–33, to apply for visas overseas.[4] There are also five organizational plaintiffs seeking to represent the interests of the individual plaintiffs or their own free speech interests in sponsoring nationals of the designated countries to the United States. *See id.* ¶¶ 23–27.

In the earlier round of litigation, Plaintiffs sought discovery, ECF No. 43, but this Court denied that motion and stayed discovery pending the Supreme Court's dispositions of the then-pending appeals, finding that the Government had "sufficiently demonstrated that the dispositive effect of the Supreme Court's review in [*IRAP v. Trump*] and judicial economy achieved by awaiting that review weigh in favor of granting a stay." ECF No. 114 at 4.

Less than three months following the Supreme Court's decision in *Trump v. Hawaii*, Plaintiffs filed their third amended complaint.

---

[4]   Defendants intend to oppose class certification when raised. In addition, as the two Alshawhish plaintiffs have no connection whatsoever to this judicial district, *see* Compl. ¶ 30 (noting how "the two reside in New York," which is not within the Eastern District of Michigan), they have failed to "independently establish venue" and their claims should be dismissed, *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1191 (N.D. Cal. 2017) ("[T]he rule in a proposed class action is that each named plaintiff must independently establish venue.").

## STANDARDS OF REVIEW

### I.   Federal Rule Of Civil Procedure 12(b)(1).

Federal courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute." *See Kokkenen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Plaintiffs bear the burden of establishing subject matter jurisdiction, *Cartwright v. Garner*, 751 F. 3d 752, 760 (6th Cir. 2014), and this issue must be addressed before all others, *see, e.g.*, *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990); *Gross v. Hougland*, 712 F.2d 1034 (6th Cir. 1983).

A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in two ways. Defendants may assert either a facial or a factual challenge to jurisdiction by filing a motion to dismiss under Rule 12(b)(1). *Garner*, 751 F. 3d at 759. In a facial attack, the court assumes that the allegations in the complaint are true and does not look beyond them to evaluate jurisdiction. *Id.* When a defendant launches a factual attack, the court may look beyond the allegations in the complaint and consider whether external facts call jurisdiction into question. *Id.* If a court lacks subject matter jurisdiction, it must dismiss the suit. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

### II.   Federal Rule Of Civil Procedure 12(b)(6).

A court must dismiss a pleading that fails to "state a claim upon which relief

9

can be granted." Fed. R. Civ. P. 12(b)(6). To succeed against a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). In assessing a pleading's sufficiency, a court must construe the complaint in the light most favorable to the plaintiff, and accept as true all genuine factual allegations, but ignore "legal conclusion[s] couched as" facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).

Generally, "at the motion-to-dismiss stage, a federal court may consider only the plaintiff's complaint. However, ... if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claims," the court "can then consider [those documents] in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) (internal citation omitted).

## **ARGUMENT**

### I.   *Hawaii* **Makes Plain That Plaintiffs' Facial Challenges Are Foreclosed.**

As the Supreme Court explained in *Hawaii*, when the Executive Branch exercises its delegated power in the INA to exclude foreign nationals on the basis of a "facially legitimate and bona fide reason," courts should not look behind the

exercise of that discretion nor test it by balancing its justification against the asserted constitutional interests of U.S. persons. *See* 138 S. Ct. at 2419 (citing *Kleindienst v. Mandel*, 408 U.S. 753 (1972)). "The [Court's] … opinions have reaffirmed and applied [*Mandel*]'s deferential standard of review across different contexts and constitutional claims." *Id.* Consequently, this Court's review is limited to whether the Proclamation provides a "facially legitimate and bona fide reason" for the challenged entry procedures. *Id.* at 2420. It does.

Under *Mandel*'s deferential standard of review, the Supreme Court has already upheld the very same Proclamation that Plaintiffs challenge here against constitutional claims that are either identical or very similar to those raised by Plaintiffs. *Id.* at 2423.

The Court in *Hawaii* rejected an Establishment Clause challenge to the Proclamation that is virtually identical to Plaintiff's cause of action. *See* 138 S. Ct. at 2420–23. Plaintiffs also raise equal protection and freedom of speech claims, but the limited *Mandel* standard governs those as well: the Court applied the *Mandel* standard in the context of an equal protection claim in *Fiallo v. Bell*, 430 U.S. 787 (1977); and *Mandel* itself was a free speech case, 408 U.S. at 769. The Supreme Court's conclusion that the Proclamation satisfies *Mandel*'s narrow standard of review should therefore be dispositive of each of Plaintiffs' claims.

In applying *Mandel*'s deferential standard of review, the Sixth Circuit has

explained that courts must "uphold[] immigration [laws] so long as they are conceivably related to the achievement of a federal interest." *Bangura v. Hansen*, 434 F.3d 487, 495 (6th Cir. 2006) (quotations omitted); *see also Hawaii*, 138 S. Ct. at 2420 (stating that, assuming the Court is permitted to look behind the face of the Proclamation, it would apply only rational basis review). This is especially relevant for Plaintiffs' facial challenges, where "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (quotations omitted); *accord United States v. Salerno,* 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). Regardless, the Proclamation easily satisfies rational-basis review given its national-security justifications; Plaintiffs simply have chosen to ignore how the Court so concluded in *Hawaii*, but their disagreement with the policy does not mean that the Proclamation fails to satisfy that lower standard. 138 S. Ct. at 2423.

### A. The Plaintiffs' Establishment Clause Claim.

*Hawaii* makes plain that "*Mandel*'s narrow standard of review" should be applied to Plaintiffs' Establishment Clause claim. *See Hawaii*, 138 S. Ct. at 2420. The Court's treatment and conclusion under that test was swift, decisive, and controls here: "A conventional application of *Mandel*, asking only whether the

policy is facially legitimate and bona fide, [sh]ould put an end to our review" of the Proclamation. *See id.* There is thus no role for this Court to consider Plaintiffs' argument that the Proclamation's justifications are a "pretext." Compl. ¶ 400. As the Court explained in both *Mandel* and *Hawaii*, determining whether the Executive Branch's decision rests on a "facially legitimate and bona fide reason" does *not* include "look[ing] behind" that reason. *Mandel*, 408 U.S. at 769–70; *Hawaii*, 138 S. Ct. at 2419.

Courts can ensure that the stated rationale is valid, but *Mandel* precludes searching for ulterior motives. *Id.* The *Hawaii* Court's treatment of the *exact same* Establishment Clause claim forecloses the theory that Plaintiffs are now pursuing in order to find the supposed "true" reason for a Proclamation that is on its face neutral with respect to religion. *See* 138 S. Ct. at 2421 ("The Proclamation is expressly premised on legitimate purposes: preventing entry of nationals who cannot be adequately vetted and inducing other nations to improve their practices."). Put another way, the Supreme Court has already held that the Proclamation is facially neutral and constitutionally justifiable in light of its national security and foreign affairs justifications. *See Hawaii*, 138 S. Ct. at 2421.

Even if the Court goes beyond *Mandel*'s standard, the *Hawaii* Court confirmed that the Proclamation survives rational-basis scrutiny against an identical Establishment Clause claim. Rational-basis review examines whether the

"classification at issue bears some fair relationship to a legitimate public purpose." *Plyler v. Doe*, 457 U.S. 202, 216 (1982). It is "not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Heller v. Doe by Doe*, 509 U.S. 312, 319–20 (1993) (quoting *FCC v. Beach Commcn's, Inc.*, 508 U.S. 307, 313 (1993)). Under rational basis review, a classification is permissible "if there is *any* reasonably conceivable state of facts that could provide a rational basis." *Id.*; *accord Almario v. Att'y Gen.*, 872 F.2d 147, 151 (6th Cir. 1989) ("The holdings of *Kleindienst* and *Fiallo* require that we exercise a very narrow standard of review assuming the classification at issue in this case is supported by a facially legitimate and *bona fide* reason.").

In this case, just as in *Hawaii*, the Plaintiffs alleged that the same Proclamation "discriminat[es] against Muslims, disfavoring and disadvantaging Islam as compared to other religions, establishing a preference for one religion over another." Compl. ¶ 396; *cf. Hawaii*, 138 S. Ct. at 2414 (describing the *Hawaii* plaintiffs' allegation that "the Proclamation was issued for the unconstitutional purpose of excluding Muslims"). The Plaintiffs likewise insist that the Proclamation must be viewed in conjunction with past Executive Orders, *see, e.g.*, Compl. ¶¶ 396–400 ("EO-3 and the Prior Orders"), "that the waiver process is a sham," *id.* at ¶ 401, and that it is based on animus instead of being "rationally related to legitimate national

security concerns," *id.* at ¶ 402; *cf. Hawaii*, 138 S. Ct. at 2420–23 & n.7 (discussing the same extrinsic evidence, "animus" argument, and waiver process.).

But despite these exact same arguments against the Proclamation, the Supreme Court ruled that there are "legitimate national-security interest[s]" and foreign-policy concerns to satisfy the rational-basis standard and upheld it against the same Establishment Clause challenge. *Id.* at 2422. Whatever one might think of the Proclamation as a matter of policy, it is justifiable given that its national security concerns were based on a multi-agency, country-by-country analysis of vetting procedures. "The Proclamation is expressly premised on legitimate purposes: preventing entry of nationals who cannot be adequately vetted and inducing other nations to improve their practices. The text says nothing about religion." *Id.* at 2421 (noting how the Proclamation "reflects the results of a worldwide review process undertaken by multiple Cabinet officials and their agencies" and concluding that "*in each case the determinations were justified by the distinct conditions in each country*" (emphasis added)). And if there are any legitimate national-security reasons to control the entry of nationals from each of the Proclamation's affected countries, that is enough to satisfy rational basis. *See Almario*, 872 F.2d at 151–52. That should be the end of the inquiry.

Plaintiffs may wish to test the wisdom of the President's judgments on these issues, but binding decisions have squarely held that, when "[t]he

Executive...deem[s] nationals of a particular country a special threat," "a court would be ill equipped to determine the[] authenticity and utterly unable to assess the[] adequacy" of that determination. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 491 (1999). This is precisely the same reasoning that the Court found controlling in *Hawaii*: "[Plaintiffs] suggest that the [Proclamation] is overbroad and does little to serve national security interests. But we cannot substitute our own assessment for the Executive's predictive judgments on such matters[.]" 138 S. Ct. at 2421. In short, there is no material difference between Plaintiffs' Establishment Clause claim and the claim that the Supreme Court rejected in *Hawaii* as unlikely to succeed. For that reason, Plaintiffs' claim must be dismissed.

### B. The Plaintiffs' Equal Protection Claim.

In an attempt to get around *Hawaii*'s Establishment Clause ruling, Plaintiffs also claim that the Proclamation violates the equal protection component of the Fifth Amendment's Due Process Clause by discriminating on the basis of religion (Count II). This is a transparent attempt to restate the exact same type of legal claim under the heading of a different constitutional provision. Regardless, the Supreme Court has held that, for Executive actions restricting which aliens are permitted to enter the United States, the deferential *Mandel* standards still governs regardless of how a claim is pleaded. *See Hawaii*, 138 S. Ct. at 2419 (noting that the Court's "opinions have reaffirmed and applied [*Mandel*'s] deferential standard of review across

16

different contexts and constitutional claims"); *see also Bangura*, 434 F.3d at 494–95 (same). For example, the Court applied the *Mandel* standard to equal protection claims in *Fiallo v. Bell*. *See* 430 U.S. at 795.

If the Court analyzes this case through the prism of *Mandel* and *Fiallo*, it is well-settled that where an equal protection claim is brought against an immigration regulation, only rational basis review applies. Plaintiffs' argue that strict scrutiny should be applied, *see* Compl. ¶ 406, but that position is inconsistent with *Hawaii* and has been repeatedly rejected in other cases, as well. *See, e.g.*, *Mathews v. Diaz*, 426 U.S. 67, 83 (1976) (considering whether a law that made distinctions based on alien status was "wholly irrational"); *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 432 (6th Cir. 2012) ("[D]eference to Congress with respect to immigration law has led this court to uphold statutory distinctions between classes of aliens if predicated on a rational basis." (internal quotation marks omitted)); *Roudnahal v. Ridge*, 310 F. Supp. 2d 884, 892 (N.D. Ohio 2003) (upholding a program requiring male nonimmigrant aliens from designated countries to be fingerprinted and registered because "the Executive is designed and entrusted to best shape our national security," the "current military operations in the Middle East," and "a heightened terrorist threat-environment at home and abroad").

The Proclamation easily satisfies the Sixth Circuit's rational-basis standard. Regarding Plaintiffs' allegation that the Proclamation stems from an animus toward

Muslims, *see, e.g.*, Compl. ¶ 407, there is *nothing* in the Proclamation discussing Islam or any other religion. Furthermore, the *Hawaii* Court specifically pointed to the "persuasive evidence that the entry suspension has a legitimate grounding in national security concerns, quite apart from any religious hostility," and determined that courts "must accept that independent justification." 138 S. Ct. at 2421. Ultimately, it is not for the courts to second-guess these national security decisions within the context of immigration where, as here, those decisions are supported by a "facially legitimate and bona fide reason." *Fiallo*, 430 U.S. at 794. Plaintiffs have not pleaded any allegations beyond those already brought to the Supreme Court in *Hawaii* that would allow this Court to conclude that, as a matter of law, the Proclamation lacks any rational basis.

### C. The Plaintiffs' Free Speech Claim.

Although the First Amendment protects the right to receive information and ideas, the outcome in *Mandel* should directly control here: In *Mandel*, the plaintiffs were American students and scholars who challenged the federal government's refusal to issue a waiver of a visa ineligibility ground to Professor Mandel, a Belgian journalist. 408 U.S. at 769–70. A consular officer determined that he was ineligible to receive a visa, and the Attorney General declined to exercise his discretion to waive this finding of ineligibility. *See id.* The Supreme Court upheld the Executive Branch's power to exclude the non-resident alien based on general concerns with

him and his past visa overstay.

Despite recognizing the free-speech interests of the plaintiffs who wished to hear Professor Mandel, the Supreme Court accepted the Attorney General's "facially legitimate and bona fide reason" for declining to grant Professor Mandel a waiver. *Id.* at 769. *Mandel* is on all fours with the present case: Plaintiffs seek to invite aliens abroad to the United States to hear what they have to say. *See, e.g.*, Compl. ¶¶ 306–12. But *Mandel*'s deferential standard of review controls that claim, meaning that the government need only provide a facially legitimate and bona fide reason for denying entry. And as explained above, the Supreme Court has already held that the Proclamation is facially legitimate and supported by a bona fide justification. As the Court said in *Hawaii*, "the upshot of [the Court's] cases in this context is clear: … [any] inquiry into matters of entry and national security is highly constrained. We need not define the precise contours of that inquiry in this case [because a] conventional application of *Mandel*[] ask[s] only whether the policy is facially legitimate and bona fide[.]" 138 S. Ct. at 2420; *see also Ben-Issa v. Reagan*, 645 F. Supp. 1556, 1562–64 (W.D. Mich. 1986).

## II.    The Organizational Plaintiffs Lack Standing To Bring An Establishment Clause Claim.

The organizational Plaintiffs, at least, lack standing to assert their Establishment Clause claim (Count I). Even though they have invoked the Establishment Clause and the "stigma" they or their members may be experiencing,

*see, e.g.*, Compl. ¶ 230, they assert no cognizable violation of their own rights under that Clause. Standing to make an Establishment Clause claim requires that Plaintiffs demonstrate a "concrete and particularized injury" caused by the Proclamation. But the organizational Plaintiffs here allege only a disagreement with the policy and what they suspect were its "real" motivations. This does not suffice to confer standing here. *See Valley Forge Christian Coll. v. Ams. Utd. for Separation of Church & State, Inc.*, 454 U.S. 464 (1982). In this case, the Proclamation does not regulate the organizational Plaintiffs at all—it applies only to aliens abroad. This creates a fatal mismatch for standing purposes because U.S. plaintiffs cannot assert a derivative Establishment Clause claim predicated on indirect effects of alleged discrimination against aliens who themselves have no such rights to assert.

The same holds true for Plaintiffs' purported "stigmatic and dignitary harms." Compl. ¶ 9. The Supreme Court has "ma[de] clear" that "the stigmatizing injury often caused by racial [or other invidious] discrimination … accords a basis for standing only to 'those persons who are personally denied equal treatment' by the challenged discriminatory conduct." *Allen v. Wright*, 468 U.S. 737, 755 (1984) (citation omitted). That principle controls here and dooms at least the organizational Plaintiffs' Establishment Clause standing: "the psychological consequence presumably produced by observation of conduct with which one disagrees" is not the type of "personal injury" that supports standing, "even though the disagreement

20

is phrased in [Establishment Clause] terms." *Valley Forge*, 454 U.S. at 485–86.

It is important to note that the Proclamation says nothing about religion and does not subject the Plaintiffs to any religious exercise. *Hawaii*, 138 S. Ct. at 2421. Their entire theory of the case is solely premised upon non-textual, extrinsic statements that are nowhere within the Proclamation's language or stated purposes. As then-Judge Kavanaugh explained in rejecting a similar challenge, allowing a putative Establishment Clause plaintiff to "re-characterize[]" an abstract injury flowing from "government action" directed against others as their own personal injury from "a governmental message [concerning] religion" would "eviscerate well-settled standing limitations." *In re Navy Chaplaincy*, 534 F.3d 756, 764 (D.C. Cir. 2008). Without direct harm to their own religious interests or practices, Plaintiffs' position would mean that the plaintiffs in *Valley Forge* would have had standing if they had simply alleged that the transfer of land without cost to a Christian college sent a pro-Christian or anti-atheist message. That cannot be correct and arguments to the contrary must fail where nothing in the Proclamation's text supports such a reading. *See, e.g.*, *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) ("If the statutory language is plain, we must enforce it according to its terms.").

## CONCLUSION

For the aforementioned reasons, this Court should dismiss Plaintiffs' Third Amended Complaint with prejudice.

Dated: October 15, 2018        Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

GISELA A. WESTWATER
Assistant Director

*/s/ Joshua S. Press*
JOSHUA S. PRESS
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-0106
e-Mail: joshua.press @usdoj.gov

*Attorneys for Defendants*

22

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served the foregoing document on all parties of record by

filing this document with the Clerk of the Court using the CM/ECF system, which

will provide notice and an electronic link to this document to all parties of record.

*/s/ Joshua S. Press*
U.S. Department of Justice