## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ARAB AMERICAN CIVIL RIGHTS LEAGUE**, et al.,

*Plaintiffs*,

*v.*

**DONALD TRUMP**, et al.,

*Defendants*.

Case No. 2:17-cv-10310-VAR-SDD

Hon. Victoria A. Roberts

Mag. J. Stephanie D. Davis

## <u>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

Plaintiffs, by and through their undersigned counsel, oppose Defendants' Motion to Dismiss for the reasons set forth in the attached supporting Memorandum.

Dated: November 19, 2018                               Respectfully submitted,

**Counsel for Arab American Civil Rights League**

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
Nabih H. Ayad (P59518)
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

/s/ Rula Aoun
Rula Aoun (P79119)
4917 Schaefer Rd.
Dearborn, MI 48126
(313) 633-0231
rula@acrlmich.org

HAMMOUD, DAKHLALLAH &
ASSOCIATES, PLLC
/s/ Kassem M. Dakhlallah
Kassem Dakhlallah (P70842)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com

VIDA LAW GROUP, PLLC
/s/ Mona Fadlallah
/s/ Natalie C. Qandah
Mona Fadlallah (P64197)
Natalie C. Qandah (P58434)
43050 Ford Road, Suite 160
Canton, MI 48187
Phone: (734) 456-9004
Facsimile: (734) 456-9003
Mona@vidalawpllc.com
Natalie@vidalawpllc.com

**Counsel for American Arab Chamber of Commerce**

FARHAT & ASSOCIATES, PLLC
/s/ Helal Farhat
Helal Farhat (P64872)
Counsel for the American Arab
Chamber of Commerce
6053 Chase Rd.
Dearborn, MI 48126
(313) 945-5100
hfarhat@saflegal.com

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
Nabih H. Ayad (P59518)
Attorney for Plaintiffs
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

**Counsel for Hend Alshawish, Salim Alshawish, and Fahmi Jahaf**

AYAD LAW, P.L.L.C.
/s/ Nabih H. Ayad
Nabih H. Ayad (P59518)
Attorney for Plaintiffs
645 Griswold St., Ste. 2202
Detroit, MI 48226
(313) 983-4600
nayad@ayadlaw.com

HAMMOUD, DAKHLALLAH &
ASSOCIATES, PLLC
/s/ Kassem M. Dakhlallah
Kassem Dakhlallah (P70842)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com

/s/ Ali K. Hammoud
Ali K. Hammoud (P73076)
6050 Greenfield Rd., Suite 201
Dearborn, MI 48126
(313) 551-3038
ah@hdalawgroup.com

/s/ Rula Aoun
Rula Aoun (P79119)
4917 Schaefer Rd.
Dearborn, MI 48126
(313) 633-0231
rula@acrlmich.org

VIDA LAW GROUP, PLLC
/s/ Mona Fadlallah
/s/ Natalie C. Qandah
Mona Fadlallah (P64197)
Natalie C. Qandah (P58434)
43050 Ford Road, Suite 160
Canton, MI 48187
Phone: (734) 456-9004
Facsimile: (734) 456-9003
Mona@vidalawpllc.com
Natalie@vidalawpllc.com

**Counsel for American Civil Liberties Union of Michigan, Arab American and Chaldean Council, Arab American Studies Association, and Kaltum Saleh**

/s/ Miriam Aukerman

Miriam Aukerman (P63165)
American Civil Liberties Union
Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

/s/ Margo Schlanger

Margo Schlanger (N.Y. Bar
#2704443 (3d Dept))
Cooperating Attorney,
American Civil Liberties Union
Fund of Michigan
625 South State Street
Ann Arbor, MI 48109
(734) 615-2618
margo.schlanger@gmail.com

/s/ Michael J. Steinberg

Michael J. Steinberg (P43085)
Daniel S. Korobkin (P72842)
American Civil Liberties Union
Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6814
msteinberg@aclumich.org

/s/ Samuel R. Bagenstos

Samuel R. Bagenstos (P73971)
Cooperating Attorney,
American Civil Liberties Union
Fund of Michigan
625 South State Street
Ann Arbor, MI 48109
(734) 647-7584
sbagen@gmail.com

/s/ Jason C. Raofield

Jason C. Raofield (D.C. Bar #463877)
Nishchay H. Maskay (D.C. Bar #998983)
Frederick C. Benson (D.C. Bar #1033399)
Benjamin L. Cavataro (D.C. Bar
#1034839) (application forthcoming)
Rachel L. Fried (D.C. Bar #1029538)
(application forthcoming)
Ingrid L. Price (D.C. Bar #1017436)
(application forthcoming)
Taylor M. Steffan (D.C. Bar #1045250)
(application forthcoming)
Covington & Burling LLP
850 10th Street, NW
Washington, D.C. 20001
(202) 662-5072
jraofield@cov.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ARAB AMERICAN CIVIL RIGHTS
LEAGUE**, et al.,

*Plaintiffs*,

*v.*

**DONALD TRUMP**, et al.,

*Defendants*.

Case No. 2:17-cv-10310-VAR-SDD

Hon. Victoria A. Roberts

Mag. J. Stephanie D. Davis

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................. 2

ARGUMENT .......................................................................................... 5

**I.    Plaintiffs Need Only Show That Their Allegations Are Plausible.** .......... 5

**II.   Plaintiffs Plausibly Allege a Violation of the Establishment Clause.**...................................................................................... 11

    A.    Under *Hawaii*, Courts Should Look to Extrinsic Evidence In Testing EO-3 for Animus and Pretext.................................. 11

    B.    Plaintiffs Plausibly Allege Animus and Pretext, as *Hawaii* Requires............................................................. 13

        1.    Plaintiffs Plausibly Allege that EO-3 Lacks a Rational Basis Because It Is Motivated by Animus Toward Muslims..................................................... 13

        2.    Plaintiffs Plausibly Allege that EO-3 Lacks a Rational Basis Because Its Stated National Security Objective Is Pretextual. .................................................. 15

**III.  Plaintiffs Plausibly Allege a Violation of the Equal Protection Clause.**............................................................................. 18

**IV.   Plaintiffs Plausibly Allege a Violation of Their First Amendment Rights to Freedom of Speech and Association.** ...................... 19

**V.    Defendants Do Not Challenge the Individual Plaintiffs' Standing on the Establishment Clause Claim, and, In Any Event, the Organizational Plaintiffs Have Standing.**.............................. 22

CONCLUSION ...................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Wright,*
468 U.S. 737 (1984)................................................................23

*Am. Acad. of Religion v. Napolitano,*
573 F.3d 115 (2d Cir. 2009) ....................................................22

*Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n,*
389 F.3d 536 (6th Cir. 2004) ...................................................23

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)..................................................................5

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)........................................................7, 8, 25

*Barry v. Lyon,*
834 F.3d 706 (6th Cir. 2016) ...................................................24

*Bassett v. Snyder,*
59 F. Supp. 3d 837 (E.D. Mich. 2014) .....................13, 14, 18

*Bd. of Educ. v. Pico,*
457 U.S. 853 (1982)................................................................19

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)........................................................6, 7, 25

*Bell v. Union Carbide Corp.,*
385 F.3d 713 (6th Cir. 2004) .....................................................5

*Berger v. City of Mayfield Heights,*
154 F.3d 621 (6th Cir. 1998) ...................................................17

*Bertrand v. Sava,*
684 F.2d 204 (2d Cir. 1982) ....................................................20

*Bustamante v. Mukasey*,
  531 F.3d 1059 (9th Cir. 2008) ...................................................22

*Cardenas v. United States*,
  826 F.3d 1164 (9th Cir. 2016) ...................................................20

*City of Lakewood v. Plain Dealer Publ'g Co.*,
  486 U.S. 750 (1988).................................................................20

*Craigmiles v. Giles*,
  312 F.3d 220 (6th Cir. 2002) .....................................................15

*Davis v. Prison Health Servs.*,
  679 F.3d 433 (6th Cir. 2012) .............................................12, 13

*Dep't of Agriculture v. Moreno*,
  413 U.S. 528 (1973).................................................................15

*Emami v. Nielsen*,
  No. 18-cv-1587 (N.D. Cal.) .........................................................8

*Fabian v. Fulmer Helmets, Inc.*,
  628 F.3d 278 (6th Cir. 2010) .......................................................5

*Forsyth Cnty. v. Nationalist Movement*,
  505 U.S. 123 (1992).................................................................19

*Frank v. Dana Corp.*,
  646 F.3d 954 (6th Cir. 2011) .......................................................6

*Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*,
  491 F.3d 320 (6th Cir. 2007) .......................................................6

*Hamama v. Adducci*,
  285 F. Supp. 3d 997 (E.D. Mich. 2018) ...............................8, 9, 16

*Hamdi v. Rumsfeld*,
  542 U.S. 507 (2004).................................................................11

*Handy-Clay v. City of Memphis*,
  695 F.3d 531 (6th Cir. 2012) .......................................................7

*Harbin-Bey v. Rutter*,
    420 F.3d 571 (6th Cir. 2005) ..............................................................................18

*Int'l Refugee Assistance Project v. Trump*,
    No. 17-cv-361 (D. Md.), ECF No. 262 ..............................................................8

*Jimenez v. Weinberger*,
    417 U.S. 628 (1974) ...........................................................................................18

*Kerry v. Din*,
    135 S. Ct. 2128 (2015) .......................................................................................20

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972) ...........................................................11, 18, 20, 21, 22

*Korematsu v. United States*,
    323 U.S. 214 (1944) .............................................................................................1

*Korematsu v. United States*,
    584 F. Supp. 1406 (N.D. Cal. 1984) .........................................................1, 2, 15

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) ...........................................................................................24

*Kuerbitz v. Meisner*,
    No. 16-12736, 2017 WL 769828 (E.D. Mich. Feb. 28, 2017) ...........................8

*McCreary Cnty. v. ACLU of Ky.*,
    545 U.S. 844 (2005) ...........................................................................................17

*New York v. U.S. Dep't of Commerce*,
    No. 18-cv-2921, 2018 WL 5791968 (S.D.N.Y. Nov. 5, 2018) ...............9, 10, 16

*Ocasio-Hernandez v. Fortuno-Burset*,
    640 F.3d 1 (1st Cir. 2011) ....................................................................................7

*Peoples Rights Org., Inc. v. City of Columbus*,
    152 F.3d 522 (6th Cir. 1998) .......................................................................12, 17

*Ramos v. Nielsen*,
    No. 18-cv-1554, 2018 WL 4778285 (N.D. Cal. Oct. 3, 2018) ....................10, 16

*Reed v. Town of Gilbert*,
    135 S. Ct. 2218 (2015)...................................................................19, 20

*Romer v. Evans*,
    517 U.S. 620 (1996).........................................................................15

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974)...........................................................................6

*Sidney Coal Co. v. Soc. Sec. Admin.*,
    427 F.3d 336 (6th Cir. 2005) ............................................................22

*Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*,
    615 F.3d 622 (6th Cir. 2010) ........................................................6, 7, 8

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018)..............................................................*passim*

*Zadvydas v. Davis*,
    533 U.S. 678 (2001).......................................................................9, 11

**Other Authorities**

U.S. Const. amend. I ...................................................................*passim*

U.S. Const. amend. V....................................................................18

28 U.S.C. § 1391 ..........................................................................22

Fed. R. Civ. P. 12(b)(1)..................................................................6

Fed. R. Civ. P. 12(b)(6)................................................................6, 8

Executive Order 13769, 82 Fed. Reg. 8,977......................................3, 16

Executive Order 13780, 82 Fed. Reg. 13,209.......................3, 15, 16, 17

Proclamation 9645, 82 Fed. Reg. 45,161.......................................*passim*

Black's Law Dictionary (10th ed. 2014) ...........................................20

## INTRODUCTION

In *Korematsu v. United States*, 584 F. Supp. 1406 (N.D. Cal. 1984), the district court vacated Fred Korematsu's conviction, which four decades earlier had led to the Supreme Court's decision upholding the internment of Japanese-Americans. *See Korematsu v. United States*, 323 U.S. 214 (1944). In vacating the conviction in 1984, the district court focused on the fact that the Supreme Court had been unaware of "critical contradictory evidence" when evaluating the government's national security arguments. *Korematsu*, 584 F. Supp. at 1417. Citing the report of a subsequent historical commission with access to the full record, the district court found the internment was not justified by military necessity; rather, the exclusion and detention of Japanese-Americans was caused by "race prejudice, war hysteria and a failure of political leadership." *Id.* at 1417.

In deciding Mr. Korematsu's 1984 petition, the district court attributed the Supreme Court's failure, forty years earlier, to recognize the true reasons for the Executive Order to the fact that "the court had before it a selective record":

> There is no question that the Executive and Congress were entitled to reasonably rely upon certain facts and to discount others. The question is not whether they were justified in relying upon some reports and not others, but whether the court had before it all the facts known by the government. Was the court misled by any omissions or distortions in concluding that the other branches' decisions had a reasonable basis in fact?

*Id*. at 1419. "[A]lthough it cannot now be said what result would have obtained had

the information been disclosed," the information that the Supreme Court lacked would have been "critical to the court's determination." *Id.* at 1420.

This Court should not repeat the mistake the Supreme Court made in *Korematsu. See Trump v. Hawaii*, 138 S. Ct. 2392, 2423 (2018) (overruling *Korematsu*). It should not decide the weighty matters before it without any record at all, other than what can be discerned from publicly available sources. On a motion to dismiss, the question is not whether Plaintiffs are likely to succeed, but whether they should have a chance to develop the evidence this Court needs to decide the merits. Because Plaintiffs have plausibly alleged violations of their constitutional rights, Defendants' motion to dismiss should be denied.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

President Trump has repeatedly spoken of his intent to exclude Muslims from entering the United States. *E.g.*, Third Amended Complaint (TAC) ¶¶ 51, 79. He has repeatedly called "for a total and complete shutdown of Muslims entering the United States," claimed that there is a "Muslim problem" in America, and said that his administration would be "looking at" a policy of "get[ting] rid of" Muslims. *Id.* ¶¶ 52-55, 57, 60, 62, 66, 74, 79, 89.

President Trump has also made clear that he would use "national security" justifications as a pretext to inflict such harms. He tasked former Mayor Rudolph Giuliani with forming a "commission" to impose a "Muslim ban" in the "right way

. . . legally." TAC ¶ 74. That commission repackaged the desired Muslim ban as a "targeted" ban based on "particular countries." *Id.* ¶¶ 76-77. Mr. Trump himself acknowledged that his proposed "Muslim ban" had simply "morphed into" restrictions on "certain areas of the world." *Id.* ¶¶ 78, 81.

President Trump realized his plans on January 20, 2017, shortly after his inauguration, by issuing Executive Order 13769, 82 Fed. Reg. 8,977 ("EO-1"), the first iteration of his Muslim ban. After reading aloud its formal title, he said, "We all know what that means." TAC ¶ 94. He conceded that EO-1 was designed to allow Christian refugees to enter the United States while barring Muslim refugees. *Id.* ¶¶ 104-06.

The first Muslim ban was rapidly challenged, including by the instant action, filed on January 31, 2017. ECF No. 1. On March 6, 2017, after this Court and others enjoined enforcement of EO-1, *see* ECF No. 8, the President replaced it with Executive Order 13780, 82 Fed. Reg. 13,209 ("EO-2"). TAC ¶ 159. President Trump said his second Muslim ban would "get just about everything" EO-1 aimed at and "more," TAC ¶¶ 145-47, and would "maintain the way that we did it the first time," *id.* ¶ 156. Replete with stereotypes about Muslims, *id.* ¶ 167, EO-2 contained many of the same provisions as EO-1 targeted at people from Muslim-majority nations, *id.* ¶¶ 165-89. Plaintiffs challenged EO-2 in their Second Amended Complaint, ECF No. 41, and Defendants moved to dismiss. ECF No. 76. EO-2 was quickly enjoined

by other courts. TAC ¶¶ 190-98. This Court stayed this litigation until the Supreme Court resolved those other challenges. ECF No. 114.

On September 24, 2017, the President tweaked his Muslim ban once more, issuing Proclamation 9645, 82 Fed. Reg. 45,161 ("EO-3"). Among other things, EO-3 indefinitely suspended immigration and entry by non-immigrants (such as students, tourists, and business travelers) from the predominantly Muslim countries of Iran, Libya, Somalia, Syria, Yemen, and Chad (subsequently dropped from the ban), along with North Korea (a country with barely any immigration to the United States) and a tiny group of Venezuelans. TAC ¶¶ 12, 227-28.

President Trump's statements following the issuance of EO-3 demonstrated that it was based on his continued animus toward Muslims. In November 2017, he stated that the country "need[s] the BAN!" and promoted videos supposedly portraying Muslims committing acts of violence, videos posted by a British extremist charged with "religious aggravated harassment." TAC ¶¶ 233-34. When asked the same month whether President Trump believed that "Muslims are a threat to the U.S.," the White House responded that "[t]he president has addressed these issues with the travel order that he issued earlier this year, and the companion proclamation." *Id.* ¶ 234.

On June 26, 2018, the Supreme Court reversed a Ninth Circuit ruling affirming a preliminary injunction against EO-3, and remanded the case for further

proceedings. *Trump v. Hawaii*, 138 S. Ct. 2392 (2018). On September 13, 2018, Plaintiffs in this case filed their Third Amended Complaint, challenging EO-3. TAC ¶ 21. On October 15, 2018, Defendants moved to dismiss. ECF No. 86.

## ARGUMENT

In seeking to dismiss this case without any opportunity for discovery, Defendants focus almost entirely on the Supreme Court's decision in *Trump v. Hawaii*, 138 S. Ct. 2392 (2018), ignoring that case's dispositively different procedural posture. There, the plaintiffs had sought a preliminary injunction and had to establish a likelihood of success on the merits. Here, by contrast, Plaintiffs need only plausibly allege violations of their constitutional rights. Plaintiffs' Third Amended Complaint more than meets the plausibility threshold.

## I.   Plaintiffs Need Only Show That Their Allegations Are Plausible.

The quantum of proof required for a plaintiff to proceed depends on the stage of the proceedings, with only minimal requirements at the outset of a case, increasing through summary judgment and trial. *See Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 281 (6th Cir. 2010). The minimal requirements at the motion-to-dismiss stage reflect the basic jurisprudential principle that discovery is critical to the truth-finding process, and that therefore plaintiffs—who have the burden of proving their claims—must have the "opportunity to discover information that is essential." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986); *see also Bell v. Union*

*Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (requiring "full opportunity to conduct discovery" (citation omitted)).

Accordingly, a motion to dismiss cannot be used to circumvent the fact-gathering necessary for proper adjudication of a plaintiff's claims; rather, motions to dismiss are a tool to weed out cases where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 558 (2007) (citing 5 Wright & Miller § 1216, at 233-34). As the Supreme Court has explained:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

To survive a motion to dismiss,[1] plaintiffs need only allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.,* 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Twombly,* 550 U.S. at 570). "All facts in the complaint must be accepted as true." *Frank v. Dana Corp.*, 646 F.3d 954, 958 (6th Cir. 2011). While "legal conclusions"

---

[1] Defendants seek dismissal under both Rule 12(b)(1) and 12(b)(6). Here, the inquiries under Rule 12(b)(1) and 12(b)(6) collapse. Defendants argue that certain Plaintiffs lack standing for one claim, depriving the Court of jurisdiction. *See* Br. Pg. ID 2616-18. In considering such a "facial attack on [] subject-matter jurisdiction," the Court must "take[] the allegations in the complaint as true," giving them the same deference they would be afforded under Rule 12(b)(6). *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

are "not entitled to the assumption of truth," facial plausibility is established where the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. All reasonable inferences must be drawn in the plaintiff's favor, *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012), and can arise from "the cumulative effect of the factual allegations." *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 14 (1st Cir. 2011).

"[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8 (quoting with approval *Leimer v. State Mut. Life Assurance Co. of Worcester, Mass.*, 108 F.2d 302, 305 (8th Cir. 1940) ("[I]f, in view of what is alleged, it can reasonably be conceived that the plaintiffs . . . could, upon a trial, establish a case which would entitle them to . . . relief, the motion to dismiss should not have been granted."); *Continental Collieries, Inc. v. Shober*, 130 F.2d 631, 635 (3d Cir. 1942) ("No matter how likely it may seem that the pleader will be unable to prove his case, he is entitled, upon averring a claim, to an opportunity to try to prove it.")). Thus, Defendants' motion to dismiss must be denied if Plaintiffs' "[f]actual allegations [are] enough to raise a right to relief above the speculative level," even

if the Court believes "recovery is very remote and unlikely" or "actual proof of those facts is improbable." *Twombly*, 550 U.S. at 545, 556 (citation omitted).

The Defendants, in attempting to portray *Hawaii* as dispositive, ignore the fact that here Plaintiffs need only demonstrate that each of their claims is "plausible on its face." *Iqbal*, 556 U.S. at 678-79 (citation omitted). "The plausibility standard is not akin to a 'probability requirement.'" *Id*. at 678. In *Hawaii*, by contrast, a probability of success was precisely what was required. The Supreme Court did not rule that EO-3 is constitutional, but "simply [held] that plaintiffs have not demonstrated a likelihood of success on the merits." *Hawaii*, 138 S. Ct. at 2423. The denial of a preliminary injunction has no bearing on whether a case should be dismissed under Rule 12(b)(6). *See, e.g.*, *Hamama v. Adducci*, 285 F. Supp. 3d 997, 1028 (E.D. Mich. 2018) (denying motion to dismiss while declining to grant preliminary injunction on one of petitioners' claims); *Kuerbitz v. Meisner*, No. 16-12736, 2017 WL 769828, at *1 (E.D. Mich. Feb. 28, 2017) (denying motion for preliminary injunction while refusing to dismiss plaintiff's claims).

None of the opinions in *Hawaii* suggested that dismissal would be proper. Rather, the Court, recognizing that it was considering a preliminary injunction issued based on a limited record created without discovery, "return[ed] [the case] to the

lower courts for such further proceedings as may be appropriate."[2] 138 S. Ct. at 2423. As Justice Kennedy noted in concurrence, both the majority and dissent agreed that EO-3 is "subject to judicial review to determine whether or not it is 'inexplicable by anything but animus.'" 138 S. Ct. at 2423 (Kennedy, J., concurring) (citing *Romer*, 517 U.S. at 632). Both Justices Kennedy and Breyer contemplated discovery. *Id.* at 2424; *id.* at 2429-33 (Breyer, J., dissenting) (discussing limitations of available information and questions answerable through discovery). While discovery will undoubtedly raise privilege questions, that is not a reason to dismiss the case; those questions can be decided in due course.

A pending case in this district—*Hamama v. Adducci*, 17-cv-11910—is a good example of the critical role discovery plays in probing the government's justifications for immigration-related decisions. There, a class of Iraqi nationals sought a preliminary injunction, alleging that their prolonged detention violates *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001). This Court, relying on governmental assertions that the United States has a repatriation agreement with Iraq, deferred ruling on the injunction pending discovery. *Hamama*, 285 F. Supp. 3d 997, 1011-13 (E.D. Mich. 2018). During discovery, the Court sustained some of the government's privilege claims and denied others. *See, e.g.* No. 17-cv-11910, ECF 295, 386, 462,

---

[2] The present case is not the only challenge to EO-3 proceeding in the wake of *Hawaii*. *See, e.g.*, *Int'l Refugee Assistance Project v. Trump*, No. 17-cv-361 (D. Md.), ECF No. 262 (setting forth briefing schedule); *Emami v. Nielsen*, No. 18-cv-1587 (N.D. Cal.), ECF No. 52 (same).

470. The *Hamama* petitioners now allege, based on the information obtained in discovery, that there is in fact *not* a repatriation agreement with Iraq, and have sought sanctions for the government's misrepresentations to the Court. *See id.*, ECF 459, 473. Indeed, all too often, previously unknown information that comes to light only due to judicial oversight undermines the government's asserted justifications for its policies. *See, e.g.*, *New York v. U.S. Dep't of Commerce*, No. 18-cv-2921, 2018 WL 5791968, at *6 (S.D.N.Y. Nov. 5, 2018) (documents revealed during litigation showed that Commerce Secretary had given "false" congressional testimony under oath about the justification for adding citizenship question to census, and warranted discovery to support claims of pretext); *Ramos v. Nielsen*, No. 18-cv-1554, 2018 WL 4778285, at *12, 16-20 (N.D. Cal. Oct. 3, 2018) (enjoining withdrawal of Temporary Protected Status based in part on evidence of animus from emails and declarations by government officials). Regardless of how courts decide these cases, discovery ensures that they are not making decisions on an entirely one-sided record.

In sum, whether the *Hawaii* plaintiffs established that they were likely to succeed is an entirely different question from whether the Plaintiffs have plausibly alleged facts here showing that they could succeed once they have the benefit of discovery. The Supreme Court in *Hawaii* held that the government has set forth a sufficient non-discriminatory justification for EO-3 to vacate the preliminary injunction, but that justification has yet to be tested through the litigation process.

10

## II.   Plaintiffs Plausibly Allege a Violation of the Establishment Clause.

### A.   Under *Hawaii*, Courts Should Look to Extrinsic Evidence In Testing EO-3 for Animus and Pretext.

*Hawaii*, of course, guides how lower courts should now evaluate the government's justification in that litigation process. Two points are critical.

First, *Hawaii* instructed that courts may "look behind the face of the Proclamation." 138 S. Ct. at 2420. The bare text of EO-3 and the justifications offered therein are not the end of the story. Rather, this Court should "consider plaintiffs' extrinsic evidence." *Id.* And that requires discovery.

Defendants blatantly misstate the *Hawaii* standard, ignoring not only this Court's ability to "look behind" EO-3, but even suggesting that this Court has "no role" in this dispute because the Supreme Court relied on a "conventional application of [*Kleindienst v.*] *Mandel*," 408 U.S. 753 (2012). Br. at PgID 2609-10. In fact, the Court made clear that it was *not* satisfied with a "conventional application of *Mandel*" (and, indeed, the Government conceded that such limited review would be inadequate). 138 S. Ct. at 2420. Rather, after noting that "the Executive's evaluation of the underlying facts is entitled to appropriate weight," the Court carefully reviewed whether the then-available facts "support[] the Government's claim of a legitimate national security interest." *Id.* at 2422. This is far from the prohibition of judicial review that Defendants seek by characterizing EO-3 as a "national security decision[]." Br. at PgID 2615. To the contrary—as the Supreme Court has reminded

11

the Executive Branch—courts retain an essential role in "safeguarding essential liberties that remain vibrant even in times of security concerns," *Hamdi v. Rumsfeld*, 542 U.S. 507, 539 (2004), and executive action on immigration remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695.

Second, *Hawaii* made clear that EO-3 fails if it cannot withstand "rational basis" review. 138 S. Ct. at 2420. Moreover, the Court reiterated that government action fails rational basis review if it is motivated by a "'bare . . . desire to harm a politically unpopular group'" or where "'its sheer breadth [is] so discontinuous with the reasons offered for it' that the initiative seem[s] 'inexplicable by anything but animus.'" 138 U.S. at 2420 (quoting *Dep't of Agriculture v. Moreno*, 413 U.S. 528, 534 (1973); *Romer v. Evans*, 517 U.S. 620, 632, 635 (1996)). The Court also held that EO-3 would fail if it could not "reasonably be understood to result from a justification independent of unconstitutional grounds." 138 S. Ct. at 2420.

*Hawaii* thus reaffirms that rational basis review does not grant the government a free pass to discriminate. "Rational basis review, while deferential, is not toothless." *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 532 (6th Cir. 1998) (quotation marks omitted). Where a "claim is governed by rational basis review," a plaintiff may prevail "either by negativing every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will." *Davis v. Prison Health*

*Servs.*, 679 F.3d 433, 438 (6th Cir. 2012) (internal quotation marks omitted). Thus Plaintiffs here must plausibly allege and ultimately prove either that (1) EO-3 was motivated by animus or (2) the national security justifications are pretext, thereby establishing that EO-3 cannot "reasonably be understood to result from a justification independent of unconstitutional grounds." *Hawaii*, 585 U.S. at 2420.

In *Hawaii*, the Court found, based on the preliminary evidence available, that the plaintiffs there were insufficiently likely to succeed in that task to justify a preliminary injunction. But at the motion-to-dismiss stage, if the plaintiff's "allegations, accepted as true, support an inference that the [defendants] purposefully engaged in discrimination" and the "complaint adequately states a claim for relief," then the plaintiff "deserves a shot at additional factual development, which is what discovery is designed to give." *Davis*, 679 F.3d at 439-40 (internal quotation marks omitted). To withstand the motion to dismiss, all Plaintiffs here need do is to plead—plausibly—that EO-3 was motivated by animus and that the national security justifications are pretext. That they have done.

B.   Plaintiffs Plausibly Allege Animus and Pretext, as *Hawaii* Requires.

1.   Plaintiffs Plausibly Allege that EO-3 Lacks a Rational Basis Because It Is Motivated by Animus Toward Muslims.

A law "motivated by animus or ill-will" fails even rational basis review. *Davis*, 679 F.3d at 438. A discriminatory purpose can be evidenced by "the impact of the official action" on those affected by it; its "historical background" and

"administrative history"; "departures from the government's normal procedural process"; and the imposition of "wide-ranging and novel deprivations upon the disfavored group." *Bassett v. Snyder*, 59 F. Supp. 3d 837, 847 (E.D. Mich. 2014) (internal quotation marks and citations omitted). "An impermissible motive" can include "a desire to harm a politically unpopular group," or "can . . . take the form of negative attitudes, fear, irrational prejudice, or some instinctive mechanism to guard against people who appear to be different in some respect from ourselves." *Id.* (internal quotation marks and citations omitted). But whether the discriminatory purpose was explicit or implicit, "once animus is detected, the inquiry is over: the law is unconstitutional." *Id.* at 855 (citation omitted).

Plaintiffs plausibly allege that EO-3 was issued because of prejudice against Muslims. Given the volume of anti-Muslim statements, only a few can be recounted here. But the history of EO-3 and the cumulative weight of those statements is important in demonstrating the plausibility of the allegations that EO-3 was motivated by animus. TAC ¶¶ 1-3, 14, 20, 51-276, 394-434.

Several examples give the flavor. Candidate Trump called for "a total and complete shutdown of Muslims entering the United States." TAC ¶ 52. He has said that his administration would be "looking at" a policy of "get[ting] rid of" Muslims, *id.* ¶ 62; said that "[it]'s very hard to define" the difference between Muslims and terrorists, *id.* ¶¶ 67; indicated that he would require Muslims to register with the

government and would shut down mosques, *id.* ¶¶ 60, 63; and promoted false anti-Muslim conspiracy theories, *see, e.g. id.* ¶ 72. In the wake of injunctions against EO-2, President Trump continued to express an intent to target Muslims, directly calling for "a TRAVEL BAN!" while sharing a fabricated tale about killing Muslim insurgents with bullets dipped in pigs' blood in order to prevent terrorism. *Id.* ¶¶ 199-200, 202, 204. In November 2017, Trump stated that the country "need[s] the BAN!" and promoted videos supposedly portraying Muslims committing acts of violence, videos originally posted by a British right-wing extremist charged with "religious aggravated harassment." *Id.* ¶¶ 233-34. When asked the same month whether the President believed that "Muslims are a threat to the U.S.," the White House responded that he had "addressed these issues" using EO-3. *Id.* ¶ 235.

      2.    **Plaintiffs Plausibly Allege that EO-3 Lacks a Rational Basis Because Its Stated National Security Objective Is Pretextual.**

When the government's "proffered explanations" for a law are "pretextual," the law fails. *Craigmiles v. Giles*, 312 F.3d 220, 229 (6th Cir. 2002). Plaintiffs' allegations, taken as true, show that the justifications for EO-3, like the justifications in *Cleburne*, *Romer*, and *Moreno*, are pretextual, and therefore EO-3 fails rational basis review. The Court should therefore allow the case to proceed to discovery so that the Plaintiffs can obtain any "critical contradictory evidence," *Korematsu*, 584 F. Supp. at 1417, that the Court can then weigh when evaluating whether the government's professed national security justifications are in fact pretextual.

15

While Defendants suggest that *Hawaii* forecloses a finding of pretext, Br. at PgID 2612, all the Supreme Court decided there was that the initial, publicly-available evidence pointed toward a legitimate national security purpose. 138 S. Ct. at 2423. The available evidence there was necessarily preliminary. For example, the Department of Justice—*after* the Court ruled in *Hawaii* based in part on the "weight" it gave to the "Executive's evaluation of the underlying facts" on national security, *id.* at 2422—was forced to concede that although President Trump claimed that EO-3 is justified by data showing that "the vast majority of individuals convicted of terrorism and terrorism-related offenses since 9/11 came here from outside of our country," no such data exists. TAC ¶ 157. Whether discovery here will—as in *Hamama*, *New York*, and *Ramos*—further undermine the government's proffered justifications remains to be seen. All that matters at the moment is whether the Plaintiffs have plausibly alleged pretext.

The Complaint amply alleges that the national security justification for EO-3 is a sham. Candidate Trump openly said he would "get past [the] establishment" to implement his Muslim ban, and tasked former Mayor Rudolph Giuliani with convening a commission to find a way to "do it legally." TAC ¶¶ 74-75. Candidate Trump also explained that his earlier idea had "morphed into" his travel ban in what he called an "expansion" of his long-sought religious-test proposal. *Id.* ¶¶ 78, 81. After EO-1 was enjoined, *id.* ¶¶ 135-44, President Trump issued EO-2, which

contained substantially similar provisions but an expanded discussion of the order's purpose. *Id.* ¶¶ 165-75. But courts saw past the transparent effort to disguise the Muslim ban, and enjoined EO-2. *Id.* ¶¶ 190-98. After the initial strategy of using country of origin as a placeholder for religion proved unsuccessful, *id.* ¶¶ 76-78, 81, 135-44, 190-98, the President and other architects of EO-3 realized they needed to do more to veil its true motive. The TAC alleges that in an effort to disguise EO-3 as a "religion-neutral" directive, the explicit Muslim stereotypes were deleted from EO-3, and red-herring restrictions on nationals from two non-Muslim majority countries were added.[3] *Id.* ¶ 227. Thus, the Complaint's allegations show that EO-3 is "predicated upon" previous versions of the Muslim Ban that the courts "previously invalidated." *Peoples Rights Org.*, 152 F.3d at 532.

The Complaint also alleges that EO-3 contradicts experts' and Defendants' own opinions that its drastic measures are not just ineffective, but dangerous. TAC ¶¶ 150-52, 225-26. Hundreds of national security experts and U.S. intelligence officials have stated that EO-3 and its predecessors undermine national security. *Id.* ¶¶ 264-74. Moreover, the government has not "detected any traveler linked to terrorism based on the additional procedures required by the EO." *Id.* ¶ 133.

---

[3] These additional restrictions, however, have no meaningful impact: they restrict only a handful of Venezuelan families, and virtually no North Koreans travel to the United States. *Id.* ¶¶ 228-29. The negligible impact underscores that they are merely a gambit to portray EO-3 as motivated by something other than anti-Muslim animus. *Id.*; *see McCreary Cnty. v. ACLU of Ky.*, 545 U.S. 844, 871-73 & n.22 (2005) (holding that post-litigation revisions to achieve facial neutrality did not diminish improper purpose).

The Complaint also alleges that already-existing laws achieve the same ends, since Congress has provided a comprehensive and proven vetting framework for entry of foreign nationals. TAC ¶¶ 255-60. *See Berger v. City of Mayfield Heights*, 154 F.3d 621, 624 (6th Cir. 1998) (government's stated objective was "particularly weak" where it was already achieved by an existing ordinance). Moreover, although EO-3 purportedly allows for waivers, the Complaint plausibly alleges that those waiver provisions are a sham. *Id.* ¶¶ 238-45. The vanishingly small number of waivers granted belies any intent to facilitate entry by individuals who pose no security threat, and means that EO-3 effectively functions irrationally as a blanket ban. *See Jimenez v. Weinberger*, 417 U.S. 628, 636 (1974) (blanket exclusion from Social Security benefits of illegitimate children was irrational). The hollow waiver provisions reinforce the plausibility of Plaintiffs' allegation that EO-3's true purpose is to restrict the entry of Muslims, not protect national security. Thus the Complaint's allegations, if accepted as true, establish that the government's "rationalization . . . is nothing more than a Potemkin Village; there is no substance backing up its reasoning." *Bassett*, 59 F. Supp. 3d at 852.

## III.   Plaintiffs Plausibly Allege a Violation of the Equal Protection Clause.

*Hawaii* was an Establishment Clause case. Here, beyond arguing that *Mandel* controls—which, as discussed above, misstates *Hawaii*—and citing various cases that did not address religious discrimination, see Br. PgID 2614, Defendants do not

18

seriously address Plaintiffs' equal protection claim. It is well established, however, that claims of religious discrimination are subject to heightened scrutiny, and nothing in *Hawaii* unsettles the longstanding framework for reviewing equal protection claims. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005) (holding that when a government action "invades a fundamental right, such as . . . religious freedom, the law will be sustained only if it is suitably tailored to serve a compelling state interest" (internal quotation marks omitted)). Because Plaintiffs' claims survive under the rational basis standard for the reasons discussed above, they, *a fortiori*, also survive review under heightened scrutiny.

## IV.   Plaintiffs Plausibly Allege a Violation of Their First Amendment Rights to Freedom of Speech and Association.

Plaintiffs allege that EO-3 denies entry into the United States to persons with whom they wish to speak, debate, or associate, or whose ideas they wish to hear, violating their constitutional "right to receive information and ideas." *Bd. of Educ. v. Pico*, 457 U.S. 853, 867 (1982) (citation omitted); *see, e.g.*, TAC ¶¶ 305-10, 336-41. Plaintiffs also allege that EO-3's waiver provisions operate as content- and viewpoint-based restrictions on speech, and as a licensing scheme that lacks narrow, objective, and definite criteria. TAC ¶¶ 238-44, 342-43, 429-32.

Content- and viewpoint-based restrictions on speech are presumptively unconstitutional, *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2231 (2015), as are licensing schemes without clear standards. *Forsyth Cnty. v. Nationalist Movement*,

505 U.S. 123, 131 (1992). With respect to the waiver provisions, Plaintiffs object not to the visa requirement (which can be understood as a form of license), but to the fact that government officials review the content of a person's speech when determining whether the speaker's admission would "be in the national interest" and whether denying entry would cause "undue hardship." EO-3 § 3(c)(i). Moreover, those standards—like the unconstitutional permitting scheme in *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988), which violated the First Amendment because it authorized denial based on the mayor's mere statement that the permit was "not in the public interest"—unlawfully give the government unbridled discretion.

Defendants argue that *Mandel*—which concerned Americans' rights to obtain a visa for a foreign speaker who had not complied with prior visa restrictions— forecloses Plaintiffs' free speech/association claims. For two reasons, it does not. First, *Mandel* required a "facially legitimate and bona fide reason" for denying a visa, 408 U.S. at 770. "Bona fide," of course, means "in good faith" or "without deceit or fraud." Black's Law Dictionary (10th ed. 2014). A justification is not "bona fide" under *Mandel* if there is evidence of bad faith. *See Cardenas v. United States*, 826 F.3d 1164, 1172 (9th Cir. 2016). As Justice Kennedy explained in *Kerry v. Din*, where a plaintiff makes an "affirmative showing of bad faith" that is "plausibly alleged with sufficient particularity," the court should examine "additional factual

20

details beyond" the proffered justification to test whether it is "bona fide." 135 S. Ct. 2128, 2141 (2015) (Kennedy, J., concurring). Moreover, when the government "discriminate[s] invidiously against a particular race or group," that "exercise of [government] power would not be 'legitimate and bona fide' within the meaning" of *Mandel. Bertrand v. Sava*, 684 F.2d 204, 212 (2d Cir. 1982).

Plaintiffs plausibly allege that the ostensibly neutral reasons for EO-3 were made in bad faith and as a pretext for denying Muslims entry into the United States. TAC ¶¶ 72-81, 145-58, 238-45, 255-76, 423, 433. In other words, those reasons are not "bona fide." Because plausibility is all that is required at this stage, the case should proceed to discovery so that the Court can evaluate, based on the record developed, whether the purported justifications for EO-3 are in fact "bona fide," or are instead a pretext for discrimination.

Second, *Mandel* specifically did *not* decide "[w]hat First Amendment or other grounds may be available for attacking exercise of discretion for which no justification whatsoever is advanced." 408 U.S. at 770. The Court refused to endorse the government's view that the Executive has "sole and unfettered discretion" to decide case-by-case waivers for "any reason or no reason." *Id.* at 769. The denial of Mr. Mandel's waiver was justified because he had abused previously-granted waivers, a reason the Court deemed legitimate and bona fide. *Id.* at 769-70. Here, Plaintiffs plausibly allege that EO-3's waiver provisions are a sham resulting in "a

de facto Muslim ban" and that their loved ones' waivers are not being processed. TAC ¶¶ 239, 362, 380, 383, 429. Under *Mandel* the Executive does *not* have "sole and unfettered discretion" to deny (or ignore) waiver requests, yet EO-3 unlawfully grants the Executive such unbridled discretion. Discovery will help reveal whether waiver denials—to the extent waivers are being processed at all—are in fact based on facially legitimate and bona fide reasons.[4]

## V. Defendants Do Not Challenge the Individual Plaintiffs' Standing on the Establishment Clause Claim, and, In Any Event, the Organizational Plaintiffs Have Standing.

Defendants argue that the organizational Plaintiffs lack standing to bring Establishment Clause claims, while not disputing the organizational Plaintiffs' standing for their other claims, or the individual Plaintiffs' standing.[5] But when there are multiple plaintiffs, only one needs standing for each claim. 138 S. Ct. at 2416. In *Hawaii*, the Court had jurisdiction because the individual plaintiffs had standing to bring an Establishment Clause claim. *Id.* ("A person's interest in being united with

---

[4] Defendants incorrectly suggest that the doctrine of consular nonreviewability bars challenges to the waiver process. Br. Pg. ID 2599 n.1. As is apparent from *Mandel* itself, where the Supreme Court reviewed the denial of a waiver, the doctrine does not apply where a "U.S. citizen's constitutional rights are alleged to have been violated by the denial of a visa to a foreigner." *Bustamante v. Mukasey*, 531 F.3d 1059, 1060 (9th Cir. 2008); *see also Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 125 (2d Cir. 2009) (judicial review proper where plaintiff asserts a First Amendment claim to have a visa applicant present views in this country).

[5] Defendants also argue that venue is improper as to Mr. and Mrs. Alshawish because they do not reside in this District. Br. at PgID 2605 n.4. Pursuant to 28 U.S.C. § 1391(e)(1)(C), venue is proper "in any judicial district in which . . . the plaintiff resides," and the Sixth Circuit has held that the phrase "the plaintiff" means "any plaintiff." *Sidney Coal Co. v. Soc. Sec. Admin.*, 427 F.3d 336, 345 (6th Cir. 2005). Because all of the Plaintiffs other than the Alshawishes are residents of this District, *see* TAC ¶¶ 23-27, 32-33, venue is proper as to all Plaintiffs.

his relatives is sufficiently concrete and particularized to form the basis of an Article III injury in fact."). Defendants concede that the individual plaintiffs here have standing, since they suffer the very same forced family separation as the *Hawaii* plaintiffs. *See* TAC ¶¶ 364, 372, 381. Thus the Court has jurisdiction over the Establishment Clause claim, and need not decide organizational standing.

In any event, the organizational Plaintiffs have standing under each of three lines of precedent to bring an Establishment Clause claim. First, an organization has "standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 544 (6th Cir. 2004) (citation omitted). EO-3 harms the organizations directly.[6] For instance, it has adversely affected the Chamber's export certification and legalization services, and the Chamber's mission of encouraging business relationships between the U.S. and Arab nations. TAC ¶¶ 317, 319. "[B]y restricting the flow of clients for ACC's

---

[6] Defendants mischaracterize the Complaint as "alleg[ing] only a disagreement with [EO-3]," ignore the extensive harms alleged by the organizational plaintiffs, and argue that "stigmatic and dignitary harms" are insufficient to confer standing. Br. PgID 2617. But even had the organizational Plaintiffs alleged only dignitary harms (which is not the case), they would have standing. Unlike in *Allen v. Wright*, 468 U.S. 737, 756 (1984), *abrogated by Lexmark Intern, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), where the plaintiffs had merely alleged an "abstract stigmatic injury" that would be equally applicable to "all members" of an entire racial group, the organizational Plaintiffs are not merely concerned members of the public or bystanders presenting a generalized grievance. Nor is the injury they allege some hypothetical discrimination they or their members might face; they allege concrete current harm that impairs their organizational functioning. TAC ¶¶ 291-348. And each of the Plaintiff organizations has members who have been condemned, stigmatized, and otherwise materially injured by EO-3. *Id.* ¶¶ 288-290, 297, 317-318, 323.

programs and affecting funding for these programs, [it] will have a significant financial impact on ACC." *Id.* ¶¶ 225-32. Plaintiffs ACRL, ACLU, and ACC have all had to devote time and resources to responding to the disruptions EO-3 has caused to their members, clients, and communities. *Id.* ¶¶ 295, 298, 301, 324, 327-28.

Second, a membership association has standing if its "members have standing; if the interests at stake are relevant to the organization's purpose; and if the claims and relief do not require the participation of individual members." *Barry v. Lyon*, 834 F.3d 706, 716 (6th Cir. 2016). EO-3 prevents members of the ACRL and ACLU—including Hend and Salim Alshawish, Fahmi Jahaf, and Kaltum Saleh— and members of AASA from reuniting with their family members. TAC ¶¶ 29-30, 32, 33, 293-96, 302-303, 347. EO-3 interferes with the ability of ACLU and AASA members to hear from and associate with individuals from countries subject to the Ban. *Id.* ¶¶ 304-12, 336-38. EO-3 has limited the ability of members of the ACRL and the Chamber to travel. *Id.* ¶¶ 295, 320. It has interfered with the ability of Chamber and AASA members to hire, contract, recruit, and conduct business. *Id.* ¶¶ 315-16, 320, 336-37, 339. These injuries are directly related to the missions of the Plaintiff organizations. And "because the declaratory and injunctive relief sought pertains to [EO-3] as a whole," the case "does not require the participation of individual members to resolve." *Barry*, 834 F.3d at 716.

Finally, an organization has standing to assert the rights of its clients where

the organization and the clients have a sufficiently close relationship, and the clients face a "hindrance" in protecting their own interests. *Kowalski v. Tesmer*, 543 U.S. 125, 130-34 (2004). Two of the organizational Plaintiffs, ACRL and ACC, have clients injured by EO-3. TAC ¶¶ 297, 322-28, 331. These clients "face numerous hurdles to bringing suit in their own name, including language and cultural barriers, lack of financial resources, rising Islamophobia which would subject them to intense scrutiny if they participate in litigation, and fear of retaliation by the Defendants." *Id.* ¶¶ 299, 332, 23, 26.

## CONCLUSION

This is a motion to dismiss; it is the Complaint, not the Government's pleadings, that must be taken as true. Plaintiffs plausibly allege that EO-3 violates the Establishment Clause under *Hawaii* because it was motivated by anti-Muslim animus and the purported national security justification is pretextual; and that it violates equal protection and the Plaintiffs' speech and associational rights. Whether Plaintiffs will ultimately prevail on a fully developed record is not the question today. Plaintiffs' extensive allegations are more than sufficient to satisfy their obligations under *Iqbal* and *Twombly*. The motion should be denied.

## CERTIFICATE OF SERVICE

This Memorandum was filed on November 19, 2018, via the Court's ECF system, which provides notice to all counsel of record.

/s/ Nishchay H. Maskay
Nishchay H. Maskay
(D.C. Bar #998983)