## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| ARAB AMERICAN CIVIL RIGHTS LEAGUE ("ACRL"), *et al.*, | Case No. 2:17-cv-10310 |
| Plaintiffs, | |
| v. | Hon. Victoria A. Roberts |
| | Mag. Judge Stephanie D. Davis |
| DONALD TRUMP, President of the United States of America, *et al.*, | |
| Defendants. | |

## DEFENDANTS' MOTION TO CERTIFY THIS
## COURT'S JULY 10, 2019 ORDER FOR INTERLOCUTORY
## APPEAL AND FOR A STAY OF DISCOVERY PENDING APPEAL

Pursuant to 28 U.S.C. § 1292(b) and Federal Rules of Appellate Procedure 5(a)(3) and 8(a)(1)(A), Defendants hereby move for an order certifying the Court's July 10, 2019 Order Denying Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint (ECF No. 138) ("Order") for an interlocutory appeal. Defendants also move for a stay of discovery pending that same appeal. The grounds for this motion are set forth more fully in the attached supporting memorandum.

Pursuant to Local Rule 7.1(a), Defendants' counsel telephonically consulted with Plaintiffs' counsel on July 17, 2019 regarding the substance of this Motion. Plaintiffs' counsel advised that they oppose the motion.

## ISSUES PRESENTED

1)      Whether the Court should certify its denial of Defendants' Motion to Dismiss for an interlocutory appeal when the case turns on controlling questions of law and there is substantial ground for a difference of opinion regarding those questions.

2)      If so, whether the Court should stay discovery during the pendency of that interlocutory appeal.

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

BACKGROUND .........................................................................................3

ARGUMENT ..............................................................................................5

I.    The Court Should Certify Its Order Denying the Motion to Dismiss for
      Interlocutory Appeal. ........................................................................5

      A.    This Court's Order Turns On Controlling Questions of Law...............7

      B.    There Is Substantial Ground for Difference of Opinion as to the
            Controlling Questions of Law Identified in This Motion. .................11

            1.    *Mandel* Is the Appropriate Standard, Not Rational Basis
                  Review ...................................................................13

            2.    The Supreme Court Has Conclusively Held that the
                  Proclamation Satisfies the Rational Basis Test.........................15

            3.    Plaintiffs' Complaints Do Not Plausibly Allege a Valid
                  Claim Against the Proclamation ...............................17

            4.    Plaintiffs Cannot State Due Process and Establishment
                  Clause Claims Based on the Denial of Entry to Others............20

II.   The Court Should Stay Discovery Pending Completion of All § 1292(b)
      Proceedings..................................................................21

III.  At the Very Least, There is No Basis for Denying Cerification if the
      Court Permits Plaintiffs to Begin Discovery .................................24

CONCLUSION .......................................................................25

# TABLE OF AUTHORITIES

## CASES

*Al Maqaleh v. Gates*,
   620 F. Supp. 2d 51 (D.D.C. 2009)..........................................................................5

*Alharbi v. Miller*,
   368 F. Supp. 3d 527 (E.D.N.Y. 2019)................................................11, 17, 18, 20

*Almario v. Att'y Gen.*,
   872 F.2d 147 (6th Cir. 1989)......................................................................... 10, 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................10

*Bangura v. Hansen*,
   434 F.3d 487 (6th Cir. 2006).......................................................................... 14, 20

*Cheney v. U.S. Dist. Ct.*,
   542 U.S. 367 (2004) ...........................................................................................23

*City of Dearborn v. Comcast of Mich. III, Inc.*, No. 08-10156,
   2008 WL 5084203 (E.D. Mich. Nov. 24, 2008) .................................................11

*Ctr. for Bio-Ethical Reform, Inc., v. Napolitano*,
   648 F.3d 365 (6th Cir. 2011)..................................................................................8

*Eberline v. Douglas J. Holdings, Inc.*, No. 14-cv-10887,
   2019 WL 989284 (E.D. Mich. Mar. 1, 2019)........................................................5

*Emami v. Nielsen*,
   365 F. Supp. 3d 1009 (N.D. Cal. 2019).........................................................11, 20

*FCC v. Beach Commc'ns, Inc.*,
   508 U.S. 307 (1993) ............................................................................................18

*Fiallo v. Bell*,
   430 U.S. 787 (1977) ..................................................................................... 12, 13, 20

*Guzman v. DHS*,
    679 F.3d 425 (6th Cir. 2012)..................................................................16

*Hawaii v. Trump*,
    859 F.3d 741 (9th Cir. 2017)....................................................................4

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) ..................................................................................12

*In re Baker & Getty Fin. Servs., Inc. v. Nat'l Union Fire Ins. Co.*,
    954 F.2d 1169 (6th Cir. 1992)..................................................................7

*In re City of Memphis*,
    293 F.3d 345 (6th Cir. 2002)...............................................................5, 7

*In re Donald J. Trump*, No. 19-5196,
    2019 WL 3285234 (D.C. Cir. July 19, 2019).........................................7

*In re Miedzianowski*,
    735 F.3d 383 (6th Cir. 2013)..................................................................11

*In re Trump*,
    874 F.3d 948 (6th Cir. 2017)..............................................................7, 11

*In re United States*,
    138 S. Ct. 443 (2017) ...............................................................................6

*Kerry v. Din*,
    135 S. Ct. 2128 (2015) ...................................................... 10, 14, 20

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972) ....................................................... 1, 13

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009) ...............................................................................5, 7

*Reese v. BP Expl. (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011).................................................................11

*Scarbrough v. Morgan Cty. Bd. of Educ.*,
   470 F.3d 250 (6th Cir. 2006)....................................................................18

*Trump v. Hawaii*,
   138 S. Ct. 2392 (2018) ................................................................. *passim*

*Wang v. General Motors, LLC*, No. 18-10347,
   2019 WL 1950185 (E.D. Mich. May 2, 2019)....................................8, 9

*Yafai v. Pompeo*,
   924 F.3d 969 (7th Cir. 2019)....................................................................14

*Yamaha Motor Corp. v. Calhoun*,
   516 U.S. 199 (1996) .................................................................................7

*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017) ...........................................................................12

## STATUTES

28 U.S.C. § 1292(b) ................................................................. i, 1, 2, 5, 24

## OTHER AUTHORITIES

82 Fed. Reg. 45 .........................................................................................1

83 Fed. Reg. 15 .......................................................................................19

*Federal Practice and Procedure* § 3930 (3d ed. 2008) ............................6

## INTRODUCTION

Defendants respectfully request that, pursuant to 28 U.S.C. § 1292(b), this Court certify for interlocutory appeal its memorandum opinion and order denying Defendants' motion to dismiss. *See* Memorandum Opinion and Order, ECF No. 138 (July 11, 2019) ("Mem. Op."). In *Trump v. Hawaii*, 138 S. Ct. 2392, 2421 (2018), the Supreme Court upheld the validity of Proclamation No. 9645, *Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public Safety Threats*, 82 Fed. Reg. 45,161 (Sept. 27, 2017) ("the Proclamation"). Specifically, the Court held that constitutional challenges to the "exclusion of aliens"—a "fundamental act of sovereignty"—are governed by the deferential standard of review set forth in *Kleindienst v. Mandel*, 408 U.S. 753 (1972), or at the very most, by rational basis review, *see Hawaii*, 138 S. Ct. at 2420.

Since its inception, *Mandel* only permits courts to engage in a "circumscribed judicial inquiry," limited to "whether the Executive gave a 'facially legitimate and bona fide' reason for its action." *Hawaii*, 138 S. Ct. 2419 (quoting *Mandel*, 408 U.S. at 770). Similarly, rational basis review involves a "highly constrained" inquiry that requires "uphold[ing] the policy so long as it can reasonably be understood to result from a justification independent of unconstitutional grounds." *Id.* at 2420. Applying those standards, the Supreme Court confirmed that the Proclamation must be upheld: "It cannot be said that it is impossible to discern a relationship to legitimate state

interests or that the policy is inexplicable by anything but animus.... [B]ecause there is persuasive evidence that the entry suspension has a legitimate grounding in national security concerns, quite apart from any religious hostility, we *must accept* that independent justification." *Id.* at 2420–21 (emphasis added, citation omitted).

In denying Defendants' motion to dismiss Plaintiffs' constitutional claims, this Court concluded that the Supreme Court's merits analysis of the Proclamation "does not mean that the complaint fails to state a plausible claim for relief." Mem. Op. at 18. Defendants respectfully submit that ruling cannot be reconciled with *Hawaii*, particularly its application of the *Mandel* and rational basis standards of review. But the Court need not agree with Defendants' view because, at the very least, the Court's identification and treatment of questions it believed were left open by the Supreme Court raises serious questions of law over which there is substantial ground for disagreement. Such questions are precisely those for which interlocutory certification pursuant to 28 U.S.C. § 1292(b) is intended.

Because the standard for certification is satisfied and an interlocutory appeal will materially advance the termination of this litigation, this Court should certify its opinion for interlocutory appeal pursuant to § 1292(b). In addition, Defendants respectfully request that the Court stay any discovery pending resolution of all proceedings related to that interlocutory appeal. This Court previously granted Defendants' motion to stay discovery pending the Supreme Court's decision in

*Hawaii*, and the same reasoning justifies a stay of discovery in the present posture. Allowing intrusive and burdensome discovery to proceed prior to resolution of interlocutory proceedings that may well end this litigation would threaten to waste both the parties' and this Court's resources. Accordingly, this Court should grant § 1292(b) certification for its Memorandum Opinion and stay any and all discovery proceedings pending completion of those § 1292(b) proceedings.

At the very least, if the Court denies Defendants' motion to stay discovery, Defendants respectfully submit that there is no plausible basis for denying § 1292(b) certification of the Court's July 10 Order. Plaintiffs would obviously not be prejudiced by any interlocutory appeal if they are allowed to conduct discovery (over Defendants' objection) while that appeal is ongoing. And although Defendants urge the Court to also stay discovery, granting certification now would at least allow Defendants to seek appellate consideration of the important and potentially dispositive legal issues addressed by this Court's opinion at the earliest stage.

Thus, the Court should certify its July 10 Order for interlocutory appeal and should also simultaneously stay discovery pending those appellate proceedings. To the extent the Court rejects Defendants' request for a stay of discovery, however, there is plainly no basis for denying § 1292(b) certification.

## BACKGROUND

After a district court in Hawaii entered, and the Ninth Circuit affirmed, a

worldwide injunction prohibiting enforcement of the Proclamation's entry suspensions except with regard to nationals of North Korea and Venezuela and aliens lacking a bona fide relationship with a person or entity in the United States, the Supreme Court granted review of the Ninth Circuit's decision. *See Hawaii*, 138 S. Ct. at 2404; *Hawaii v. Trump*, 859 F.3d 741 (9th Cir. 2017). Reversing that decision, the Supreme Court found numerous features of the Proclamation to be dispositive such that the Proclamation satisfied not only the deferential *Mandel* standard of review, but also rational basis review. *See Hawaii*, 138 S. Ct. at 2417–22.

On September 13, 2018, the Plaintiffs continued litigating their challenges to the Proclamation and filed their third amended complaint. (ECF No. 124). Defendants moved to dismiss in due course. (ECF No. 128.) Defendants' argued (among other things) that *Hawaii* is binding, and that Plaintiffs' constitutional claims are accordingly foreclosed. *See id.* at 10–19. On July 10, 2019, this Court denied Defendants' motion to dismiss. *See* Mem. Op. at 13–21.

In particular, this Court rejected Defendants' arguments that the Supreme Court had already determined that public pronouncements by the President did not support invalidating the Proclamation based on alleged religious animus. *Id.* at 15–16. Although the Supreme Court considered nearly all of the same facts asserted in the Plaintiffs' Third Amended Complaint, this Court denied the motion to dismiss because "[t]he scope of the Supreme Court's review of the Proclamation … was

materially different than this Court's review of Plaintiffs' claims at the motion to dismiss stage." *Id.* at 18. On July 17, 2019, Plaintiffs requested that the Court lift its vacatur of the briefing regarding the Plaintiffs' past motion to compel, as well as enter an expedited discovery schedule. *See* ECF No. 139.

## ARGUMENT

## I. THE COURT SHOULD CERTIFY ITS ORDER DENYING THE MOTION TO DISMISS FOR INTERLOCUTORY APPEAL.

The Court should certify its Memorandum Opinion & Order for interlocutory appeal because: (1) it involves "controlling question[s] of law"; (2) there is a "substantial ground for difference of opinion" on those questions; and (3) an immediate appeal will "materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b). While the Sixth Circuit has cautioned that § 1292(b) should be sparingly used, *see In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002), "district courts should not hesitate to certify an interlocutory appeal" when a decision "involves a new legal question or is of special consequence," *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–11 (2009). Thus, courts agree that interlocutory appeal is appropriate for cases presenting exceptional or novel issues. *See Eberline v. Douglas J. Holdings, Inc.*, No. 14-cv-10887, 2019 WL 989284, at *2 (E.D. Mich. Mar. 1, 2019) (a "controlling legal issue … is novel [when] its resolution is not substantially guided by previous decisions…. [And] the Sixth Circuit has not yet had an occasion to consider" it); *Al Maqaleh v. Gates*, 620

F. Supp. 2d 51, 55 (D.D.C. 2009) (application of recent Supreme Court opinion to established "novelty" and "extraordinary circumstances" for 1292(b) certification).

Furthermore, in determining whether to grant §1292(b) certification, courts should weigh "[t]he difficulty and general importance of the question presented" and "the significance of the gains from reversal," both of which weigh heavily in favor of granting certification here. 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3930 (3d ed. 2008). The Supreme Court's decision in *In re United States*, 138 S. Ct. 443 (2017) demonstrates the propriety of interlocutory certification of these types of questions. There, in another case concerning Executive Branch actions in the area of immigration policy, the specific district court order at issue required production of an expansively construed "administrative record" that would have included sensitive Executive Branch materials. The Supreme Court vacated the Ninth Circuit's denial of the Government's request for mandamus, holding that the district court should have first resolved whether to dismiss Plaintiffs' claims because those arguments, if accepted, likely would eliminate the need for litigation over discovery and the scope of the administrative record. *Id*. at 445. And the Supreme Court urged the district court to consider whether, once entered, its ruling on these dispositive issues should be certified for interlocutory appeal under § 1292(b). *Id*.

*In re United States* is unambiguous: in cases of significant constitutional import or extraordinary national significance, a district court should utilize the

§ 1292(b) mechanism, if appropriate, to avoid significant litigation burdens on litigants. *Accord In re Donald J. Trump*, No. 19-5196, 2019 WL 3285234, at *1 (D.C. Cir. July 19, 2019) (per curiam) ("important and open threshold questions of pure law are best resolved conclusively through an expedited interlocutory appeal"). Sixth Circuit case law is no different. *See In re Trump*, 874 F.3d 948, 952 (6th Cir. 2017) (granting permission for interlocutory appeal where the President was sued in his personal capacity on a state law claim and had been served with discovery, as "[t]he practical and political consequences of such a case are readily apparent").

The Court's July 10, 2019 Order meets both the explicit standards for certification under § 1292(b) and the rule that certification should focus on decisions of "new legal question[s]" or matters of "special consequence." *Mohawk*, 558 U.S. at 111. This Court issued an Order involving the direct application of new, on-point Supreme Court authority to a "fundamental act of sovereignty" carried out by the President himself. Interlocutory review is appropriate and undeniably warranted.[1]

### A.   *This Court's Order Turns On Controlling Questions of Law.*

A question of law "is controlling if it could materially affect the outcome of the case." *Memphis*, 874 F.3d at 351 (citing *In re Baker & Getty Fin. Servs., Inc. v.*

---

[1]   Although § 1292(b)'s requirements for certification have been met for *all* the legal issues herein, as long as the Court identifies *any* issue that satisfies § 1292(b) elements, "the appellate court may address any issue fairly included within the certified order." *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996). "[I]t is the *order* that is appealable, and not the controlling question identified by the district court." *Id.* (quoting 9 J. Moore & B. Ward, *Moore's Federal Practice* ¶ 110.25[1], p. 300 (2d ed.1995)); *see also Trump*, 874 F. 3d at 951 & n.3 (citing *Calhoun*).

*Nat'l Union Fire Ins. Co.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992)). "The sufficiency of a complaint is a question of law." *Ctr. for Bio-Ethical Reform, Inc., v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011). The Court's July 10, 2019 Order fits this bill involves numerous controlling issues of law, each of which would materially affect the outcome of the litigation and, indeed, virtually all of which would end this litigation if decided in Defendants' favor. *See Wang v. General Motors, LLC*, No. 18-10347, 2019 WL 1950185, at *2 (E.D. Mich. May 2, 2019) (if "a ruling would significantly narrow the scope of [a] litigation," then "the first factor [is] met").

1.     First, it is a pure question of law whether the Proclamation should be evaluated solely under the highly deferential *Mandel* standard of review—under which all of the parties and the Court appear to accept that *Hawaii* is controlling and would require dismissal of this lawsuit—or whether rational basis review is appropriate. *Compare* Mem. Op. at 15–16 (stating "the *Mandel* standard and rational basis review" applies to each of Plaintiffs' claims against the Proclamation), *with Hawaii*, 138 S. Ct. at 2420 (noting that "[a] conventional application of *Mandel*, asking only whether the policy is facially legitimate and bona fide, would put an end to our review," but, in light of the Government invitation, "[f]or our purposes today, we *assume* that we may … apply[] rational basis review" (emphasis added)). Resolving this question in Defendants' favor through a pure application of *Mandel* would thus materially affect the litigation by ending it.

2.     Second, there is also the controlling question of whether, by determining that the Proclamation satisfies rational basis review, the Supreme Court has conclusively held that Plaintiffs' claims fail as a matter of law. *See Hawaii*, 138 S. Ct. at 2420–21 (concluding that "[i]t cannot be said that it is impossible to 'discern a relationship to legitimate state interests' or that the policy is 'inexplicable by anything but animus'"). Although Plaintiffs raise a variety of constitutional challenges to the Proclamation, this Court's opinion acknowledges that the same standard applies to *all* of Plaintiffs' constitutional claims. *See* Mem. Op. at 16. Thus, resolving whether *Hawaii* already determined that the Proclamation adequately satisfies both *Mandel* and rational basis review would not just "significantly narrow the scope of this litigation" but would end the case. *Wang*, 2019 WL 1950185, at *2.

3.     Similarly, even if rational basis review is permitted, and even if it were theoretically possible for a *hypothetical complaint* to adequately plead a claim against the Proclamation notwithstanding the Supreme Court's decision, there is still the question whether *these Plaintiffs' complaint* adequately pleads that the Proclamation fails the rational basis test. In *Hawaii*, the Supreme Court examined virtually all of the same allegations that continue to be raised by Plaintiffs here. For example, the Supreme Court considered the President's past statements, *see* 138 S. Ct. at 2417–18; the application of the baseline criteria for selecting nations on which to impose entry restrictions and the two deviations from the results of the baseline,

*see id.* at 2421; and allegations that the waiver process set forth in the Proclamation is not functioning properly, *see id.* at 2422–23 & n.7. Notwithstanding the Supreme Court's consideration of those same allegations, the Court nonetheless concluded that "[t]he Proclamation does not fit [the] pattern" of past Government actions found to be "inexplicable by anything but animus." *Id.* at 2417–18, 2420 (citation omitted). Plaintiffs' Third Amended Complaint does not present anything meaningfully different from what the Supreme Court already considered. In this context, the question whether Plaintiffs' Complaint adequately pleads a claim in light of the Supreme Court decision presents a controlling question that is appropriate for interlocutory review. As the Supreme Court has explained in another context, "[e]valuating the sufficiency of a complaint is not a '[f]act-based' question of law" but an "'abstract' *legal question*[.]" *Ashcroft v. Iqbal,* 556 U.S. 662, 674–75 (2009).

4.    Finally, the Court's rejection of Defendants' other ground for dismissal also present "completely dispositive" questions of law that warrant interlocutory review. The existence of a cognizable liberty or property interest for Plaintiffs in the issuance of a visa to foreign-national family members does not turn on any factual question, but rather on a question of law that was rejected by the plurality opinion in *Kerry v. Din*, 135 S. Ct. 2128, 2138 (2015) and has been rejected by the Sixth Circuit, *see Almario v. Att'y Gen.*, 872 F.2d 147, 151 (6th Cir. 1989) (no constitutional "right of a citizen spouse to have his or her alien spouse … in this country").

### B. There Is Substantial Ground for Difference of Opinion as to the Controlling Questions of Law Identified in This Motion.

Also satisfied is § 1292(b)'s requirement that a substantial ground for difference of opinion exists as to each of the controlling legal questions identified here. The Court's opinion presents a novel application of the Supreme Court's opinion in *Hawaii*, and courts have repeatedly recognized that such "novel legal issues" "on which fair-minded jurists might reach contradictory conclusions" "may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *see also In re Trump*, 874 F.3d at 952 (same); *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013) (substantial grounds for difference of opinion exist "when 'the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions'" (quoting *City of Dearborn v. Comcast of Mich. III, Inc.*, No. 08-10156, 2008 WL 5084203, at *7 (E.D. Mich. Nov. 24, 2008)). Here, at least one district court has previously reached the opposite conclusion as this Court's opinion, finding that constitutional claims seeking to challenge the Proclamation are foreclosed by the Supreme Court's decision in *Hawaii*. *See Alharbi v. Miller*, 368 F. Supp. 3d 527, 565 (E.D.N.Y. 2019) (dismissing an Establishment claim against the Proclamation because it "[wa]s foreclosed by the Supreme Court's decision in *Trump v. Hawaii*"), *appeal filed*, No. 19-1570 (2d Cir. May 28, 2019); *see also Emami v. Nielsen*, 365 F.

Supp. 3d 1009, 1022–23 (N.D. Cal. 2019) (discussing the "sizeable roadblock" to an equal protection claim against the Proclamation, namely that "[t]he Supreme Court has already concluded in reviewing the Proclamation that 'the Government has set forth a sufficient national security justification to survive rational basis review'" (quoting *Hawaii*, 138 S. Ct. at 2423)). These decisions confirm that fair-minded jurists might reach contradictory conclusions on these issues.

Moreover, the importance and novelty of the issues cannot be seriously questioned. This is a challenge to a Presidential Proclamation regarding "the admission and exclusion of foreign nationals[:] a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Hawaii*, 138 S. Ct. at 2418 (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)). Its resolution would involve a "[j]udicial inquiry into the national-security realm rais[ing] concerns for the separation of powers," and in which "the lack of competence on the part of the courts is marked." *Id.* at 2419 (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1861 (2017) and *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34 (2010)). And the challenge further involves the unusual circumstance of the Supreme Court having already determined that the same Presidential action "is expressly premised on legitimate purposes," "is well within executive authority and could have been taken by any other President," and "has set forth a sufficient national security justification to survive rational basis review." *Hawaii*, 138 S. Ct. at 2421–

23. These striking facts underscore the need for § 1292(b) certification. Indeed, certification is even more warranted to avoid the contentious, burdensome, and intrusive discovery process that Plaintiffs' past motions have indicated will certainly follow if § 1292(b) certification is denied. *See* Part II, *infra*. Thus, on each of the controlling questions identified above, there is substantial ground for disagreement, especially once the importance of this case and its procedural posture are considered.

1. ***Mandel* Is the Appropriate Standard, Not Rational Basis Review**

In *Hawaii*, the Supreme Court reiterated that the Judicial Branch only "engage[s] in a circumscribed judicial inquiry when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen" and that this review is "limited ... to whether the Executive gave a 'facially legitimate and bona fide' reason for its action." *Hawaii*, 138 S. Ct. at 2419 (quoting *Mandel*, 408 U.S. at 769). *Hawaii*'s discussion of the *Mandel* standard paid special care to the context in which *Mandel* arose and has been applied. *See id. Mandel* was also applied in *Fiallo v. Bell*, 430 U.S. 787 (1977) with "a 'categorical' entry classifications that discriminated on the basis of sex and legitimacy" *explicitly*; yet *Hawaii* still emphasized that in such cases "'it is not the judicial role ... to probe and test the justifications' of immigration policies." *Hawaii*, 138 S. Ct. at 2419 (quoting *Mandel*, 430 U.S. at 799).

The Supreme Court thus made clear that this standard of review governs "any constitutional claim concerning the entry of foreign nationals," *id.* at 2420 n.5,

because "*Mandel*'s narrow standard of review 'has particular force' in admission and immigration cases that overlap with 'the area of national security.'" *Id.* at 2419 (quoting *Din*, 135 S. Ct. at 2140 (Kennedy, J., concurring in judgment)). The Sixth Circuit has also stated that *Mandel*'s "standard may be even lower than rational basis review." *See Bangura v. Hansen*, 434 F.3d 487, 495 (6th Cir. 2006). It is everyone's interest for Sixth Circuit guidance on what "lower than rational basis review" would mean. *Cf. Yafai v. Pompeo*, 924 F.3d 969, 973 (7th Cir. 2019) (Barrett, J., respecting the denial of rehearing en banc) ("[C]ontrary to the dissent's suggestion, *Trump v. Hawaii* does not endorse a court's ability 'to look behind the surface of the executive action[.]'" (quoting Wood, C.J., dissenting from denial of rehearing en banc)).

To be sure, in *Hawaii* and in this case, Defendants argued in the alternative that the Proclamation satisfies not only the "conventional application of *Mandel*," but also rational basis review even if the Supreme Court had held that *Mandel* did not apply. 138 S. Ct. at 2420. But the Court explicitly declined to hold that rational basis review was the appropriate standard and merely assumed as much: "We need not define the precise contours of that inquiry in this case.... For our purposes today, we *assume* that we may look behind the face of the Proclamation to the extent of applying rational basis review." *Hawaii*, 138 S. Ct. at 2420 (emphasis added). This Court's opinion, however, treats *Hawaii* as requiring district courts to undertake the "rational basis" inquiry rather than the *Mandel* inquiry alone. Mem. Op. at 15.

Fair-minded jurists could disagree with this interpretation of *Hawaii*. The Supreme Court expressly stated that *Mandel* provides the appropriate standard for "any constitutional claim concerning the entry of foreign nationals," *Hawaii*, 138 S. Ct. at 2420 n.5, and did not distinguish the "facially legitimate" and "bona fide" prongs. Instead, the Court's analysis clarified that, under *Mandel*, the Proclamation satisfied *both* prongs: "A conventional application of *Mandel*, asking only whether the policy is facially legitimate *and bona fide*, would put an end to our review." *Hawaii*, 138 S. Ct. at 2420 (emphasis added). Accordingly, a fair-minded jurist could conclude that *Mandel* is the applicable standard of review, and that the Supreme Court previously concluded that the Proclamation satisfies *Mandel*.

### 2. The Supreme Court Has Conclusively Held that the Proclamation Satisfies the Rational Basis Test

Even if rational basis review applied, *Hawaii* controls the outcome and there are substantial grounds for disagreeing with this Court's contrary conclusion. In *Hawaii*, the Supreme Court described the question as whether the policy "can reasonably be understood to result from a justification independent of unconstitutional grounds," and then concluded that "[t]he Proclamation does not fit th[e] pattern" of policies where it "is impossible to discern a relationship to legitimate state interests or ... is inexplicable by anything but animus." 138 S. Ct. at 2420–21. In reaching that conclusion, the Supreme Court specifically distinguished the Proclamation from the three cases that this Court relied on in its

-15-

opinion for explaining the scope of rational basis review. *Compare* Mem. Op. at 16–21 (discussing the circumstances under which "the Proclamation would fail rational basis review" based on *Cleburne*, *Moreno*, and *Romer*), *with Hawaii*, 138 S. Ct. at 2420 (distinguishing the Proclamation from *Cleburne*, *Moreno*, and *Romer*).

True, the Supreme Court's decision formally addressed only the preliminary-injunction standard because that was the judgment before the Court at that time. *See Hawaii*, 138 S. Ct. at 2406–07. But fair-minded jurists could conclude that the reasoning of the decision in *Hawaii* equally forecloses Plaintiffs' claims in this context. Nothing about *Hawaii*'s reasoning was tentative; the Court ruled that the Government "ha[d] set forth a sufficient national security justification to survive rational basis review." 38 S. Ct. at 2423. And even in the Rule 12(b)(6) context, the Sixth Circuit has emphasized how rational basis review, "'is limited to determining" whether the challenged law "is conceivably related to the achievement of the federal interest.'" *Guzman v. DHS*, 679 F.3d 425, 432 (6th Cir. 2012) (quoting *Almario*, 439 F. 2d at 152). Here, a rational basis for the Proclamation has already been located by the Supreme Court, which identified "persuasive evidence that the entry suspension has a legitimate grounding in national security concerns." *Hawaii*, 138 S. Ct. at 2421.

Moreover, the type of inquiry envisioned by this Court's opinion—in which Plaintiffs are entitled to build a record and try to "provide evidence to refute the assertion that the Proclamation is rationally related to the national security goals of

preventing entry of inadequately vetted individuals and inducing other nations to improve information sharing," Mem. Op. at 17—is exactly the type of inquiry that the Supreme Court held to be foreclosed in *Hawaii*, *see* 138 S. Ct. at 2421 (the Judicial Branch "cannot substitute [its] own assessment for the Executive's predictive judgments" regarding national security interests). Indeed, this Court's opinion appears to contemplate an inquiry at least as extensive as what the *Hawaii* dissenters undertook. *See id.* at 2441–45 (Sotomayor, J., dissenting). But *Hawaii* clarified how such an inquiry was inappropriate as a matter of law: "It cannot be said that it is impossible to discern a relationship to legitimate state interests or that the policy is inexplicable by anything but animus. Indeed, the dissent can only attempt to argue otherwise by refusing to apply anything resembling rational basis review." *Id.* at 2420–21. There is thus ample room to disagree with this Court's ruling that Plaintiffs may discover evidence to show the Proclamation fails rational basis review. *See also Alharbi*, 368 F. Supp. 3d at 565 (dismissing Establishment claim "foreclosed by the Supreme Court's decision in *Trump v. Hawaii*").

### 3. Plaintiffs' Allegations Do Not Plausibly Allege a Valid Claim Against the Proclamation

Even if it were theoretically possible for a plaintiff to allege a valid claim against the Proclamation sufficient to survive a Rule 12(b)(6) motion to dismiss, a fair-minded jurist could reasonably conclude that these Plaintiffs' Third Amended Complaint fails to allege such a claim. The facts recounted in the Complaint were

-17-

either already considered by the Supreme Court in *Hawaii* or are legally irrelevant to a rational-basis inquiry. Thus, Plaintiffs' Complaint fails to state plausible claims.

This Court focused on then-candidate Trump's past campaign statements in finding Plaintiffs' claims to be plausible. *See* Mem. Op. at 20. But a fair-minded jurist could conclude that none of those allegations is sufficient to overcome the Court's analysis in *Hawaii*, which considered those same statements. *See Hawaii*, 138 S. Ct. at 2417–18; *accord Alharbi*, 368 F. Supp. 3d at 564 (campaign statements did not "give rise to an inference of purposeful discrimination").

And even if this Court were correct that Plaintiffs' claims could overcome the Proclamation's national-security rationale, reasonable jurists could conclude that the Proclamation should still be upheld under rational basis based on the Proclamation's *foreign affairs* rationale. Under rational basis review, a policy must be upheld if "there is *any* reasonably conceivable state of facts that could provide a rational basis[.]" *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) (emphasis added); *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 261 (6th Cir. 2006) (same).

Here, both the Proclamation itself and the Supreme Court's decision in *Hawaii* demonstrate that the Proclamation can be understood to rationally advance the President's foreign affairs agenda by placing diplomatic pressure on foreign governments to share more information needed by the United States to vet foreign travelers. *See, e.g.*, Procl. § 1(h)(i) (explaining how the President sought to "craft[]

those country-specific restrictions that would be most likely to encourage cooperation given each country's distinct circumstances," and how, even apart from preventing entry of certain foreign nationals who may be dangerous, the entry restrictions "are also needed to elicit improved identity-management and information-sharing protocols and practices from foreign governments"); *Hawaii*, 138 S. Ct. at 2411, 2422 (discussing how "[o]ne of the key objectives of the Proclamation is to encourage foreign governments to improve their practices," and how several countries have in fact improved their practices since the Proclamation was issued); *see also* Pres. Procl. No. 9723, 83 Fed. Reg. at 15,937–38 (discussing how the Proclamation "directed the Secretary of State to engage with countries subject to these entry restrictions in order to improve their performance against the baseline criteria," and how after 180 days, "while more work must be done, identity-management and information-sharing practices are improving globally").

Neither this Court's Opinion nor Plaintiffs' Complaint provides any basis for doubting this legitimate purpose of the Proclamation, *see Hawaii*, 138 S. Ct. at 2421, which would independently require upholding the Proclamation under rational basis review. Indeed, in addition to improvements during the diplomatic engagement period, *see* Procl. § 1(e)–(f), the Proclamation itself has already made progress toward its objective: visa restrictions on Chad were lifted after the government of Chad improved its information-sharing practices. *See* Pres. Procl. No. 9723, 83 Fed.

Reg. 15,938–39 (discussing how "Chad has made marked improvements in its identity-management and information-sharing practices" sufficient to meet the baseline, and therefore "terminating the entry restrictions and limitations previously placed on the nationals of Chad"). Thus, a fair-minded jurist could also conclude that Plaintiffs' constitutional claims must be dismissed based on this separate purpose.

### 4. Plaintiffs Cannot State Due Process and Establishment Clause Claims Based on the Denial of Entry to Others.

Finally, there are substantial grounds for disagreement with this Court's rejection of Defendants' alternative bases for dismissal of Plaintiffs' constitutional claims. To assert their due process and Establishment claims, Plaintiffs must establish that they have been deprived of a liberty or property interest. But *Fiallo*, the plurality opinion in *Din*, and Sixth Circuit precedent state that there is no such cognizable liberty or property interest in an individual having foreign nationals, even family members, being issued a visa (or being admitted into this country). *See Fiallo*, 430 U.S. at 795 n.6 (declining to recognize that "families of putative immigrants ... have an interest in their admission"); *Din*, 135 S. Ct. at 2135 (similar); *Almario*, 872 F.2d at 151; *Bangura*, 434 F.3d at 496; *see also Alharbi*, 368 F. Supp. 3d at 565 (no liberty interest exists "when an alien relative is denied a visa to enter the United States"); *Emami*, 365 F. Supp. 3d at 1022 (same). Frankly, the split opinions in *Din* demonstrate how "there is a significant ground for difference of opinion" as to this question. *See also Hawaii*, 138 S. Ct. at 2419 (noting that "foreign nationals seeking

-20-

admission have no constitutional right to entry"). This might also explain why the Supreme Court has never upheld an Establishment Clause or equal protection claim premised on the right of an alien seeking admission to the country. Thus, fair-minded jurists could disagree with this Court's decision not to dismiss these claims. There is substantial ground for difference of opinion to warrant appeal under § 1292(b).

## II.   THE COURT SHOULD STAY DISCOVERY PENDING COMPLETION OF ALL SECTION 1292(B) PROCEEDINGS.

Defendants also respectfully request that discovery be stayed pending any interlocutory appeal. Given the controlling nature of the legal issues discussed above—and the distinct possibility that the Sixth Circuit's consideration of them will terminate this litigation entirely—allowing discovery to proceed in the interim could significantly waste the parties' (and the Court's) time and resources.

A stay of discovery is warranted for the same reasons why this Court previously stayed this case: assuming that interlocutory appeal is permitted, judicial economy would plainly be served by awaiting the Sixth Circuit's resolution of the controlling questions of law identified above. The Sixth Circuit may terminate this litigation entirely. And even if it does not, it will likely provide significant guidance about the appropriate standard of review (*Mandel* or rational basis), as well as the reasons why Plaintiffs' legal might be plausible in light of that standard. Whatever the appellate court's decision, it will guide what evidence is relevant to Plaintiffs' remaining claims, and thus what the scope of discovery (if any) should be. Declining

-21-

to stay discover would not expedite the resolution of this case because all of the Court's discovery rulings may be modified once the Sixth Circuit issues its ruling.

Here, the perils of proceeding with discovery are particularly striking given the extraordinary breadth of the discovery that Plaintiffs are once again seeking. As previously discussed in Defendants' Opposition to Plaintiffs' Motion to Compel, the Plaintiffs are asking for private, non-governmental documents within the Department of State, the Department of Homeland Security, the Office of the Director of National Intelligence, and the Department of Justice. *See* ECF No. 111 at 5–6. Such broad discovery would be extraordinarily burdensome, generate numerous privilege disputes, and place this Court on a collision course with the presidential communications privilege or Executive Privilege itself. As this Court explained, "[r]equiring the parties and the Court to devote time and resources to resolve these matters during the appeal … would not be economical, because the … decision [above] will be significantly relevant to, and possibly control, the Court's consideration of issues raised in this suit." Order Granting Stay (ECF No. 114), at 5.

As before, it is certain that discovery will require significant motions practice before this Court and potentially before the Sixth Circuit. Plaintiffs have not shied away from this prospect and seem to invite it. *See* ECF No. 139 at 3. But Plaintiffs' eagerness to litigate privilege disputes with respect to documents that are covered by the presidential communications privilege is the exact *opposite* of how courts

should proceed. *See Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 385 (2004). By far the most prudent course is for this Court to stay discovery pending interlocutory review—which, depending on the Sixth Circuit's resolution of the important legal issues discussed above, could end this litigation entirely or at least provide important guidance about how discovery should proceed (if at all). Although this Court's stay was issued in the context of pending Supreme Court review, the analysis is the same regardless of which appellate court will issue such dispositive legal guidance.

Finally, Plaintiffs would not suffer any meaningful prejudice as a result of staying discovery pending completion of § 1292(b) proceedings. In terms of district court proceedings, as discussed above, it is far from clear that resolution would be achieved faster by allowing discovery to proceed under the current legal framework, litigating discovery disputes under that framework, and then *re*-litigating those same disputes under the framework announced by the Sixth Circuit—as opposed to just awaiting guidance from the Sixth Circuit in the first instance. And even if some amount of delay were to occur, Defendants are willing to minimize any such potential delay by requesting expedited § 1292(b) proceedings before the Sixth Circuit. Moreover, the requested stay here is likely to be shorter than the one previously requested (and granted) pending Supreme Court review. And even if this Court is concerned about entering an indefinite stay, that is no reason to allow discovery to resume immediately; rather, the Court could enter an order to later

revisit the issue. For example, the Court could stay discovery while the Sixth Circuit is considering whether to accept the case for a § 1292(b) interlocutory appeal.

In short, staying discovery pending completion of § 1292(b) proceedings is the most sound method for promoting judicial economy and preserving the parties' resources, particularly given the near-certainty of significant discovery disputes. The likely burdens and intrusiveness of discovery are not only an independent reason why § 1292(b) certification is warranted, *see* Part I, *supra*, but also confirm that all discovery should be stayed pending completion of those § 1292(b) proceedings.

## III.   AT THE VERY LEAST, THERE IS NO BASIS FOR DENYING CERTIFICATION IF THE COURT PERMITS PLAINTIFFS TO RENEW DISCOVERY

On July 17, 2019, Plaintiffs filed a motion to reinstate their motion to compel from 2017 and renew discovery by ordering that Defendants respond to Plaintiffs' two-year-old discovery requests. (ECF No. 139.) Defendants will oppose that motion in due course and respectfully urge the Court to instead stay discovery for the reasons more fully explained above: such discovery would be a significant waste of the parties' time and resources if the Sixth Circuit issues a ruling that narrows or ends this litigation, the discovery would almost certainly prove highly burdensome and entail substantial motion practice (before this Court and quite possibly the Sixth Circuit), and Defendants are willing to request expedited briefing on appeal.

At the very least, if the Court rejects the above argument and permits Plaintiffs

to renew discovery, then Defendants respectfully request that the Court promptly grant § 1292(b) certification of the July 10 Order. Swiftly granting certification would permit the Sixth Circuit to consider the important legal issues discussed above, and would at least partially accommodate Defendants' weighty interest in having an appellate court decide at the earliest possible stage of the litigation whether Plaintiffs' claims may go forward in light of *Hawaii*. Prompt certification would likely also decrease the amount of intrusive discovery that occurs prior to the Sixth Circuit deciding the potentially dispositive issues. And even though Defendants again reiterate that a stay of discovery is warranted under these circumstances, there is certainly no prejudice to Plaintiffs in granting § 1292(b) certification if Plaintiffs are permitted to conduct discovery while the appellate proceedings are ongoing.[2]

In sum, the Court should grant § 1292(b) certification of the July 10 Order and stay discovery pending those § 1292(b) proceedings. If the Court rejects that request and allows discovery to begin, however, at a minimum the Court should swiftly grant § 1292(b) certification of the July 10 Order.

## CONCLUSION

This Court should certify its July 10, 2019 Order for interlocutory review and stay discovery pending completion of any § 1292(b) proceedings.

---

[2] To be clear, Defendants do not suggest that certification without a stay would be an appropriate resolution of this motion and reserves the right to seek further relief if discovery is permitted to go forward. Defendants merely observe that there is no plausible harm to Plaintiffs from allowing certification if this Court denies the stay request.

Dated: July 23, 2019                    Respectfully submitted,

                                        JOSEPH H. HUNT
                                        Assistant Attorney General

                                        WILLIAM C. PEACHEY
                                        Director

                                        GISELA A. WESTWATER
                                        Assistant Director

                                        */s/ Joshua S. Press*
                                        JOSHUA S. PRESS
                                        Trial Attorney
                                        U.S. Department of Justice
                                        Office of Immigration Litigation
                                        District Court Section
                                        P.O. Box 868, Ben Franklin Station
                                        Washington, D.C. 20044
                                        Tel: (202) 305-0106
                                        e-Mail: joshua.press @usdoj.gov

                                        *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served the foregoing document on all parties of record by filing this document with the Clerk of the Court using the CM/ECF system, which will provide notice and an electronic link to this document to all parties of record.

*/s/ Joshua S. Press*
U.S. Department of Justice
Civil Division
